Echisecc ag                    CONFERENCE

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

          v.                          12 Civ. 6421 KMK

EDWARD BRONSON,

                Defendant.
------------------------------x
```

                                    White Plains, N.Y.
                                    December 17, 2014
                                    10:55 a.m.

Before:

                HON. KENNETH M. KARAS,

                                District Judge

                   APPEARANCES

KEVIN McGRATH
HAIMAVATHI MARLIER
     Attorneys for Plaintiff

BENJAMIN FISCHER
RACHEL AGRESS
     Attorneys for Defendant




                        CONFERENCE








                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

1      THE COURTROOM DEPUTY:  SEC v. Bronson.

2      THE COURT:  Who wants to talk?

3      MR. FISCHER:  We can start, your Honor.  We've been
4 requesting the conference and we apologize for the number of
5 letters that have gone back and forth, but we have been
6 requesting the conference so we'll start.

7      As you're well aware, this case is about whether my
8 client, Edward Bronson and E-Lionheart were entitled to rely on
9 certain securities registration exemptions codified under
10 Rule 504 and the Delaware Securities Code.  And your Honor
11 addressed those issues at length in your opinion and order last
12 March before my firm was in the case.

13     The SEC has steadfastly maintained that we were not
14 entitled to rely on those exemptions.  Their complaint says
15 that we were not entitled to rely on those exemptions.  In
16 opposing prior counsel's motion to dismiss they urged this
17 Court to conclude that the facts on the face of the complaint
18 were not sufficient to trigger those exemptions.  And the Court
19 sided with the SEC on that and said you're right, those
20 exemptions aren't triggered.  And the Court went through a very
21 complicated analysis in terms of examining all the relevant
22 statutes, state law and federal law.

23     Something happened after that.  After March of 2014,
24 something happened.  About 20 pages of documents were given to
25 prior counsel under a protective order and those documents shed

1    light on the main issues in the case.  Those documents reveal

2    that in 2010 representatives from the SEC --

3              THE COURT:  -- spoke to the Commissioner.  I've read

4    all the letters.

5              MR. FISCHER:  -- spoke to the Delaware Securities

6    Commissioner and solicited an opinion on the application of the

7    Delaware Securities Law exemption not in the abstract but in

8    the context of Edward Bronson and his company E-Lionheart,

9    attached a letter, the attorney opinion letter, many of them --

10   there were many of them in the context of this case as they

11   opined on the relevant transactions, attached the attorney

12   opinion letter from a woman named Virginia Sorliss, and said

13   basically we're trying to get our arms around this, we're

14   coming to you seeking interpretive guidance, we want your

15   opinion, look at this attorney opinion letter and let us know

16   what you think, is this right.

17             THE COURT:  The Commissioner said that the attorney's

18   view is correct.

19             MR. FISCHER:  Correct.  Correct.  And I can get into

20   sort of the exact language but you've got it.  Why is this

21   relevant, your Honor?

22             THE COURT:  It's clearly relevant.  I get it.

23             MR. FISCHER:  So I don't have to go through all the

24   permutations as to why it's relevant.  What's our ask?  What

25   we'd like to do and what I think would make a lot of sense

1   right now is to press pause for a brief amount of time on the
2   proceedings to allow us to conduct some limited expedited
3   discovery on whether there are any other communications between
4   the SEC and state regulators on the interpretation of the
5   relevant registration exemptions at issue in this case.  We
6   think it's critical.  We think we need to know as we move to
7   fact discovery, we need to know, to the extent there are more
8   documents indicating what regulators' opinions are as to their
9   own law, we'd like to know that and we think we need to know
10  that and we think we're entitled to know that.
11          THE COURT:  Why do you think you wouldn't get that in
12  the normal course of discovery?
13          MR. FISCHER:  We might.  We certainly have reason to
14  believe that there are some additional documents that exist
15  right now.  We might get that in the normal course of
16  discovery.  But I think that the problem that that would create
17  is it would make us sort of, we'd be litigating fact discovery
18  or taking fact discovery, not litigating fact discovery, we'd
19  be involved in fact discovery on the one hand and yet trying to
20  figure out what the legal framework is on the other hand.
21          THE COURT:  Isn't that always the case?
22          MR. FISCHER:  I don't know.
23          THE COURT:  Plaintiff files a complaint. Defendant
24  answers or moves to dismiss.  The motion is denied.  We go to
25  discovery.  And it may be that there are certain batches of

1    discovery that are more relevant than others, more helpful to
2    the defendant's case than others.  Defendant starts salivating,
3    says I can't wait to go to summary judgment, but we don't
4    typically pause and say let's just keep getting the good stuff,
5    and we're not going to let anything else happen.  It seems to
6    me that if you're right, that there's more stuff out there and
7    you're right that it's relevant, then you should get it.  And
8    you should get other things that might be relevant and helpful
9    and other things that might not be helpful but still relevant.
10   At the same time the SEC is entitled to take discovery from
11   your client.  I don't know why we need to pause anything.  It
12   seems to me from your standpoint what you'd like to do is get
13   discovery done so you can get to your summary judgment motion.
14           MR. FISCHER:  This case does present a somewhat
15   anomalous fact or has unfolded in a somewhat anomalous way.
16   Everybody's done the work and read the complaint and read your
17   opinion, and now all of a sudden we're seeing that there may be
18   cracks in that foundation.  And to the extent there are more
19   cracks, we think it's relevant to know now.  And I'll tell you
20   why.  From an efficiency perspective, what if the law as
21   interpreted by other regulators -- we're finding out through
22   the course of discovery that maybe our view of the world is
23   right and we're conducting fact discovery but we're finding out
24   sort of more and more that our view is right.  That may have to
25   cause us to go back, take more depositions on the sort of

1    relevant thinking of the regulators who are siding with us and
2    ask those relevant questions.
3            I'll say this.  We do have reason to believe, there
4    was a parallel case, there may be many parallel cases involving
5    this but there was a parallel case in front of Judge
6    Scheindlin, we'll call it the Garber case, SEC v. Danny Garber
7    and others, in which there seemed to be at least some other
8    communications not with Delaware regulators but Texas
9    regulators.
10           THE COURT:  Now we're talking serious regulators.
11   That's meant for Amanda who is from Texas.
12           MR. FISCHER:  Whole other ball of wax.  It don't know
13   that it would be burdensome for the SEC to make those documents
14   available now.  If that causes us to have to run back to your
15   Honor and have to address front issues now as we approach fact
16   discovery, then on the back --
17           THE COURT:  This is fact discovery.  It's like a
18   tiered analysis.  The bottom line is I think from your
19   perspective, this may be one of these cases where the defendant
20   is more eager than the plaintiff to get through the discovery.
21   So get through it.  If you're right and you think there's more
22   documents that may be relevant and helpful to you, then you
23   should be only too glad not to pause and get through it.  The
24   SEC should be allowed to take discovery from your client as
25   well.  If you're trying to basically say we want them to give

1    us everything, especially the good stuff, and then we're going
2    to pause on everything else, I don't see how that could be
3    right.
4              MR. FISCHER:  I guess, your Honor, the way I had
5    divided it in my own head, and maybe it wasn't coming out as
6    clearly, the pause was to let's deal with what we think is the
7    legal issue now so we have either clarity or not.  Maybe we
8    won't have any clarity.  Maybe it will be as clear as mud.  But
9    we'll deal with the legal issue now and in an expedited way
10   such that if there are any issues that we think need
11   clarification before we dive into -- we're not saying don't get
12   into the fact discovery issue.  We will get into the fact
13   discovery issue.  But there are legal issues now --
14             THE COURT:  This is fact discovery.  When you're
15   getting this information from the SEC about their consultation
16   with Delaware regulators, that is fact discovery.
17             MR. FISCHER:  True.
18             THE COURT:  The legal analysis is informed by the
19   evolving factual landscape, evolving because you're getting
20   stuff that prior counsel didn't have before the motion was
21   filed.  I know there was some finger pointing going on about
22   how come the SEC didn't give us this earlier.  Okay, fine.  I
23   just don't understand why this case should be any different
24   than any other case, especially it seems to me that the fact
25   discovery here is a fairly contained and knowable universe of

1  either depositions or interrogatories or documents and let's
2  just get it done.  I don't know how we divide this up.  Because
3  to say well, we want other e-mails between the SEC and the
4  Delaware regulators and nothing else, I don't know why you'd
5  want nothing else and I don't know why we would put the rest of
6  it on hold.  There ought to be a data exchange, document
7  exchanges, and let's get to the depositions.
8            MR. FISCHER:  I'm not suggesting it's that and nothing
9  else.  What I'm suggesting is to the extent that there is that,
10 there are communications with regulators and regulators are
11 opining and giving their views on things and that's relevant to
12 the law and we needed to then come in and talk to your Honor in
13 more detail.
14           THE COURT:  What are you going to talk to me about?
15 Here's what we got so far?  I'm going to say so what.  We're
16 not going to do summary judgment until we're done with
17 discovery.
18           MR. FISCHER:  I guess, your Honor, it sounds like we
19 will have the opportunity to suggest that, we will have an
20 opportunity to opine on the right framework at some point.
21 That may be summary judgment.
22           THE COURT:  Of course.  To the extent that you think
23 that materials, there are more materials out there you haven't
24 gotten, you're free to make that point.  To the extent that the
25 materials you've gotten suggest some other type of discovery

Echisecc ag                    CONFERENCE

1  that the SEC is resisting you can make that point.  My point is
2  let's go.  Let's go.
3              MR. FISCHER:  I don't think we're too far from that
4  point either.  I think the way we were viewing it is we're
5  happy to get clarification on the law now and do the facts
6  later, and it doesn't have to be all that much later because
7  we'll proceed in an expedited way.
8              THE COURT:  A motion for clarification?  What does
9  that mean?
10             MR. FISCHER:  It's hard for me to say not knowing what
11 the universe of documents may reveal.
12             THE COURT:  Which is why we should finish discovery.
13             MR. FISCHER:  That's fine.  And I guess we'll have
14 that opportunity at the close of discovery to say maybe the
15 right framework wasn't in place at the time.  Here we are now
16 knowing more much than we knew then.
17             THE COURT:  Of course.  Absolutely.
18             MR. FISCHER:  I would raise two more what I think are
19 minor issues, maybe one one more.  The SEC has insisted that
20 the documents that were produced that we have referred to back
21 and forth in the letters and have referred to today, that those
22 be referred to and submitted under seal.  We've done that.  I
23 don't see the basis to continue that sealing at this point in
24 time.  We sort of inherited that obligation from prior counsel.
25 I'm not sure why they're still under seal.  And quite frankly,

1    they're on the docket in that Garber case I mentioned.

2            THE COURT: You can write a letter asking to have --
3    was it by consent or was it a sealing order that was entered on
4    consent of prior counsel? Write a letter asking to vacate the
5    sealing order.

6            MR. FISCHER: I think a vacation of receipt of the
7    document.

8            THE COURT: Write a letter and state as the great
9    champion of the First Amendment that you'll be in this letter,
10   say why it runs afoul of the First Amendment, and I'll let the
11   SEC respond and we'll go from there.

12           Mr. McGrath.

13           MR. McGRATH: I agree with what I believe is your
14   proposal that we go forward with discovery the way we normally
15   would. The proposal that he's advanced is asymmetrical. I
16   think it's not going to accomplish anything. I could make an
17   argument why if I wanted it to be asymmetrical that we should
18   have no discovery on Delaware law because I don't think he's
19   going to make out any nexus. I don't think he's going to find
20   that that e-mail is as helpful to him as he thinks. But let's
21   go forward with discovery and we'll be back at the appropriate
22   time.

23           THE COURT: Do we have a case management plan?
24           MR. McGRATH: We have the one you already signed.
25           THE COURT: Are you on target?

1          MR. McGRATH:  We've served discovery requests.  They
2   filed their objections.  And we're waiting for theirs.  So I
3   think after this conference now we'll presumably go forward at
4   a faster pace.
5          THE COURT:  Can I get a preview of why the SEC thinks
6   the protective order should remain in place, especially if
7   these materials have been disclosed in some other case.
8          MR. McGRATH:  I could give you a preview subject to me
9   confirming it.  The reason we asked for it originally is at the
10  time the investigation that was focused on was separate from
11  this case was still an ongoing investigation.  And it
12  identifies the person who is essentially, we don't use the word
13  target, who is the focus of the investigation.  I don't know
14  whether that investigation has been closed yet.  I'll check on
15  that.  But even if it was, it's still sort of references this
16  person by name.  So there's some privacy concerns there that I
17  want for think about.
18         I also don't know, Mr. Fisher represented that those
19  documents are on the docket.  That's news to me.  It may be the
20  case.  But I don't know that the actual e-mails are in the
21  public docket.  If they are, that's surprising to me.
22         THE COURT:  There may be reference to them.
23         MR. FISCHER:  I'm pretty sure they're attached to an
24  affidavit in support of summary judgment that was filed.
25         MR. McGRATH:  We'll have to look at that.  The third

1  thing, your Honor, we're preserving this certainly at least at
2  this point, I think, as you're aware, Judge Scheindlin in that
3  case ordered the production of e-mails.  They were forwarded by
4  the Delaware Commissioner's Office.  They didn't contact us
5  first before doing that.  There's a law enforcement privilege
6  argument I think that's valid that we might, if appropriate,
7  want to renew with you at the proper time.  So I wouldn't want
8  to waive that privilege.
9          THE COURT:  We're not going to decide it now.  Also,
10 discovery typically is outside the boundaries of the First
11 Amendment.  It's when it becomes a court document, and you all
12 know that.
13         MR. McGRATH:  I don't see the need to unseal at this
14 point in time.
15         THE COURT:  Except if it's filed.  Then they become
16 court documents.
17         MR. FISCHER:  The only thing I would say is I think
18 Judge Scheindlin, just to round it out, Judge Scheindlin did
19 reject the assertion of the law enforcement privilege over that
20 document.  She issued an order on this.  I think there was a
21 fight.  They got the documents from Delaware.  There was an
22 issue as to that.  There was an assertion of law enforcement
23 privilege, there was maybe talk of assertion of work product,
24 which didn't happen.  And then she issued an order on this
25 issue.  I'm pretty sure she did.

1     MR. McGRATH:  That's correct.  We may ask your Honor
2  to revisit that and there may be arguments that we would
3  advance that weren't advanced before Judge Scheindlin.
4     MR. FISCHER:  Understood.
5     THE COURT:  Got it.
6     MR. FISCHER:  That's helpful, your Honor.
7     THE COURT:  Is there anything else then?
8     MR. McGRATH:  No, your Honor.  I indicated that we
9  have received discovery objections from the defendants.  I
10 think we have not had a chance to meet and confer.  I think the
11 appropriate time for us to do that is after they serve their
12 document requests on us and we file our response, and we'll
13 meet and confer, and if we are not able to work things out,
14 we'll get back to your Honor.  I didn't want there to be any
15 waiver.
16    THE COURT:  We're looking at a pretty chaotic first
17 six months next year, so I'll refer the discovery issues to the
18 magistrate judge, and if you all have a beef with her ruling,
19 you'll know where to find me.
20    MR. FISCHER:  Looking quickly at the discovery
21 schedule, I see that our document requests are due on New
22 Year's Eve.  So I'll ask for a couple of extra days.
23    THE COURT:  Or you could get them done beforehand.
24    MR. FISCHER:  We will work that out, your Honor.
25    THE COURT:  Anything else?

Echisecc ag					CONFERENCE

1           MR. McGRATH:  No, your Honor.  Thank you.
2           MR. FISCHER:  That's all from us.
3           THE COURT:  Enjoy the rest of the day.
4           MR. FISCHER:  Thank your Honor.
5           (Proceedings adjourned)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25