UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SECURITIES AND EXCHANGE
COMMISSION,

|  |  |  |
|---|---|---|
| | Plaintiff, | **ORDER** |
| -against- | | 12 Civ. 6421 (KMK)(JCM) |

EDWARD BRONSON, E-LIONHEART
ASSOCIATES, LLC d/b/a FAIRHILLS
CAPITAL,

                                        Defendants,
               -and-

FAIRHILLS CAPITAL, INC.,

                              Relief Defendant,

--------------------------------------------------------X

        By letters dated February 25, 2015 and April 3, 2015, Defendants Edward Bronson and

E-Lionhart Associates, LLC d/b/a Fairhills Capital and Relief Defendant Fairhills Capital, Inc.

(collectively, "Defendants") and Plaintiff Securities and Exchange Commission ("Plaintiff

SEC") presented discovery disputes pursuant to this Court's discovery dispute order dated

February 5, 2015 ("Order").  The Court took oral arguments on these issues at a hearing held on

April 9, 2015.  This action concerns alleged violations of Section 5 of the Securities Act of 1933

(the "Act").  The documents at issue in the two February 25, 2015 letters relate to Plaintiff SEC's

interpretations of Rule 504 of Regulation D of the Act, 17 C.F.R. § 230.504 ("Rule 504"), and its

exemptions and Defendants' Rule 504 transactions.  The documents at issue in the April 3, 2015

letter are those seized from Defendants' offices ("41 Boxes") by the Federal Bureau of

Investigation ("FBI") as part of an investigation that is not the subject of this civil action.

## I.  PLAINTIFF SEC'S DISPUTE

Plaintiff SEC seeks a protective order precluding Defendants from obtaining documents responsive to their Requests for Production 13, 14, and 17-19 ("Defendants' RFP") on the basis that these requests are overly broad and unduly burdensome.  (Docket No. 78).  Defendants contend that Plaintiff SEC acknowledged this information is relevant to Defendants' defense and that both Plaintiff SEC, in another action, and the Honorable Kenneth M. Karas, U.S.D.J., at an initial pretrial conference on December 17, 2014, stated that state legislators' interpretations of exemptions set forth in Rule 504 are relevant to interpreting those exemptions.  (Docket No. 82). Defendants also offered to limit their requests to "members of the SEC Penny Stock Task Force charged with investigating violations of Rule 504," but Plaintiff SEC rejected this offer.  (*Id.* at 2).  At the April 9, 2015 conference, Plaintiff SEC asserted that this limitation would still entail needing to identify and search communications of employees and former employees.

## II.  DEFENDANTS' DISPUTES

Defendants seek a protective order precluding Plaintiff SEC from obtaining responsive documents to its request for documents 3 through 6 ("SEC RFP") on the basis that these requests seek irrelevant documents to the claims of the action.  (Docket No. 79).  Defendants further request, should the Court order this disclosure, that the Court bifurcate discovery so that these documents must only be served after a determination of liability.  (*Id.* at 2).  Plaintiff SEC contends that the requests in dispute include SEC RFP 1 through 7, and that they are all relevant to determine liability, particularly with regard to Defendants' defenses.  (Docket No. 81). Plaintiff SEC also objects to bifurcating discovery.  (*Id.* at 1).  At the April 9, 2015 conference, the parties agreed that the requests at issue include SEC RFP 1-6.

With regard to the 41 Boxes, some additional background is necessary. These documents were obtained by the FBI pursuant to Rule 41 of the Federal Rules of Criminal Procedure ("Rule 41"). As disclosed at the April 9, 2015 conference, Plaintiff SEC learned of the seizure, requested that the FBI share the information and the FBI obliged. Under Rule 41, the FBI may request a search warrant to look for, *inter alia*, evidence of a crime. Rule 41(b)-(c). Once a magistrate judge issues a search warrant, "an officer authorized to execute it" may search and seize items from persons and/or places as prescribed in the warrant. *See* Rule 41(e). However, unlike the FBI, Plaintiff SEC's investigatory powers encompass issuing subpoenas to gather information and evidence. 15 U.S.C. § 78u(b). Plaintiff SEC is expressly permitted to share its evidence with the "Attorney General, who may, in his discretion, institute the necessary criminal proceedings." *Id*. § 78u(d)(1).

Based on the agencies' different investigatory powers, Defendants seek a protective order barring Plaintiff SEC from using in this civil litigation documents in the 41 Boxes that Defendants deem privileged or not relevant to this action. (Docket No. 93). Defendants assert that documents that exceed the scope of Rule 26(b) of the Federal Rules of Civil Procedure ("Rule 26(b)") are outside the bounds of this case and, furthermore, "there appears to be no authority permitting the FBI to share with the SEC, and the SEC to use search warrant documents in a civil proceeding." (*Id.* at 2). Plaintiff SEC contends that it is entitled to view all non-privileged documents contained in the 41 boxes on the basis that the FBI is permitted to share with other government agencies documents it obtains via a search warrant issued pursuant to Rule 41. (Docket No. 95).

## III. DISCUSSION

### A. Discovery Standards

Rule 26(b) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). Discovery is permissible as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Moreover, "[r]elevance to the subject matter under [Rule 26(b)] is construed broadly to encompass any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *U.S. Commodity Futures Trading Comm'n v. Pamon Energy Inc.*, 593 F. App'x 32, 36 (2d Cir. 2014) (Summary Order) (quotation marks and citation omitted).

Protective orders are governed by Rule 26(c) of the Federal Rules of Civil Procedure ("Rule 26(c)"). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c)(1). However, if the court wholly or partly denies a protective order, it "may, on just terms, order that any party or person provide or permit discovery." Rule 26(c)(2). The party seeking a protective burden bears the burden to demonstrate good cause for one. *Qube Films Ltd. v. Padell*, No. 13 Civ. 8405, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (citation omitted). A party may "show good cause for protection of a document under [Rule 26(c)] if it demonstrates a clearly defined and serious injury that would result from disclosure of the document." *Allen v. City of New York*, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006) (alteration provided) (quotation marks and citations omitted). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere

trifle.'" *Schiller v. City of New York*, No. 04 Civ. 7921, 2007 WL 136149, at *5 (S.D.N.Y. Jan.

19, 2007) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

**B.  Plaintiff SEC's Protective Order Denied in Part, Granted in Part**

Defendants' RFP 13 seeks all communications between Plaintiff SEC and attorneys who

issued opinion letters for the transactions at issue here.  Defendants' RFP 14 seeks all

communications between Plaintiff SEC and individuals who worked with Defendants.  Plaintiff

SEC conclusorily claims that these requests are overbroad and states that the requests do not

limit the scope of the subject matter to the transactions or to a specific time.  However, Plaintiff

SEC expresses no specific examples or articulated reasoning to demonstrate any harm it will

suffer by producing the requested material. *Schiller*, 2007 WL 136149, at *5 (citation omitted).

Thus, it failed to meet its burden to show good cause for a protective order.  In addition,

Defendants reasonably offered to limit these requests to "members of the SEC Penny Stock Task

Force charged with investigating violations of Rule 504."  Defendants' RFPs 13 and 14, as

modified by Defendants, are reasonably calculated to lead to the discovery of admissible

evidence.  Accordingly, Plaintiff SEC shall produce responsive documents of all

communications between members of the SEC Penny Stock Task Force charged with

investigating violations of Rule 504 ("SEC Task Force") and the individuals identified in

Defendants' RFPs 13 and 14.

Defendants' RFP 17-19 respectively seek all communications regarding Rule 504 and

State Securities Registration Exemptions between: the Plaintiff SEC and Delaware state

regulators; Plaintiff SEC and Texas state regulators; and Plaintiff SEC and any other State

Securities Regulator.  Plaintiff SEC contends that the request regarding Delaware is overly broad

because it is not limited in time or to the transactions or subsection of the statute at issue and, in

any event, Defendants could subpoena the information from Delaware.  Plaintiff SEC contends

that the requests regarding Texas and any other state are not relevant because Defendants have

not asserted defenses based upon these exemptions and they are not limited in time or to the

subsection of the statute at issue.  Plaintiff SEC anticipates these requests could be unduly

burdensome because it could take weeks to identify current and former employees whose files

need to be searched and restore and review those files.  This burden is couched in terms of

wasting resources on allegedly non-relevant information.

However, Plaintiff SEC seeks an overly narrow review of discovery under Rule 26(b).

Rule 26(b) is not limited to the express issues in the case, but rather encompasses "any matter

that could bear on, or that reasonably could lead to other matter that could bear on, any issue that

is or may be in the case." *U.S. Commodity Futures Trading Comm'n*, 593 F. App'x at 36

(quotation marks and citation omitted).  Defendants' requests to extend beyond Delaware state

regulators to include all states is not irrelevant, especially considering Plaintiff SEC's position

that Defendants establish registration exemptions in each state in which Defendants offered and

sold stocks.  Plaintiff SEC has not asserted in the Complaint where these transactions allegedly

occurred, but instead focuses on New York State as Defendants' residence and place of business

activity.  (Complaint ¶¶ 15, 19).  Plaintiff SEC acknowledged at the April 9, 2015 conference

that it possessed information disclosing the locus of the transactions at issue.  However, it

objected to disclosing this information, contending that Defendants have the burden to

demonstrate viable exemptions.  The Court is not so persuaded.  Plaintiff SEC commenced this

action and accuses Defendants of specific, alleged violations.  If those alleged violations involve

more than activity occurring in New York State, Defendants should know what they are

defending against.

Plaintiff SEC's communications with state regulators are also relevant to understanding the agency's interpretations of state exemptions. Moreover, the fact that Delaware regulators could produce this information in another case does not absolve Plaintiff SEC from its obligation to produce documents in its own possession. It also demonstrates that the volume of disclosure is not necessarily that burdensome. Finally, although Plaintiff SEC believes the offer to limit searches to the SEC Task Force would still be burdensome, it indicated that such limitation could exclude many people as state exemption communications did not necessarily originate from this group.

Accordingly, Plaintiff SEC shall identify to Defendants the states in which Defendants allegedly consummated transactions in violation of the Act. Plaintiff SEC also shall produce responsive documents of all communications regarding Rule 504 and State Securities Registration Exemptions, as set forth in Defendants' RFP 17-19, between: the SEC Task Force and Delaware state regulators and the SEC Task Force and any other State Securities Regulator for those states in which Defendants allegedly committed violations of the Act.

## C. Defendants' Protective Orders Denied in Part, Granted in Part

## 1. SEC RFPs

SEC RFPs 1-2 seek, respectively, all documents "concerning Rule 504 Transactions in the stock of any issuer . . ." and "related to the issuance, offering, transfer, purchase or sale of the securities of any entity . . . as to which Defendants engaged in any Rule 504 Transaction." (Docket No. 70 at Ex. 1). SEC RFPs 3-6 seek all communications between Defendants and (1) any issuer; (2) any transfer agent concerning any issuer; (3) any brokerage firm concerning any issuer; and (4) any attorney or law firm concerning any issuer, "as to which Defendants engaged in any Rule 504 Transaction." (*Id.*). At the April 9, 2015 conference, Plaintiff SEC

stated that these requests could help identify locations where an issuer communicated the offers at issue. Also at the conference, upon the Court's request for clarification, Plaintiff SEC offered that the phrase contained in its requests, "as to which Defendants engaged in any Rule 504 Transaction," modified the communications it sought, thus explicitly narrowing the subject matter of its requests.

Defendants assert that these broad requests are not relevant to Plaintiff SEC's strict liability theory, but seem to imply they would be relevant if the causes of action alleged fraud or required some sort of scienter. (*Id.* at 1-2). Defendants agree to produce "transactional documents", which they define as "documents evidencing the details of the transactions," for those transactions at issue in this action, conceding that they are relevant. (*Id.*). Defendants further contend, if the Court determines it must serve all responsive documents, that the Court should bifurcate discovery so that these "communication" documents must only be served after a determination of liability. (*Id.* at 2). Defendants assert that bifurcation will conserve resources and make litigation proceed more efficiently. (*Id.*).

Defendants express no specific examples or articulated reasoning to demonstrate any harm they will suffer by producing the requested material. *Schiller*, 2007 WL 136149, at *5 (citation omitted). Rather, they aver that the requests have the potential of being burdensome. Thus, they failed to meet their burden to show good cause for a protective order. Moreover, Defendants request to limit discovery to documents relevant to the present claims is too narrow. As stated above, Rule 26(b) is not limited to the express issues in the case, but rather encompasses "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *U.S. Commodity Futures Trading Comm'n*, 593 F. App'x at 36 (quotation marks and citation omitted). Here, SEC RFPs 1-6 are

reasonably calculated to lead to the discovery of admissible evidence. The Court will not bifurcate discovery with regard to these requests. Accordingly, Defendants shall produce non-privileged, responsive documents to SEC RFPs 1-6. Should Defendants withhold documents based on privileged, which may be likely especially as concerns SEC RFP 6, Defendants shall serve a privilege log of those documents.

## 2. 41 Boxes

During the April 9, 2015 conference, Defendants contended that if Plaintiff SEC is permitted to use in this action all of the contents of the 41 Boxes, unauthorized individuals will have access to highly personal and private information not relevant to the claims in the Complaint. Although it appeared Defendants had some inkling of the subject matters of this very private information, they only disclosed that it centered on matters of Defendant Edward Bronson's family. Defendants also stated that they had not completely reviewed all of the documents and therefore were not in a position to move for a protective order. Nonetheless, it was clear that they believed they would suffer an invasion of privacy if they had to produce the requested material.

Plaintiff SEC averred that there are no cases in the Second Circuit or Southern District of New York barring its use of the 41 Boxes in this action. In support of its contention that it may use the fruits of the FBI's search warrant, Plaintiff SEC submitted a Northern District of New York decision, *SEC v. McGinn*, No. 10 Civ. 457 (N.D.N.Y. May 16, 2011). (Docket No. 95-1). In *McGinn*, the court contrasted the acquisition and disclosure of electronic surveillance pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-22 ("Title III") to the acquisition and disclosure of information obtained pursuant to Rule 41 search warrants. (*Id.*). Like here, the SEC in *McGinn* acquired documents from law

enforcement authorities, which the latter obtained via executing a Rule 41 search warrant. (*Id.* at 2). However, the law enforcement authorities in *McGinn* did not share with the SEC all of the evidence it had seized. (*Id.* at 5, n.3). In determining that the SEC could use that evidence in its civil action, the court stated that "it does not appear that law enforcement authorities or the SEC here were under any limitation precluding those authorities from disclosing search warrant evidence to the SEC . . . ." (*Id.* at 5). The court also noted that the defendants had failed to demonstrate a privacy interest sufficient to bar the SEC's use of the evidence and the SEC "could have obtained the documents from defendants during discovery in this case within the limits of" Rule 26. (*Id.* at 6).

"Traditionally, there has been a close working relationship between the Justice Department and the SEC." H.R. Rep. No. 95-650, 95th Cong., 1st Sess. 10 (Sept. 28, 1977). This occurs, in part, because the SEC "investigate[s] infractions with a view to both civil and criminal enforcement . . . ." *SEC v. First Jersey Secs., Inc.*, No. 85 Civ. 8585, 1987 WL 8655, at *4 (S.D.N.Y. Mar. 26, 1987) (citing *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980), *cert. denied* 449 U.S. 993. With the collaborative nature of these prosecuting agencies and the SEC's broad investigatory powers pursuant to 15 U.S.C. § 78u(a) in mind, the Court concludes that the SEC properly obtained the 41 boxes from the FBI. However, unlike in *McGinn*, here Defendants articulated a privacy interest warranting a limitation of the SEC's viewing and usage of some of the documents contained in the 41 boxes.

Accordingly, Defendants' motion for a protective order is granted. Plaintiff SEC may retain the 41 Boxes, but it may not disseminate or use, for the purposes of this litigation or any other purpose, personal and private information not related to the prosecution of this civil action. Defendants shall provide to Plaintiff SEC a list of all documents it deems personal and private in

a log, no later than July 16, 2015. In order to effectuate this protective order, and with the understanding that the information is currently stored on disks, only SEC attorneys of record in this action may incidentally view the information in the course of viewing non-privileged, non-protected information contained on the same disks.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff SEC's motion for a protective order is granted in part and denied in part, and Defendants' motion for a protective order is granted in part and denied in part. The parties shall produce responsive documents as directed.


Dated:    July 8, 2015
          White Plains, New York


                                          **SO ORDERED:**

                                          JUDITH C. McCARTHY
                                          United States Magistrate Judge