UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION

Plaintiff,

-against-

EDWARD BRONSON and
E-LIONHEART ASSOCIATES, LLC, d/b/a
FAIRHIILLS CAPITAL,

Defendants.

and

FAIRHILLS CAPITAL, INC.,

Relief Defendant.

---------------------------------------------------------------x

Case No.: 12-cv-6421 (KMK)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

William A. Rome
Michael A. Eisenberg
ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Tel:  (212) 603-6300
Fax:  (212) 956-2164
*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………iii

ARGUMENT…..…………………………………………………………………1

I. The SEC Failed to Introduce Evidence Sufficient to Establish a Prima Facie
Violation of Section 5 of the Securities Act for 53 of 63 Issuers….. ………………1

II. The SEC Fails to Disclose the 2010 Opinion of the Delaware Securities
Commissioner finding ELA Opinion Letter "Correct" ………………………..…3

    A. SEC Obtains an Opinion from the Delaware Department of Justice in 2010……..3

    B. The Court Should Not Consider the Untimely Opinion of Gregory C. Strong…...5

III. Defendants Satisfy the Conditions for the Rule 504 Exemption ……………….…...8

IV. This Matter is Ripe for Certification to the Delaware Supreme Court…………..…….19

V. The SEC Has Not Properly Calculated Damages………..……………………………21

    A. The SEC Offered Insufficient Evidence to Substantiate Damages Calculation…21

    B. The SEC's Disgorgement Figure is Overstated  ………………………………21

        1. The SEC Does Not Support Its Net Profit Calculation…..……………21

        2. Defendants are Entitled to an Offset for Expenses…..………………..…22

        3. Defendants' Good Faith Reliance on Counsel Warrants Imposition of
Minimal Civil Penalties, if any……………………..…..………………..…23

CONCLUSION  ……………………………………………………………..25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.W. Fin. Servs., S.A. v. Empire Res., Inc.,*
2009 U.S. Dist. LEXIS 6510 (S.D.N.Y. Jan. 29, 2009) ......................................................... 20

*Aladdin Manufacturing Co. v. Mantle Lamp Co. of America,*
116 F.2d 708 (7th Cir. 1941) ...................................................................................................... 22

*Am. Tissue, Inc. v. Donaldson,*
351 F.Supp.2d 79 (S.D.N.Y. 2004) ........................................................................................... 14

*The Annuity, Pension, Welfare and Apprenticeship Skill Improvement and Safety Funds of the*
*Int'l. Union v. Colonial Surety Co.,*
2014 U.S. LEXIS 128130 (S.D.N.Y. September 11, 2014) ............................................. 6, 7, 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................................... 3

*Berckeley Inv. Grp., Ltd. v. Colkitt,*
455 F.3d 195 (3d Cir. 2006) ...................................................................................................... 13

*Block v. First Blood Assocs.,*
988 F.2d 344 (2d Cir. 1993) ........................................................................................................ 2

*Boss v. Am. Exp. Fin. Advisors, Inc.,*
15 A.D.3d 306, 791 N.Y.S.2d 12 (1st Dep't 2005) ................................................................ 12

*Chase Manhattan Mortg. Corp. v. Advanta Corp.,*
Civil Action No. 01-507 (KAJ), 2005 U.S. Dist. LEXIS 19374 (D. Del. Sep. 8, 2005) ......... 13

*Chem One, Ltd. v. M/V Rickmers Genoa,*
660 F.3d 626 (2d Cir. 2011) ...................................................................................................... 11

*Chen v. New Trend Apparel, Inc.,*
8 F.Supp.2d 406 (S.D.N.Y. 2014) .......................................................................................... 6, 8

*Costa v. Carambola Partners, LLC,*
590 F. Supp. 2d 1141 (D. Minn. 2008) ..................................................................................... 13

*Disgorgement in Securities Fraud Actions Brought by the,*
*SEC,* 1977 ................................................................................................................................ 22

*Embee Corp. v. Ringler,*
194 Misc. 2d 400, 752 N.Y.S.2d 786 (Sup. Ct. 2002) .............................................................. 15

*Evans v. Syracuse City Sch. Dist.*,
  704 F.2d 44 (2d Cir. 1983) ..................................................................................2

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*,
  56 F.Supp.3d 383, 387 .....................................................................................14

*Friends of H. Fletcher Brown Mansion v. City of Wilmington*,
  34 A.3d 1055, 1060 (Del. 2011)......................................................................16

*Hausler v. JP Morgan Chase Bank, N.A.*,
  127 F.Supp.3d 17, 38 (S.D.N.Y. 2015) ..........................................................14

*Hirneisen v. Champlain Cable Corp.*,
  892 A.2d 1056 (Del. 2006) ..............................................................................15

*Known Litig. Holdings, LLC v. Navigators Ins. Co.*,
  2016 U.S. Dist. LEXIS 82675 (D. Conn. June 24, 2016)................................14

*Litton Inuds., Inc. v. Lehman Bros. Kuhn Loeb Inc.*,
  734 F. Supp. 1071 (S.D.N.Y. 1990) ................................................................23

*Mallon Res. Corp. v. Midland Bank PLC*,
  96 Civ. 7458(RPP), 1997 U.S. Dist. LEXIS 10346 (S.D.N.Y. July 15, 1997) ......................12

*Markowski v. SEC*,
  34 F.3d 99 (2d Cir. 1994) ................................................................................24

*N. River Ins. Co. v. Phila. Reinsurance Corp.*,
  63 F.3d 160 (2d Cir. 1995) ..............................................................................11

*NAF Holdings, LLC v. Li & Fung (Trading), Ltd.*,
  772 F.3d 740 (2d Cir. 2014) ............................................................................20

*Organ v. Byron*,
  435 F. Supp. 2d 388 (D. Del. 2006) ................................................................14

*Phaneuf v. Tenneco, Inc.*,
  938 F. Supp. 112 (N.D.N.Y. 1996)....................................................................2

*S.E.C. v. East Delta Res. Corp.*,
  No. 10-CV-310, 2012 U.S. Dist. LEXIS 127644 (E.D.N.Y. 2012) .................23

*S.E.C. v. Univ. Express, Inc.*,
  646 F. Supp. 2d 552 (S.D.N.Y. 2009) .............................................................23

*Schneider v. Bress*,
  194 A.D.2d 36, 604 N.Y.S.2d 314 (App. Div. 1993)......................................15

*Sec. & Exch. Comm. v. Moran,*
    944 F. Supp. 286 (S.D.N.Y. 1996) ........................................................................ 23

*SEC v. Caserta,*
    75 F. Supp. 2d 79 (E.D.N.Y. 1999), The SEC .......................................................... 24

*SEC v. Cavanagh,*
    445 F.3d 105 (2d Cir. 2006) ................................................................................ 1

*SEC v. First City Financial Corp.,*
    890 F.2d at 1230 ................................................................................................ 22

*SEC v. Kane,*
    2003 U.S. Dist. LEXIS 5043 (S.D.N.Y. Mar. 31, 2003)............................................ 23

*SEC v. Murphy,*
    626 F. 2d 633 (9th Cir. 1980) .............................................................................. 1

*SEC v. Opulentica,*
    479 F. Supp. 2d 319 (S.D.N.Y. 2007) .................................................................... 24

*SEC v. Patel,*
    93 Civ. 4603 (RPP), 1994 U.S. Dist. LEXIS 9479 (S.D.N.Y. July 12, 1994) .............. 23

*SEC v. Shapiro,*
    494 F.2d 1301 (2d Cir. 1974) .............................................................................. 22

*SEC v. Thomas James Assoc., Inc.,*
    738 F. Supp. 88 (W.D.N.Y. 1990)......................................................................... 23

*Spiegel v. Quality Bakers of Am. Coop., Inc.,*
    91 Civ. 5703 (KTD), 1992 U.S. Dist. LEXIS 17194 (S.D.N.Y. Nov. 10, 1992).......... 1

*Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders In Het Kapitaal Van
    Saybolt International B.V. v. Schreiber,*
    327 F.3d 173 (2d Cir. 2003) ................................................................................. 24

*United States v. Evangelista,*
    122 F.3d 112 (2d Cir. 1997) ................................................................................. 24

*Unocal Corp. v. Mesa Petroleum Co.,*
    493 A.2d 946 (Del. 1985)..................................................................................... 15

*Werking v. Andrews,*
    526 F. App'x 94 (2d Cir. 2013)............................................................................. 2

*Woodworth v. Erie Ins. Co.,*
    2009 U.S. Dist. LEXIS 100834 (W.D.N.Y. 2009).................................................... 3

*WTM, Inc. v. Henneck,*
     125 F. Supp. 2d 864 (N.D. Ill. 2000) ..................................................................... 14

**Statutes**

6 Del.C. Sec. 7309(b)(8) ................................................................................................ 4

15 U.S.C.A. § 1117 ..................................................................................................... 22

Del. Code Ann. tit. 6, § 73-103(a) .............................................................................. 16

Del. Code Ann. tit. 6, § 73-103(a)(17)(a) .................................................................. 17

Del. Code Ann. tit. 6, § 73-207(b)(8) .................................................................. 10, 17

15 U.S.C. §77(d) ........................................................................................................ 23

**Other Authorities**

17 C.F.R. § 230.502(a) ................................................................................................. 9

17 C.F.R. § 230.502(c)(1) .......................................................................................... 17

17 C.F.R. § 230.504(a)(2) ............................................................................................ 8

17 C.F.R. § 230.504(a)(3) ............................................................................................ 9

17 C.F.R. § 230.504(a)(l) ............................................................................................. 8

17 C.F.R. § 230.504(b)(1)(iii) .................................................................................... 14

17 C.F.R. §230.504(b)(2)) ........................................................................................... 9

17 C.F.R. § 230.504(b)(l)(iii) ............................................................................... 10, 17

17 CFR § 270.3c-5 ...................................................................................................... 18

D. Zachary Hudson, *A Case for Varying Interpretive Deference at the State Level,*
     119 Yale L.J. 373  (2009) ...................................................................................... 14

Del. Const. Art. IV, § 11(8) ....................................................................................... 20

Delaware Rule 510(c) ................................................................................................. 19

Delaware Supreme Court Rule 41(b) ......................................................................... 20

*Disqualification of Felons and Other "Bad Actors" From Rule 506 Offerings,* 76 Fed. Reg.
     31518-02,31519 (June 1, 2011) ............................................................................ 19

Ellsworth, *Disgorgement in Securities Fraud Actions Brought by the SEC*, 1977 Duke L.J. 641
    Duke L.J. 641, 651 ................................................................................................ 22

Fed. R. Civ. P 16 ................................................................................................................ 2

Fed. R. Civ. P. 37 ............................................................................................................... 6

Graham G. Martin and David A. Super, *Judicial Deference to Administrative Agencies and Its
    Limits*, Clearinghouse Review ..................................................................................... 14

Restatement of Restitution, ch. 7 (1937) ......................................................................... 22

Rule 501 ..................................................................................................................... *passim*

Rule 504 ..................................................................................................................... *passim*

Defendants Edward Bronson ("Bronson") and E-Lionheart Associates, LLC, d/b/a Fairhills Capital ("ELA") and Relief Defendant Fairhills Capital, Inc. ("Fairhills", collectively "Defendants"), by their undersigned attorneys submit this memorandum of law in opposition to Plaintiff Securities and Exchange Commission's ("SEC") motion for summary judgment. For the reasons set forth herein, summary judgment should be denied.

## ARGUMENT

### I.  The SEC Failed to Introduce Evidence Sufficient to Establish a Prima Facie Violation of Section 5 of the Securities Act for 53 of 63 Issuers

To establish a Section 5 violation, the SEC must set forth evidence in admissible form sufficient to prove (1) that no registration statement was in effect for the securities; (2) that the defendant directly or indirectly sold or offered to sell the securities; and (3) that interstate means were used in connection with the offer or sale. *SEC v. Cavanagh*, 445 F.3d 105, 111 n.13 (2d Cir. 2006). If the SEC proves a prima facie case, "the burden shifts to the defendant to show that the securities were exempt from registration." *Id.*[1]

Should the Court ultimately find that the exemption claimed by Defendants does not apply to part or all of the transactions at issue in this litigation, the SEC's motion for summary judgment should nevertheless be adjudicated only as to the ten issuers identified in the Complaint, and not the sixty-three raised in the instant motion. *See* Rome Aff. ¶¶18 - 20. The identification at summary judgment of dozens of issuers not set forth in the Complaint, or

---

[1]     While the burden shifts to Defendants to prove the exemption upon a *prima facie* showing by Plaintiff of a Section 5 violation, the SEC nevertheless, as the movant on summary judgment, bears the burden of proving that no genuine issue of material fact exists as to the inapplicability of the exemption, even where defendants would have the burden of proof at trial. *SEC v. Murphy*, 626 F. 2d 633, 641 (9th Cir. 1980); *Spiegel v. Quality Bakers of Am. Coop., Inc.*, 91 Civ. 5703 (KTD), 1992 U.S. Dist. LEXIS 17194, at *15 (S.D.N.Y. Nov. 10, 1992) ("on motions for summary judgment, movant bears burden of proving existence or nonexistence of exemption").

thereafter, despite Defendants' demand for such information, constitutes a new claim necessitating amendment of the pleading.

However, because the time to amend the pleadings under the scheduling order in this case has long past, FRCP Rule 16 rather than Rule 15 is controlling. The operative scheduling order in this case, filed July 31, 2015, provided "Amended pleadings may not be filed except with leave of the Court." *See* DE 112.[2] Rule 16(b)(3) directs the court to enter a scheduling order that limits the time to amend the pleadings, and that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). *See Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) ("a party must show "good cause" to amend his or her complaint if the motion is filed after the deadline imposed by the district court in its scheduling order.") The SEC has not acted diligently to either supplement its interrogatory responses or to amend its pleadings, and has not and cannot demonstrate good cause as to why it should be permitted to enlarge its claim from ten issuers to sixty-three.[3]

To the extent this Court finds the SEC has demonstrated good cause in its reply papers, in deciding whether to grant a motion to amend, the court must weigh the good cause shown for the delay against the prejudice to the Defendants that will result from the amendment. *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46-47 (2d Cir. 1983). Considerations of prejudice include whether the new claims would require significant additional discovery, or significantly delay the resolution of the dispute. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

---

[2]      "DE" shall refer to entries on the electronic docket for this action.

[3]      *See Phaneuf v. Tenneco, Inc.*, 938 F. Supp. 112, 115 (N.D.N.Y. 1996) ("[i]n instances where . . . a considerable amount of time has passed between filing the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his or her neglect and delay") (quoting *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), aff'd, 730 F.2d 910 (2d Cir. 1984)). "Good cause" will be found where the moving party has demonstrated "diligence" and the amendment would not significantly prejudice the nonmoving party. *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013).

"However, the absence of prejudice to a nonmoving party does not alone fulfill the good cause requirement of Rule 16(b)." *Woodworth v. Erie Ins. Co.*, 2009 U.S. Dist. LEXIS 100834 (W.D.N.Y. 2009) (*citing Estate of Ratcliffe v. Pradera Realty Co.*, 2007 U.S. Dist. LEXIS 78070 (S.D.N.Y. 2007)) (*emphasis omitted*).

Here, the SEC has not demonstrated any good cause for failing to amend its pleadings to provide adequate notice to Defendants of the scope of its claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"). Moreover, even if good cause is shown, Defendants are inherently prejudiced by the attempt to inject at the last-minute, dozens of issuers absent from the Complaint or identified in written discovery. Therefore, no amendment to the pleadings should be permitted, and the Court should disregard for the purposes of this motion, all but the ten issuers identified in the Complaint.[4]

## II.    The SEC Fails to Disclose the 2010 Opinion of the Delaware Securities Commissioner finding ELA Opinion Letter "Correct"

### A.    SEC Obtains an Opinion from the Delaware Department of Justice in 2010

The SEC began communicating in November 2010 with the Delaware Securities Commissioner in the Delaware Department of Justice in connection with obtaining its opinion concerning the validity of claimed exemptions from registration under Delaware securities laws. In particular, the SEC sent Peter O. Jamison, III, then Securities Commissioner at the Delaware Department of Justice, an email dated November 10, 2010 ("November 10 Email") regarding "Delaware Exemption From Securities Registration." Ex. A (Klug Dep., Ex. 10).[5] The email

---

[4]    While Defendants maintain that only the ten issuers identified in the Complaint are at issue in the instant motion, Defendants' responses to the arguments set forth in the SEC's motion which reach beyond the ten issuers in the Complaint should not be construed by the Court as a concession that such additional issuers are relevant.

[5]    Unless otherwise noted, exhibits are annexed to the Affidavit of William A. Rome, sworn to July 22, 2016.

requested an opinion as to the justification of an attached opinion letter authored by attorney Virginia Sourlis, dated August 23, 2010, which gave an opinion as to whether the issuance of 11,000,000 free-trading shares of GoIP Global Inc. to ELA satisfied the exemption from registration pursuant to Rule 504 of Regulation D ("GoIP Opinion Letter"). In the GoIP Opinion Letter, Ms. Sourlis concluded that the exemption had been satisfied.

Mr. Jamison sent an email to the SEC on November 19, 2010 ("Jamison Opinion"), stating that he had reviewed the GoIP Opinion Letter and "it does appear that Ms. Sourlis' interpretation of 6 Del.C. Sec. 7309(b)(8)[6] and Section 510 of the Rules and Regulations pursuant to the Delaware Securities Act is correct. That being said, if the SEC believes that the use of the Delaware exemption at section 7309(b)(8) in this particular case is contrary to the public interest, please let me know." Ex. A (Klug Dep., Ex. 11).

The Jamison Opinion which endorses the GoIP Opinion Letter unambiguously supports Defendants' interpretation of the DE Exemption and rejects every collateral objection raised by the SEC. For example, the GoIP Opinion Letter provides that the DE Exemption does not prohibit general advertising or solicitation, and therefore, it permits general advertising and solicitation. Ex. A (Klug Dep., Ex. 10 (p.3)). In stating the GoIP Opinion Letter is "correct," the Jamison Opinion, issued by a Delaware Securities Commissioner, approves of the DE Exemption relied on by Ms. Sourlis in the GoIP Opinion Letter and, according to the SEC, another 195 Rule 504 transactions. The GoIP Opinion Letter states "no filings are required" and there is no requirement of investment intent. *Id.* Ms. Sourlis conceded she was licensed only in New Jersey and that her opinion covered in part Delaware Statutory Law and, nevertheless, she was found to be "correct" in her construction of the law. *Id.*

---

[6]     After August 2011, Section 7309(b)(8) was redesignated as Section 73-207(b)(8). Defendants hereinafter refer to each section collectively as the "DE Exemption".

Despite having the Jamison Opinion in its possession since 2010, the SEC did not disclose its existence to either Defendants, or to the Court, during the briefing and argument of Defendants' Rule 12(b)(6) motion to dismiss filed in this action.  Specifically, on March 13, 2013, Defendants moved to dismiss the Complaint, arguing they were entitled to rely on the DE Exemption.  On October 17, 2013, Judge Scheindlin directed production of documents that included the Jamison Opinion and the GoIP Opinion Letter in another Rule 504 action, a case in which the SEC's counsel herein was also of record.  56.1 Statement at pp.91-92, ¶¶36-37.[7] Although the motion to dismiss in this action was *sub judice* at the time Judge Scheindlin directed production of the GoIP Opinion Letter, the SEC did not provide those documents (conveniently) to Defendants in this action until April10, 2014, after this Court's March 31, 2014 Opinion and Order.[8]  *Id.*

### B.  The Court Should Not Consider the Untimely Opinion of Gregory C. Strong

In recognition of the probative value of the contemporaneous Jamison Opinion, on March 28, 2016, after the close of discovery, and without prior disclosure, the SEC produced an opinion of even date from Gregory C. Strong, Investor Protection Director[9] of the Delaware Department of Justice ("Untimely Opinion") in an apparent effort to undo the Jamison Opinion.  56.1

---

[7]     References to the accompanying Defendants' Response to Plaintiff Securities and Exchange Commission's Local Rule 56.1 Statement and Statement of Additional Undisputed Material Facts shall hereinafter be referred to as "56.1 Statement at ¶__".

[8]     Remarkably, the SEC's motion is silent as to the existence of the Jamison Opinion. While the Jamison Opinion may not be binding authority on this Court, the failure to bring it to the Court's attention encroaches upon Rule 3.3(a)(2) of the Model Rules of Professional Conduct, which mandates disclosure of adverse authority.  Even if not controlling, the Jamison Opinion is indisputably highly relevant, particularly given the SEC's characterization of Bronson, Sourlis, the transfer agents, and others professional investors as having acted with intentional or reckless disregard for state and federal securities rules and regulations.  To put it charitably, one can imagine a court would no doubt look unkindly upon a defendant who failed to make such a disclosure were the shoe on the other foot.

[9]     The office of Investor Protection Director was previously known as the Securities Commissioner.

Statement at p.89, ¶27; McGrath Decl., Ex. 7.  The SEC should be precluded from relying on the Untimely Opinion.

Under Rule 37 of the Federal Rules of Civil Procedure, the failure to disclose discovery in a timely manner may result in the imposition of sanctions, including precluding the dilatory response. *The Annuity, Pension, Welfare and Apprenticeship Skill Improvement and Safety Funds of the Int'l. Union v. Colonial Surety Co.*, 2014 U.S. LEXIS 128130 (S.D.N.Y. September 11, 2014); *Chen v. New Trend Apparel, Inc.*, 8 F.Supp.2d 406, 418 n. 2 (S.D.N.Y. 2014). While it is true that preclusion is only to be used in rare situations, such actions "are necessary to achieve the purpose of Rule 37 as a credible deterrent 'rather than a paper tiger." *Colonial Surety, supra* at *19, quoting *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).  Rule 37(b)(2)(A) requires that any sanction issued by the District Court for failure to comply with a discovery order be "just."  Fed. R. Civ. P. 37(b)(2)(A).  To allow the SEC to rely on the Untimely Opinion, produced after the close of discovery, when it was aware of Jamison's diametrically opposed opinion for six years, would be manifestly unjust.

In *Colonial Surety Co.*, for example, a union commenced an action to recover monies owed by a contractor under a collective bargaining agreement which were guaranteed by a surety.  In partial opposition to the surety's motion for summary judgment, the union submitted an audit completed on March 14, 2014 covering the period September 1, 2010 through December 1, 2010 evidencing amounts due.  The union had long known -- just as the SEC had known of Commissioner Jamison's adverse 2010 opinion -- of the need to conduct the audit for the period in question as evidenced by the fact it had demanded an audit in its second amended complaint filed in June 2011.  However, the audit was not provided to the surety until discovery closed.

In words equally applicable here, the District Court precluded the union from relying on the late-produced audit, holding:

> Here, due to the delay in providing the revised audit without justification, the law precludes [the union] from relying on the audit performed for the period of September 2010 through December 2010 and completed on March 14, 2014. Here as in *Chen v. New Trend Apparel, Inc.* [t]here is no dispute that the [party] did not comply with the court-ordered deadline, did not seek its modification, and have offered no explanation, much less a justification, for their delay.

*Id.*, at 19.[10]

Here, the SEC did not even request the Untimely Opinion from the Delaware Securities Commissioner until March 21, 2016, a mere four days before discovery was to end, and nearly a year after discovery was originally scheduled to close in April 2015. 56.1 Statement at p.89, ¶26.  Given that the SEC was aware of Mr. Jamison's November 19, 2010 statement that Ms. Sourlis' construction of the exemption in the GoIP Opinion Letter was correct, the delay is inexcusable.  Simply stated, waiting until the very end of discovery when the adverse position had been known by the SEC for six years, smacks of gamesmanship.  Furthermore, the Untimely Opinion was not provided to Defendants until March 28, 2016, after this Court's extended deadline closing discovery, and even at that time the SEC was not forthcoming when inquiry was made by Defendants, stating that it reserved its right to the use the interpretive Untimely Opinion as it "deem[ed] appropriate going forward." 56.1 Statement at pp.90-91,¶33.

In summary, the SEC did not: i) comply with the Court's March 15, 2016 order which provided that discovery would be extended for ten days, ii) never sought modification of the

---

[10] There is no requirement that when an untimely produced document is objected to in the context of summary judgment that the objecting party must formally move under Rule 37.  *See Colonial Surety, supra* at case 7:11-cv-00178-NSR filed May 30, 2014, DE No. 57 (surety presented argument in reply memorandum without formal notice of Rule 37 motion).

court-ordered deadline and iii) has never provided an explanation for the delay.  Accordingly, it is just that the Untimely Opinion should be disregarded as evidence.  *Colonial Surety*, 2014 U.S. Dist. LEXIS 128130 at *20 ("[D]ue to the delay in providing the revised audit without justification, the Court precludes Plaintiffs from relying on the audit…"); *Chen v. New Trend Apparel, Inc.*, 8 F.Supp.2d at 418 n. 2 (precluding reliance on expert declaration to oppose summary judgment which was submitted after the close of discovery).  If the Untimely Opinion is not precluded, Defendants should be permitted discovery.  *See* Rome Aff. ¶21.

**III.   Defendants Satisfy the Conditions for the Rule 504 Exemption**

Irrespective of the Court's ruling on the admissibility of the Untimely Opinion, Defendants have established as a matter of law, or at a minimum, raised a genuine issue of material fact, regarding the eight conditions of the exemption under Rule 504(b)(1)(iii).  *See* 17 C.F.R. § 230.504(a), (b)(1).  Defendants address each of the eight conditions in turn.

**1.  The Issuer is not Subject to the Reporting Requirements of Section 13 or 15(d) of the Exchange Act (17 C.F.R. § 230.504(a)(l))**

In paragraph 5.2(c) of the respective subscription agreements, the ten issuers identified in paragraph 30 of the Complaint represented and warranted that they were at all relevant times not subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act.  56.1 Statement at p.103, ¶96.  To the extent the Court considers the additional fifty-three issuers raised for the first time by the SEC in the instant motion, the subscription agreements included in Sylvester Decl., Exs. 1-63 each contains the above representation and warranty.

**2. The Issuer is not an investment company (17 C.F.R. § 230.504(a)(2))**

In paragraph 5.2(c) of the respective subscription agreements, the ten issuers identified in paragraph 30 of the Complaint represented and warranted that they were at all relevant times not investment companies.  56.1 Statement at p.103, ¶97.  To the extent the Court considers the

additional fifty-three issuers raised for the first time by the SEC in the instant motion, the

subscription agreements included in Sylvester Decl., Exs. 1-63 each contain the above

representation and warranty.

**3. The Issuer is not a development stage company that either has no specific business plan or purpose or has indicated that its business plan is to engage in a merger or acquisition with an unidentified company or companies, or other entity or person (17 C.F.R. § 230.504(a)(3))**

In paragraph 5.2(c) of the respective subscription agreements, the ten issuers identified in

paragraph 30 of the Complaint represented and warranted that they were at all relevant times not

a development stage company that either had no specific plan or purpose or has indicated that its

business plan is to engage in a merger or acquisition with an unidentified company or companies,

or other entity or person. 56.1 Statement at p.103, ¶98.  To the extent the Court considers the

additional fifty-three issuers raised for the first time by the SEC in the instant motion, the

subscription agreements included in Sylvester Decl., Exs. 1-63 each contains the above

representation and warranty.

**4. The Aggregate offering price shall not exceed $1 million within the twelve months before the start of and during the offering of securities under Rule 504 (17 C.F.R. §230.504(b)(2))**

As set forth in Exhibit 1 to the Rodriguez Declaration, the ten issuers identified in the

Complaint sold securities to ELA at a total purchase price of less than one million dollars within

any twelve month period.  To the extent the Court considers issuers beyond the ten identified in

the Complaint, Rodriguez Ex. 1 demonstrates that for all sixty-three issuers, aggregate sales

totaled less than one million dollars to ELA.

**5. The offers and sales must satisfy the terms and conditions of Rule 502(a), which says, *inter alia*, that all sales that are part of the same Regulation D offering must meet all terms and conditions of Regulation D (17 C.F.R. § 230.502(a))[11]**

---

[11] 17 C.F.R. § 230.502(a): Integration. All sales that are part of the same Regulation D offering must meet all of the terms and conditions of Regulation D. Offers and sales that are made more than six months before the start of a

The so-called "Integration" requirement is satisfied by the representation and warranties of the issuers as set forth in Paragraph 5(c) of the corresponding subscription agreements, which provides, "[t]he [issuer] represents and warrants that...the [issuer] is otherwise in compliance with the requirements of Rule 504 of Regulation D with respect to the offerings contemplated hereby..." This representation sufficiently establishes that the specified transactions are in compliance with Regulation D.  56.1 Statement at p.103, ¶99.

**6. The offer or sale must be "exclusively according to state law exemptions from registration" (17 C.F.R. § 230.504(b)(l)(iii))**

The DE Exemption provides:

> The following transactions are exempted from§ 73-202 ... of this title: ... (8) Any offer or sale to a bank, savings institution, trust company, insurance company, investment company ... or other financial institution or institutional buyer, or to a broker-dealer, whether the purchaser is acting for itself or in some fiduciary capacity.

Del. Code Ann. tit. 6, § 73-207(b)(8).  ELA is also an "institutional buyer" and an "accredited investor" under the Delaware Securities Act because it meets the definition set forth in SEC Rule 501(a)(8).  The DE Exemption permits sales to "institutional buyers" which is defined in Section 510(a)(1) of the Delaware regulations to includes the following: "(1)an 'accredited investor' as defined in SEC Rule 501(a)(l)-(4), (7) and (8).... , excluding, however, any self-directed employee benefit plan with investment decisions made solely by persons that are 'accredited investors' as defined in Rule 501(a)(5)-(6)." *See* 55-200-001 Del. Admin. Code§ 510(a)(l).  As such, by meeting the definition set forth in SEC Rule 501(a)(8) of Regulation D, ELA is  deemed to be an "institutional buyer" for purposes of the relevant Delaware exemption.

---

Regulation D offering or are made more than six months after completion of a Regulation D offering will not be considered part of that Regulation D offering, so long as during those six month periods there are no offers or sales of securities by or for the issuer that are of the same or a similar class as those offered or sold under Regulation D, other than those offers or sales of securities under an employee benefit plan as defined in rule 405 under the Act.

Defendants recognize that this Court, in its Opinion and Order dated March 31, 2014 ("March Order"), denying Defendants' 12(b)(6) motion to dismiss the Complaint, concluded that the language of Rule 504(b)(1)(iii) requires compliance with those state-law exemptions where the securities are offered or sold, and that Delaware incorporation standing alone is insufficient to establish a nexus between the transactions and Delaware sufficient to permit invocation of the DE Exemption. However, as the Court had decided earlier in the decision to deny the motion to dismiss on other grounds, that part of the decision discussing nexus was not necessary to the decision, and should not be considered binding.[12]

More significantly, subsequent to the March Order, certain material and highly relevant information has been disclosed, particularly the existence of the Jamison Opinion, which neither Defendants or the Court were then aware of because the SEC intentionally withheld it. Defendants respectfully request that this Court revisit the issue of Defendants' satisfaction of the nexus requirement, if any, in light of fresh evidence and the authority cited below.[13]

The Jamison Opinion establishes that the Delaware Securities Commissioner agreed that sufficient nexus was present where ELA purchased securities from GoIP Global, Inc., a Nevada corporation based in New York. Despite GoIP's non-Delaware aspects, the SEC sought guidance from the Delaware Securities Commissioner in 2010 as to the transaction, indicating its implicit understanding that a purchaser need only meet the Delaware exemption under Rule

---

[12] *Chem One, Ltd. v. M/V Rickmers Genoa*, 660 F.3d 626, 640 (2d Cir. 2011) ("discussing a legal issue that is not necessary to decide the case is mere dicta and should not be treated as binding "). Nor is "law of the case" doctrine applicable here, as Defendants have not had opportunity to appeal the decision. *N. River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir. 1995) ("a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation").

[13] At a conference before Judge Karas, the Court stated with regard to the 2010 Jamison Opinion, the existence of which had only recently been disclosed by the SEC, "It's clearly relevant. I get it." Transcript of Proceedings, 12/17/14, DE 66.

{00802850.DOC;3 }                    11

504(b)(iii).  Further, Jamison's concurrence with the conclusions in Sourlis' opinion letter make clear that he considered the contemplated transaction to have sufficiently satisfied the Delaware nexus required by the statute, notwithstanding the foreign elements.  Jamison invited the SEC to challenge his view and the SEC was silent.  Ex. A (Klug Dep., Ex. 11).

In addition, ELA's incorporation in Delaware is not its sole contact with the state.  ELA also maintained a virtual office in Delaware, paid franchise taxes in Delaware, and as stated above, elected a choice-of-law in its subscription agreement subjecting it to Delaware's securities scheme.  56.1 Statement at p.44, ¶111; p.103, ¶95; Sylvester Decl., Exs. 1-63, Subscription Agreements at ¶10.  While, individually, these contacts are arguably insufficient to establish nexus, when considered collectively sufficient contact with Delaware cannot be denied.  Further, because it is an open question whether a virtual office in Delaware constitutes sufficient nexus by itself to invoke Delaware Securities Laws, this Court may so find.

The SEC maintains that Defendants must satisfy the exemption requirements of the state where the transactions occurred, and not the state under whose securities laws the exemption is claimed.  While it is generally true that a transaction is governed by the law of any state in which the transaction occurred, under basic contract law, parties may choose the law governing their transactions, including securities transactions, to the exclusion of other state securities laws.  New York has upheld such choice of law clauses in the securities context.  *See Mallon Res. Corp. v. Midland Bank PLC*, 96 Civ. 7458(RPP), 1997 U.S. Dist. LEXIS 10346, at *3 (S.D.N.Y. July 15, 1997) (finding the choice-of-law provision sufficiently broad to cover securities law claims, thus dismissing the plaintiff's Colorado Securities Law claim because the parties had agreed to New York law, thereby precluding the plaintiff's Colorado Securities Law claims where New York law was chosen by the parties to the agreement); s*ee also Boss v. Am. Exp. Fin.*

*Advisors, Inc.*, 15 A.D.3d 306, 791 N.Y.S.2d 12 (1st Dep't 2005) *aff'd sub nom. Boss v. Am. Express Fin. Advisors, Inc.*, 6 N.Y.3d 242, 844 N.E.2d 1142 (2006) (Court would enforce choice of law provisions of employment agreement between financial advisers and financial advisory firm employing them, requiring that breach of contract action be brought under law of Minnesota, even though challenged deductions from pay, allegedly invalid under New York labor law, would be permitted under Minnesota law; fact that Minnesota law lacked cap on otherwise legal deductions, available under New York, did not preclude application of Minnesota law on grounds that enforcement would be offensive to New York public policy.).

The choice of law provisions in the respective subscription agreements between ELA and issuers directs the application of Delaware law to these transactions.  Sylvester Decl., Exs. 1-63, Subscription Agreements at ¶10.  There is broad authority that nexus can be satisfied by a choice of law clause, which allows private parties to opt into a state's securities scheme, regardless of whether other transactional "nexus" exists, and to the exclusion of other state security schemes. In *Chase Manhattan Mortg. Corp. v. Advanta Corp.,* Civil Action No. 01-507 (KAJ), 2005 U.S. Dist. LEXIS 19374 (D. Del. Sep. 8, 2005), the defendant sought summary judgment on, *inter alia*, plaintiff's Delaware securities law claims.  The defendant argued that there was an insufficient nexus between the transaction and Delaware where the only connection with Delaware was defendant's incorporation in the state.  In denying summary judgment as to that claim, the District of Delaware stated that a sufficient nexus with Delaware existed because the parties agreed in the operative deal documents that the agreement would be governed by and construed in accordance with the laws of Delaware. *See also Berckeley Inv. Grp., Ltd. v. Colkitt,* 455 F.3d 195, 224 n.28 (3d Cir. 2006) (securities purchase agreement choosing New York law preempted plaintiff's Pennsylvania Securities Act claim); *Costa v. Carambola Partners, LLC,*

590 F. Supp. 2d 1141 (D. Minn. 2008) (dismissing plaintiffs' Minnesota Securities Act claims

where parties chose Virgin Islands law to govern their agreement, finding that the Act's anti-

waiver provision did not preclude the parties' choice of law); *Organ v. Byron*, 435 F. Supp. 2d

388, 393 (D. Del. 2006) (dismissing plaintiff's Illinois Securities Law claim where the parties

chose Delaware law, the choice-of-law provision was deemed sufficiently broad to encompass

tort claims, and  the relevant Illinois and Delaware securities law provisions were nearly

identical, such that enforcement of the choice-of-law provision would not contravene Illinois

public policy); *WTM, Inc. v. Henneck*, 125 F. Supp. 2d 864, 868 (N.D. Ill. 2000) (choice-of-law

clause selecting Illinois prevented plaintiff's claims under the Minnesota Securities Act).[14]

### 7. The state-law exemption must "permit general solicitation and general advertising" (17 C.F.R. § 230.504(b)(1)(iii))

Commissioner Jamison was asked to review the position taken in the GoIP Opinion

Letter that the DE Exemption permitted general solicitation and advertising and he found Ms.

Sourlis' analysis to be "correct".  While the level of deference Federal District Courts should

afford to state administrative agency determinations of their own state laws is unsettled,[15]

---

[14]     Nor is ELA estopped from arguing that Delaware is a principal place of business.  The SEC asserts that "E-Lionheart admitted three times in this very court that its principal place of business was New York." Rule 56.1 Statement at ¶¶ 102-105 (citing complaint, amended complaint and declaration in *E-Lionheart Assoc., Inc. v. Alkane, Inc.* 11 Civ. 2781).  The SEC's brief, however, is silent as to the evidentiary value of these alleged judicial admissions.  In fact, the law is clear that judicial admissions are not conclusive and binding in a separate case from the one in which the admissions were made.  *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 56 F.Supp.3d 383, 387 n.22 (Although a "party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of a proceeding, it is not considered binding in a subsequent proceeding"); accord *Am. Tissue, Inc. v. Donaldson*, 351 F.Supp.2d 79, 96 (S.D.N.Y. 2004); *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F.Supp.3d 17, 38 (S.D.N.Y. 2015). The strength of the rule is vigorously enforced such that judicial admissions made in a criminal case are not binding and preclusive in a subsequent civil action.  *Known Litig. Holdings, LLC v. Navigators Ins. Co.*, 2016 U.S. Dist. LEXIS 82675 at 15-16 (D. Conn. June 24, 2016).  In accordance with this precedent, the alleged admissions in the Alkane litigation are not binding in this action because they arose in a separate proceeding, but at most may be considered some evidence.

[15] *See generally* D. Zachary Hudson, *A Case for Varying Interpretive Deference at the State Level*, 119 Yale L.J. 373 (2009); Graham G. Martin and David A. Super, *Judicial Deference to Administrative Agencies and Its Limits*,

Defendants urge the Court to accord substantial weight to the Jamison Opinion since it reflected a contemporaneous opinion of the state regulatory authority with oversight of that state's exemption. Delaware state courts accord state agencies' interpretations "due weight". *Hirneisen v. Champlain Cable Corp.,* 892 A.2d 1056, 1059 (Del. 2006) ("A reviewing court may accord due weight, but not defer, to an agency interpretation of a statute administered by it. A reviewing court will not defer to such an interpretation as correct merely because it is rational or not clearly erroneous.") New York State courts, in construing the determination of an agency charged with the administration and implementing regulations of a statute, will uphold the agency determination if not irrational. *Schneider v. Bress*, 194 A.D.2d 36, 37, 604 N.Y.S.2d 314, 315 (App. Div. 1993); *Embee Corp. v. Ringler*, 194 Misc. 2d 400, 401, 752 N.Y.S.2d 786, 787 (Sup. Ct. 2002) (The courts must defer to a rational interpretation of a statute given by the agency charged with administering it).

When the SEC emailed Commissioner Jamison in 2010, it inquired whether the DE Exemption permits general solicitation and general advertising. Ex. A (Klug Dep., Ex. 10). The GoIP Opinion Letter stated in pertinent part, "The Delaware applicable exemption does not prohibit general advertising or general solicitation and therefore, the exemption allows general advertising and general solicitation." *Id.* In his email reply to the SEC, Commissioner Jamison unequivocally stated that "Ms. Sourlis' interpretation of 6 Del. § sec. 7309(b)(8) and section 510 of the Rules and Regulations Pursuant to the Delaware Securities Act is correct." *Id.*

In addition, as a matter of statutory construction, it is axiomatic that unless something is prohibited by statute, it is permitted. *See, e.g., Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 957 (Del. 1985) ("Merely because the General Corporation Law is silent as to a specific

Clearinghouse Review Journal of Poverty Law and Policy, March-April 2007 at 601 ("Federal courts may defer to a state agency's interpretation of state law.") (*citing* Orthopaedic Hospital v. Belshe, 103 F.3d 1491 (9th Cir. 1997).

matter does not mean that it is prohibited."); *Friends of H. Fletcher Brown Mansion v. City of Wilmington,* 34 A.3d 1055, 1060 (Del. 2011) ("As the maxim [*expressio unius est exclusio alterius*] is applied to statutory interpretation, where a form of conduct…[is] affirmatively or negatively designated, there is an inference that all omissions were intended by the legislature.") Thus, because neither the DE Exemption nor the general definition at Section 73-103(b)(2) (or any other section) prohibits general solicitation or advertising, it is permitted.

The same result is achieved by utilizing basic principles of statutory construction.  The Delaware Securities Act defines an "offer" and "offer to sell" as including "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value." Del. Code Ann. tit. 6, § 73-103(a)(1 7)(a).  Clearly, "every attempt or offer to dispose of, or solicitation of an offer to buy" means advertising generally and soliciting by any means. Moreover, "when the word 'includes' is employed in defining a word or term, the definition is not limited to the meaning given, but in appropriate cases the word or term may be defined in any way not inconsistent with the definition given." *Id.* at § 73-103(b)(2).  In other words, the use of "includes" in this definition means "offer" and "offer to sell" should be read broadly to include any kind of offer, including by means of "general solicitation and advertising."

The SEC misconstrues "general solicitation and general advertising" to mean the target of the offer, and not the means by which the offer is conveyed.  However, the SEC's own regulatory definition of "general solicitation and general advertising" expressly defines the term as referring to the method of communication, and not by reference to intended recipients.  Rule 502(c)(1) provides in pertinent part:

> Except as provided in § 230.504(b)(1), neither the issuer nor any person acting on its behalf shall offer or sell the securities *by any form of general solicitation or general  advertising, including, but not limited to, the following: (1) Any advertisement, article, notice or other communication*

> *published in any newspaper, magazine, or similar media or broadcast*
> *over television or radio.*

17 C.F.R. § 230.502(c)(1) (*emphasis added*). This definition focuses solely on the form of solicitation and advertising.  As noted, the Delaware Securities Act defines "offer" to include *"every attempt* or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value." Del. Code Ann. tit. 6, § 73-103(a)(17)(a)) (emphasis added).) Section 73-207(b)(8) covers "any offer." Del. Code Ann. tit. 6, § 73-207(b)(8) ("Any offer or sale to ... institutional buyer. ... ")  Thus, the DE Exemption permits general solicitation and advertising.

**8. The sale must be made "only to 'accredited investors' as defined in§ 230.501(a)" (17 C.F.R. § 230.504(b)(l)(iii))**

**(a) Bronson and ELA are Accredited Investors**

It cannot credibly be disputed that Bronson, and therefore ELA, qualified as accredited investors during the years ELA executed Rule 504 transactions.  The numerous terms and conditions by which one may qualify as an "accredited investor" are detailed in Rule 501 of Regulation D.  Pursuant to Rule 501(c)(6), any person "who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year qualifies as an accredited investor.  Moreover, any entity in which all of the equity owners are accredited investors" qualifies as an accredited investor.  In other words, as ELA's sole equitable owner, if Bronson is an accredited investor, then ELA will be one as well.[16]

The transactions at issue occurred from 2009 to 2012, thus, Bronson would need to qualify as an accredited investor from 2007 to 2012.  Per the accompanying declaration of L.G.

---

[16]    Bronson's wife came to own a 1% share of ELA in 2010, however Bronson's income alone was sufficient to meet the accreditation standard. Ex. P., Nadler Aff., ¶5.

Nadler and annexed exhibits, Bronson's accountant, Bronson received income well in excess of the statutory minimum for each relevant year.

### (b) Co-Funders are Not Equitable Owners of ELA

The SEC argues, without the benefit of case law, that because outside investors and ELA employees contributed funds in connection with certain of ELA's Rule 504 transactions, that this bestows upon such investors *de facto* equitable ownership *of the securities* such that Defendants should be required to establish the accredited investor status of each investor. Critically, the SEC does not argue that the co-funders are *de facto* equity owners of *ELA*. Since it is ELA which must maintain accredited investor status, and since Bronson is the sole equity owner and an accredited investor, there is no question of fact that ELA is an accredited investor.

Nor do ELA's employees who participate in ELA's investments need to establish accredited investor status as they are so-called Knowledgeable Employees, and the SEC has long accorded insiders and similar such employees exemption from these financial requirements, including, by way of example, exemption from being Qualified Purchasers under the Investment Company Act. *See* 17 CFR § 270.3c-5. Employees who participate in investment activities are generally considered to be Knowledgeable Employees provided that such employees have been performing such functions and duties for or on behalf of the fund, or substantially similar functions for another company, for at least 12 months, and perform non-clerical functions, *e.g.* research and/or risk analysts. ELA employees Evan Solomon and Mark Grober easily qualify as Knowledgeable Employees. *See* 56.1 Statement at p.103-107, ¶¶100-115.

### (c) ELA is not an "Agent" for the general public

The SEC has argued, again without the support of any legal authority, that by reselling shares to the general public shortly after it acquires them under the exemption, ELA

impermissibly acted as an "agent" under Delaware Rule 510(c). This interpretation stretches the definition of "agent" beyond the breaking point. There is no question that when securities are offered and sold to accredited investors pursuant to a Rule 504(b)(1)(iii) exempt offering, they are unrestricted and not subject to any resale restrictions. Adoption of the SEC's position, that it is unlawful to purchase securities pursuant to an exemption from registration and then immediately resell them to the public, renders the exemption from registration pointless.

Moreover, the SEC considered in 2007, and rejected, the opportunity to curtail immediate resale under its section 3(b) rulemaking authority. This proves that the SEC is acutely aware that its rules permit companies to issue securities under Rule 504(b)(1)(iii) that are resold to the public. Based on informal discussions with state regulators regarding the usage of the 504(b)(1)(iii) exemption, the SEC considered whether it should amend Rule 504(b)(1) to provide that the limitations on resale set forth in Rule 502(d) would apply to securities sold in a Rule 504(b)(1)(iii) transaction. Such an amendment would result in those securities being "restricted securities" for purposes of Rule 144. *See Exemptions in Regulation D,* 72 Fed. Reg. 45116, 45134 (Aug. 10,2007). The SEC did not adopt the proposed 2007 rule amendment. *See Disqualification of Felons and Other "Bad Actors" From Rule 506 Offerings*, 76 Fed. Reg. 31518-02,31519 (June 1, 2011).

Hence, there is no question that the SEC is aware that companies often issue securities under Rule 504(b)(1)(iii) that are resold to the public, and that this can be done legally under the SEC's rules. Courts should not penalize issuers and investors that comply with and rely on the Commission's own rules and regulations on the matter.

## IV. **This Matter is Ripe for Certification to the Delaware Supreme Court**

The Delaware Constitution permits the Delaware Supreme Court to hear questions certified to it from other forums and entities including the United States Supreme Court, the Courts of Appeals, Federal District Courts, and the SEC.  Del. Const. Art. IV, § 11(8).  Delaware Supreme Court Rule 41(b) provides that certification is to be accepted at the Court's discretion "only where there exist important and urgent reasons for an immediate determination by this Court".  Material facts cannot be in dispute.  Rule 41(b) lists "illustrate[d] reasons" for accepting a certified question, including that a novel Delaware question of law is involved, and where the question of law relates to the constitutionality, construction or application of a Delaware statute which has not been, but should be, settled by the court.  The Second Circuit and the Southern District of New York regularly certify questions concerning Delaware state law to the Delaware Supreme Court.  *See, e.g. NAF Holdings, LLC v. Li & Fung (Trading), Ltd.*, 772 F.3d 740 (2d Cir. 2014); *A.W. Fin. Servs., S.A. v. Empire Res., Inc.,* 2009 U.S. Dist. LEXIS 6510 (S.D.N.Y. Jan. 29, 2009).

The outcome of this action depends upon which of the conflicting interpretations of the Delaware securities regulatory scheme this Court adopts, and therefore this matter is ideally suited for submission to the Delaware Supreme Court for its input and analysis.  Such treatment is particularly apt here, given that SEC's stated position in this action is contrary to the opinion of Commissioner Jamison, each attorney who drafted an opinion letter finding the Delaware exemption applicable, each issuer who entered into the transactions pursuant thereto, and the transfer agents, and their attorneys, who ultimately allocated the securities.

In the event the Court finds it is appropriate for Delaware to construe definitively its own statute, Defendants suggest that this Court certify the following questions to the Delaware Supreme Court for its consideration and resolution:

(i) whether there exists a "nexus" element for an issuer to claim an exemption under 6 Del.C. Sec. 7309(b)(8), and if so, what the pertinent criteria are in establishing such nexus, and

(ii) whether 6 Del.C. Sec. 7309(b)(8) permits general solicitation and advertising in accordance with Rule 504(b)(1)(iii).

## V.   The SEC Has Not Properly Calculated Damages

### A.   The SEC Offered Insufficient Evidence to Substantiate Damages Calculations

In the event this Court grants part or all of the SEC's motion and seeks to assess damages, the Court should only consider the issues properly before the Court. As set forth in Part I above, only ten issuers were identified in the Complaint and subsequent written discovery, and therefore the basis of any damages must be limited only to those issuers. Should the Court in its discretion look beyond the pleadings and accept and consider the evidence offered in the SEC's supporting declarations, then the damages assessed should be limited only to such evidence actually presented by the SEC, i.e. the 63 individual tranches, and not the additional 290 individual tranches referenced in the Sylvester Declaration but for which the underlying documentary evidence was not submitted. *See* Sylvester Decl., ¶4, and Exs. 1 – 63.

### B.   The SEC's Disgorgement Figure is Overstated

#### 1.   The SEC Does Not Support Its Net Profit Calculation

The SEC seeks disgorgement of Defendants' alleged ill-gotten gains. The SEC seeks disgorgement of $9,6321,646.93, representing its calculation of ELA's net profits associated with 353 tranches of securities purchased from 63 issuers. *See* Rodriguez Declaration, ¶4. As previously stated, this Court should not consider the SEC's arguments or evidence concerning any issuers outside of the ten identified in the Complaint. Should the Court so limit its review, the net profit figure would be $166,446.50. 56.1 Statement at p.109, ¶121.

However, should the Court look beyond the pleadings and consider all 63 issuers from which ELA purchased securities, the disgorgement calculation should nevertheless be limited only to those 63 tranches for which the SEC has introduced documentary support on this motion. *See* Sylvester Decl., Exs. 1 – 63.  Limited to this collection of 63 tranches, the net profit figure would be $1,808,519.09.  56.1 Statement at pp.109-112, ¶¶123-125.[17]

## 2.  Defendants are Entitled to an Offset for Expenses

In fixing the measure and amount of disgorgement, courts may not inflict a penalty or effect a forfeiture; the amount to be disgorged must be "causally related to the wrongdoing." *SEC v. First City Financial Corp.*, 890 F.2d at 1230.  While a securities law violator may not avoid or diminish his responsibility to return his ill-gotten gains by establishing that he is no longer in possession of such funds due to subsequent, unsuccessful investments or other forms of discretionary spending (*see e.g., SEC v. Shapiro*, 494 F.2d 1301, 1309 (2d Cir. 1974)), a Court may consider as an offset the sums which a defendant paid to effect a fraudulent transaction. *See* Restatement of Restitution, ch. 7 (1937); *see also* Ellsworth, *Disgorgement in Securities Fraud Actions Brought by the SEC*, 1977 Duke L.J. 641, 651.

For example, even where Congress has expressly provided a disgorgement remedy in a statutory context, as in the area of trademark infringement, it has provided that a violator is entitled to set off all proven costs or deductions against the profits accruing from his violation. *See, e.g.*, 15 U.S.C.A. § 1117 (West 1982 and Supp. 1990); *see also Aladdin Manufacturing Co.*

---

[17]  Moreover, the SEC has known of Commissioner Jamison's endorsement of ELA's exemption since 2010, and nevertheless, stalled commencement of this suit until August 2012, causing Defendants to accrue years of profits only now alleged to be wrongful.  It should therefore be estopped from assessing damages for such period owing to its own lack of speed. *See* Amended Answer, Second Affirmative Defense, DE 116.

*v. Mantle Lamp Co. of America*, 116 F.2d 708 (7th Cir. 1941) (disgorgement of profits from trademark infringer necessarily involves deduction of the cost of realization of those profits.)[18]

Here, ELA incurred substantial transaction costs associated with the allegedly improper transactions, and is entitled to have deducted from any disgorgement figure such reasonably incurred expenses.  Such expenses include brokerage commissions for execution of the trades, legal costs associated with a review of each proposed transaction and the drafting of opinion letters, and fees paid to the transfer agents to execute the allocation of securities.  56.1 Statement at p.107, ¶118.  There is clearly a question of fact as to the amount of damages and the amount of expenses to be deduced therefrom.  Assuming a determination of liability and an order of disgorgement, offsetting expenses should be determined at trial.

### 3.     Defendants' Good Faith Reliance on Counsel Warrants Imposition of Minimal Civil Penalties, if any

Civil penalties are discretionary in nature.[19]  Here, where Defendants' actions were determined to be in accord with the securities laws of the State of Delaware by virtue of the Jamison Opinion, the imposition of any civil penalty is unwarranted.  Further, it cannot plausibly be maintained that Defendants actions involved "reckless disregard of a regulatory requirement".

---

[18]      Courts have offset disgorgement amounts by taking into consideration such expenses including but not limited to brokerage commissions, telephone charges, underwriting expenses and a proportionate share of overhead. *SEC v. Thomas James Assoc., Inc.*, 738 F. Supp. 88, 92 (W.D.N.Y. 1990). "[A] court may, in its discretion, deduct from the disgorgement amount any direct transactions costs, such as brokerage commissions." *S.E.C. v. Univ. Express, Inc.*, 646 F. Supp. 2d 552, 564 (S.D.N.Y. 2009); *Litton Inuds., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F. Supp. 1071, 1077 (S.D.N.Y. 1990) ("[T]ransaction costs such as brokerage commissions incurred by [defendant] in executing trades in [the company's] securities should be deducted from any fees and commissions disgorged as profit."); *S.E.C. v. East Delta Res. Corp.*, No. 10-CV-310, 2012 U.S. Dist. LEXIS 127644 (E.D.N.Y. 2012).

[19]      *See, e.g. SEC v. Kane*, 2003 U.S. Dist. LEXIS 5043, at *11 (S.D.N.Y. Mar. 31, 2003); *Sec. & Exch. Comm. v. Moran,* 944 F. Supp. 286, 297 (S.D.N.Y. 1996) ("Each case...has its own particular facts and circumstances which determine the appropriate penalty to be imposed.").  In some instances no civil penalty was assessed even where liability was determined. *See SEC v. Patel*, 93 Civ. 4603 (RPP), 1994 U.S. Dist. LEXIS 9479, at *11 (S.D.N.Y. July 12, 1994).  Further, to assess any penalty above the first tier of the penalty structure set forth of Section 20(d) of the Securities Act, 15 U.S.C. §77(d), it must be shown that the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement."

At all times Bronson relied in good faith on the opinion of retained counsel.  To establish a reliance on the advice of counsel defense, a defendant "has to show that he made complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith." *Markowski v. SEC*, 34 F.3d 99, 105 (2d Cir. 1994). *See also United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997).  A defense of reliance on advice of counsel is available to show that a defendant lacked the requisite specific intent. *Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 327 F.3d 173, 183 (2d Cir. 2003).

The degree of scienter is considered in assessing a civil penalty. *SEC v. Opulentica,* 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007).  Bronson's good faith reliance on counsel demonstrates scienter was not present, and the Jamison Opinion supports the conclusions of counsel.[20]  Good faith reliance on the advice of an attorney has been recognized as a viable defense to scienter in securities fraud cases. *SEC v. Caserta*, 75 F. Supp. 2d 79, 94-95 (E.D.N.Y. 1999).[21]

Bronson's good faith was not based solely on Sourlis' opinion, but on the concurring opinion of each attorney who prepared an opinion letter for subsequent Rule 504 transactions. Joslyn Claiborne, Director of Securities for Pacific Stock Transfer Co. ("Pacific"), testified that

---

[20]     Bronson relied on advice from Jack Becker, Esq. (Ex. G, p. 51) and Virginia Sourlis (*Id.*, p.101), and on additional counsel who provided opinion letters in connection with the ELA's Rule 504 transactions.

[21]     The SEC attempts to make hay from so-called "red flags", including the emails of Carl Duncan, counsel for one of the Issuers (SDVI), who sent a series of emails to Sourlis and ELA employees Grober and Wells questioning whether it was appropriate to rely upon an exemption from registration under Delaware law for sales to ELA. However, Sourlis responded to Duncan's queries, apparently to his satisfaction (which the SEC failed to note), as SDVI entered into the transaction with ELA less than two weeks after his email exchange. *See Rodriguez* Ex. 4, p.27; 56.1 Statement at p.107, ¶117.  The SEC also cited testimony from Evan Solomon, an employee of ELA, who expressed concerns to Bronson about the applicability of an exemption.  However, while Solomon was experienced in the mechanics of Rule 504 transactions, he primarily worked in sales, has no legal training and holds no professional licenses.  Thus, his opinions on the application of a statutory exemption are trumped by Jamison's Opinion.

Pacific maintained a checklist of procedures that had to be followed entitled "Treasury Issuance Checklist" which required an opinion letter authorizing the proposed Rule 504 transaction. 56.1 Statement at p.95, ¶55. Without an opinion letter, Pacific Stock Transfer Co. would not issue or transfer shares pursuant to Rule 504(b)(1)(iii). *Id.* at p.95, ¶56. The checklist requirements for Pacific to proceed with an issuance under Rule 504 included that all such requests be approved by outside counsel Anslow & Jaclin before they were processed. *Id.* at p.96, ¶57. Anslow & Jaclin reviewed all requests for shares to be issued pursuant to Rule 504 and received all of the required documentation referenced in the checklist. *Id.* at p.96, ¶59. Island Stock Transfer was another transfer agent ELA worked with, who was also provided opinion letters without which, barring a court order, they would not effect a transfer. *Id.* at p.97, ¶73. Based on the number of persons and entities who all agreed on the application of the exemption, including a Delaware Securities Commissioner, it is clear Bronson's reliance on his counsel was in good faith.[22]

## CONCLUSION

For all the above reasons, the Court should deny the SEC's Motion for Summary Judgment.

Dated: New York, New York
   July 22, 2016

ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.

Respectfully submitted,

William A. Rome
Michael A. Eisenberg
875 Third Avenue, 9th Floor
New York, New York 10022
Tel: (212) 603-6300
*Attorneys for Defendants*

---

[22] Should the Court find that the exemption applied and denies summary judgment as to ELA, clearly there is no grounds for finding unjust enrichment against Fairhills on Count II of the Complaint.