UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

  -v-

EDWARD BRONSON and
E-LIONHEART ASSOCIATES, LLC,
d/b/a FAIRHILLS CAPITAL,

                Defendants,
  -and-

FAIRHILLS CAPITAL, INC.,

                Relief Defendant.

No. 12-CV-6421 (KMK)

ORDER

KENNETH M. KARAS, District Judge:

In an Opinion & Order dated March 27, 2017, the Court granted summary judgment in favor of the United States Securities and Exchange Commission ("SEC"). (*See* Op. & Order 36 (Dkt. No. 178).) The Court ordered Edward Bronson ("Bronson") and E-Lionheart Associates, LLC ("E-Lionheart" and, with Bronson, "Defendants") "to provide the SEC with a calculation of their transaction expenses for the purpose of calculating the disgorgement figure within seven days of the date of th[e] Opinion & Order," and instructed the SEC "to submit a revised prejudgment interest calculation based on the revised disgorgement amount, and a proposed final judgment within seven days thereafter." (*Id.*)

In a letter dated April 10, 2017, Paul Rachmuth, Esq., "counsel retained by Edward Bronson for the specific, limited purpose of representing him in matters relating to his pending bankruptcy," informed the Court that "Mr. Bronson request[ed] a 30-day extension of his time to provide the expense calculation (through May 10, 2017)." (Letter from Paul Rachmuch, Esq. to

Court (Apr. 10, 2017) (Dkt. No. 179).) The reason for the request was "to allow [Bronson] time to retain replacement counsel who will help him provide the requested information and otherwise assist in his defense." (*Id.*)[1] The letter further stated that counsel for the SEC "consent[ed] to the 30-day extension with the understanding that the SEC will not consent to any further extensions for this issue." (*Id.*) The Court granted the request, with the specific instruction that there would "be no more extensions." (*See* Dkt. No. 180.)

On May 17, 2017, the SEC filed a letter informing the Court that on May 10, 2017, Mr. Rachmuth "emailed [counsel for the SEC] and requested additional time to provide the requested information" and "the SEC declined to consent to that request." (Letter from Kevin P. McGrath, Esq. to Court ("McGrath Letter") 1 (Dkt. No. 182).) Attached to the letter is a copy of an email from Mr. Rachmuth, sent May 10, 2017, providing a "cost breakdown" from Bronson's former counsel. (*See* McGrath Letter Ex. B, at 1). In the email, Mr. Rachmuth stated that "[Bronson] ha[d] contacted [his prior accountant] to obtain the analysis" on which the cost breakdown was based," but "as yet, . . . ha[d] not been able to get [it]." (*Id.* at 2.) Mr. Rachmuth "ask[ed] [the SEC] consent to provide . . . a bit more time to get it" considering "the progress [Bronson] ha[d] made so far." (*Id.*) In an email in reply, the SEC declined to consent to further extensions, citing the Court's March 2017 Opinion & Order and noting that Defendants have not submitted "a calculation of their transaction expenses" as requested. (*Id.* at 1 (internal quotation marks omitted).) The SEC further replied that it "intend[ed] to file a proposed final judgment on or before May 17, 2017 based on [the SEC's] disgorgement calculations, and w[ould] note that, in

---

[1] In an Order dated January 11, 2017, the Court granted Robinson Brog Leinwand Greene Genovese & Gluck P.C.'s motion to withdraw as counsel. (*See* Order (Jan. 11, 2017) 7 (Dkt. No. 177).) The Court also directed Defendants "to retain new counsel within 30 days of the date of th[e] Order." (*Id.*)

2

[its] view, Mr. Bronson ha[d] failed to provide . . . the 'transaction expenses' requested by the Court." (*Id.*) In response, Mr. Rachmuth clarified that "[t]he numbers provided are the product of [Defendants'] calculations for the transaction expenses"—what Mr. Rachmuth "believe[d] [were] based on [Generally Accepted Accounting Principles ('GAAP')]" and that he "expect[ed] to have the backup for [the] calculations to [the SEC] before [its] intended submission date." (*Id.*) In its May 17, 2017 letter to the Court, the SEC asserted that "[t]o date [it had] received no such back-up documentation." (McGrath Letter 2.)

The Court agrees with the SEC that the "Options" for "pro rata allocation" and "category allocation," (McGrath Letter Ex. B), are nonresponsive to the Court's order to "to provide the SEC with a calculation of [Defendants] transaction expenses for the purpose of calculating the disgorgement figure," (Op. & Order 36). The Court is perplexed by the categorization of proceeds into "Delaware" and "Non-Delaware" profits and as well as the "investment[s]" and "salaries" purportedly expended by Defendants. (McGrath Letter Ex. B, at 2.) In any event, none of the information Mr. Rachmuth sent to the SEC speaks to the "direct transaction costs" the Court directed Defendants to provide. (Op. & Order 31 (internal quotation marks omitted).) Having reviewed the thorough submissions from the SEC, the Court relies on the direct transaction cost calculations provided therein. (*See* Aff. of Doreen Rodriguez ("Rodriguez Aff.") (Dkt. No. 183).)[2]

---

[2] The Court notes that it is within its discretion to deduct direct transaction costs. *See SEC v. McCaskey*, No. 98-CV-6153, 2002 WL 850001, at *4 (S.D.N.Y. Mar. 26, 2002) (report and recommendation) (noting a court "may, *in its discretion,* deduct from the disgorgement amount any *direct transaction costs,* such as brokerage commissions, that plainly reduce the wrongdoer's actual profit") (emphasis added); *SEC v. Rosenfeld*, No. 97-CV-1467, 2001 WL 118612, at *2 (S.D.N.Y. Jan. 9, 2001) (report & recommendation) (noting that "[a] court may in its discretion, deduct from the defendant's gross profits certain expenses incurred while garnering the illegal profits, including . . . transaction costs such as brokerage commissions").

Accordingly, for the reasons stated in the Court's Opinion & Order dated March 27, 2017, the Clerk of Court is respectfully directed to enter Final Judgment as follows:

It is hereby ORDERED AND ADJUDGED THAT

    1. Defendants are permanently enjoined from violating § 5 of the Securities Act of 1933, 15 U.S.C. § 77e;

    2. Defendants are permanently barred from participating in any offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock;

    3. Defendants are jointly and severally liable for disgorgement of $9,355,271.79 and prejudgment interest thereon in the amount of $2,177,100.59; and

    4. Bronson is liable for a civil penalty in the amount of $150,000.00 and E-Lionheart is liable for a civil penalty in the amount of $725,000.00, pursuant to 15 U.S.C. § 77t(d).[3]

Defendants shall pay these amounts to the SEC within 14 days of the date of this Final Judgment.[4]

---

[3] As detailed in the Affidavit of Doreen Rodriguez, the SEC "identified three categories of transaction expenses": (1) brokerage fees in the amount of $127,257.74; (2) transfer agent fees in the amount of $10,696.50; and (3) monthly custodial fees charged to E-Lionheart by UMB Investment Services Group in the amount of $139,421.09. (Rodriguez Aff. ¶¶ 4–6.) The sum of these amounts, $277,375.33, was then divided by 63—to represent the 63 securities issuers—to determine the pro rata transaction expense of $4,402.78. (See id. ¶¶ 7–8.) This pro rata figure was subtracted from the disgorgement amount. (See id. ¶ 8.) For four of the securities, Defendants experienced a net loss; that amount was thus subtracted from the disgorgement figure. (See id.) For the 59 securities for which Defendants netted a profit, the SEC calculated the prejudgment interest "starting at the month after the last sale of the security and ending on May 31, 2017." (Id. ¶ 9.)

Charts identifying the brokerage fees, transfer agent fees, and monthly custody fees are attached to the Affidavit of Doreen Rodriguez as Exhibits A–C. (See Rodriguez Aff. Exs. A–C.) Charts identifying the net profits and prejudgment interest calculations for each issuer are attached as Exhibits D and E. (See Rodriguez Aff. Exs. D–E.)

[4] Defendants are to contact the SEC for instructions on transmitting payment electronically or directly from a bank account, or paying by certified check, cashier's check, or United States postal money order.

It is further ORDERED AND ADJUDGED THAT, pursuant to Title 11, § 523 of the United States Bankruptcy Code, any debt for disgorgement, prejudgment interest, civil penalty, or other amounts due by Bronson, and any entity that is deemed his alter ego, under this Final Judgment, is a debt for the violation by Bronson of the federal securities laws or any regulation or order issued under such laws, as set forth in Title 11, § 523(a)(19) of the United States Bankruptcy Code.

This Court shall retain jurisdiction of this Action for the purposes of enforcing the terms of this Final Judgment.

SO ORDERED.

DATED: June 7, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE