

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

November 18, 2021

**By ECF**
Hon. Kenneth M. Karas
United States District Court
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, New York 10601-4150

      Re:   *U.S. Securities and Exchange Commission v. Bronson et al.,*
             12-CV-6421 (KMK)

Dear Judge Karas:

    I write to provide a status update on the discovery the Court Ordered Defendant Edward Bronson ("Bronson") to provide by November 17. DE 292. Bronson has not fully complied with the Court's Order. To the extent that Bronson has provided documents, they suggest access to significant funds. The documents also render any claim that Bronson has no ability to pay impossible. Thus, Bronson cannot escape contempt.

    As background, after entering a payment plan with the Commission that essentially required Bronson to make $1.1 million per month payments to the Commission starting on August 13, Bronson made the first payment late and then stopped paying altogether. Consequently, he has now missed the September, October and November payments.

    Bronson claims he lacks financial capacity. DE 272. Yet his filing provided no detail about his purported incapacity. DE 272. And only a defendant's "*complete* inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (emphasis added; internal citations omitted). Contempt is not avoided by showing an inability to pay the entire judgment. *SEC v. Musella*, 818 F. Supp. 600, 602 (S.D.N.Y. 1993). "Inability to comply is only a complete defense if he cannot pay any of the judgment; otherwise, he must pay what he can." *SEC v. Bilzerian*, 112 F. Supp. 2d 12, 17 (D.D.C. 2000) (internal citations omitted). This is so "even if making the payment results in a diminution of his income or his relatively comfortable standard of living." *Musella* at 602. And a court is not required to credit an alleged contemnor's "incredible" denials of an ability to pay. *Huber* at 10 (internal citations omitted).

    The Court ordered Bronson to provide proof of his lack of ability to pay by November 17th – ahead of a November 22 hearing on this issue. Bronson has not

provided all the documents the Court ordered. To the extent that Bronson provided information, it is not "categorical and in detail." *Bilzerian* at 16. Moreover, the documents Bronson provided render impossible any suggestion that Bronson is entirely unable to make payments toward the Court's Judgment.

The Court specifically ordered Bronson to provide, for the period from July 1 to the present, the following: (i) proof of all sources of income and the amount of that income; (ii) for all other funds received directly or indirectly the amount and source of those funds; (iii) proof of all expenses he claims for himself and his family; (iv) all amounts he has transferred to third parties; (v) documents reflecting all financial accounts for the Bronson family and every Top Knot entity and any other entity or person that pays expenses for the Bronsons; and (vii) a current mortgage statement for the Bronsons' residence. DE 292.

The bank statements produced show hundreds of thousands of dollars flowing to Top Knot Inc. from abroad. Bronson has not explained the receipt of these funds nor how much more to which he has access or is entitled. Exs. C, D. Thus, it is impossible to assess whether more funds from these or other sources would allow him to comply with the Court ordered payment plan.

In addition, the Top Knot Inc. bank statements reveal that Bronson has not identified all of his income sources as ordered. For example, in August and September, Mr. Rachmuth (Bronson's attorney) sent Bronson around $630,000 from his attorney escrow account. Exs. C, D. Bronson has not explained the source of these funds.[1] Thus, Commission counsel requests that the Court order Mr. Rachmuth to attend the November 22 Hearing and answer questions about these funds and about non-privileged financial transactions with Bronson as it appears that Bronson uses Rachmuth's escrow account as a private banking institution.

Furthermore, Top Knot Inc.'s bank statements reflect exorbitant spending on limousines, the Ritz Carlton, fine dining, high end retail and more. *E.g.* Exs. C, D. If these are personal expenses of Bronson and his family, a significant portion of them could be used to make the Court ordered payments.

As described herein, Bronson did not provide all of the documents as ordered. In another example, Bronson did not provide a current mortgage statement for the Bronsons' residence. In trying to resolve this issue, Commission counsel specifically pointed this omission out to Bronson's counsel after receiving documents on November 17. Ex. A. Counsel advised that all the intended documents had been produced and offered no reason for the omission. Ex. B.

Finally, the Top Knot Inc.'s bank records suggest that when Bronson sent the Commission a check for $600,000, dated August 27, 2021, Top Knot Inc. did not have the funds available to make the payment. DE 281, Exs. C, D. Top Knot Inc.'s account

---

[1] As the Commission described in its contempt application, he has previously used Mr. Rachmuth's escrow account to receive funds from an investment client. DE 201-1.

balance on August 27 was $103,266.64.  *Ex. C*, p. 14.  Thus, Bronson's representation to the Court that he "was not aware that the U.S. Treasury rejected Top Knot's bank check until the SEC brought it to Mr. Bronson's attention through counsel" strains credulity.  DE 284.  Based on Top Knot Inc.'s bank records, only after Mr. Rachmuth transferred almost $400,000 to Top Knot Inc. on September 13, 2021 (part of the $630,000 transferred) – from a yet undisclosed source of funds available to Bronson - was Bronson able to make the payment in mid-September.  Ex. D, pp. 5, 8.

In light of the foregoing, the Commission respectfully requests that the Court order Bronson to provide detail about his and Top Knot Inc.'s offshore income and a current mortgage statement for the Bronsons' residence and impose any appropriate sanction for his failure to provide discovery and his contempt of the Judgment. The Commission further requests that Bronson bring sufficient copies of each document produced in response to this proposed order to the November 22 hearing.  Finally, the Commission further requests that the Court order Mr. Rachmuth to appear and be prepared to testify at the November 22 hearing.

Respectfully submitted,<br>
s/*Maureen Peyton King*

All requests are granted:  Mr. Bronson is to provide substantial details about his and Top Knot's offshore income, assets and cashflow, a current mortgage statement for the residence where the Bronsons reside.  Also, Mr. Bronson is to bring multiple copies of each document produced in response to the November 22 hearing.  Failure to comply with these directives could result in a contempt finding.  Mr. Rachmuth is to appear and be prepared to testify at the November 22 hearing, which will not be adjourned.

So Ordered.

11/18/21