**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
                                                            :
**SECURITIES AND EXCHANGE COMMISSION,**     :
                                                            :          **12 Civ. 6421 (KMK)**
                              **Plaintiff,**                :
                                                            :          **ECF CASE**
              **v.**                                        :
                                                            :
**EDWARD BRONSON and**                          :
**E-LIONHEART ASSOCIATES, LLC,**           :
**d/b/a FAIRHILLS CAPITAL,**                    :
                                                            :
                              **Defendants**               :
              **and**                                       :
                                                            :
**FAIRHILLS CAPITAL, INC.,**                    :
                                                            :
                              **Relief Defendant.**    :
-----------------------------------------------------------------------x

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S**
**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT EDWARD**
**BRONSON'S MOTION FOR RELIEF FROM THE FINAL JUDGMENT**
**UNDER FED. R. CIV. P. RULE 60(b)**

Kevin P. McGrath
Attorney for Plaintiff
Securities and Exchange Commission
New York Regional Office
3 World Financial Center – Suite 400
New York, New York 10281
(212) 336-1100

December 13, 2021

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

PROCEDURAL BACKGROUND .................................................................................... 4

    I.      The Complaint. ................................................................................................. 4

    II.    The Final Judgment ......................................................................................... 5

        A. The Disgorgement Award ........................................................................... 5

        B. The Civil Penalty ........................................................................................ 6

        C. The Section 5 Injunction and Penny Stock Bar .......................................... 6

    III.   Defendants' Appeal from the Final Judgment ................................................. 7

    IV.   Bronson's Refusal to Comply with the Final Judgement ................................ 8

ARGUMENT ................................................................................................................... 11

    I.      Bronson's Motion is Untimely ...................................................................... 11

    II.    Bronson's Argument that the Final Judgment Is Void for Lack of Jurisdiction under Rule 60(b)(4) Fails Because the Claimed Erroneous Disgorgement Award Is Not A Jurisdictional Issue. .............................................................................. 13

    III.   The Final Judgment Is Not Inconsistent with Recent Supreme Court Precedent. ...... 15

        A.    The Final Judgment Is Not Inconsistent with *Liu*. ................................. 15

        B.    The Final Judgment Is Not Inconsistent with *Kokesh*. ........................... 18

        C.    The Final Judgment Is Not Inconsistent with *AMG Capital Management*. .......... 19

    IV.   A Change in Law Is Not a Basis to Vacate a Judgment under Rule 60(b)(6) ............. 19

V.      Bronson's Motion to Vacate the Disgorgement Award Under Rule 60(b)(5) Fails
        Because the Final Judgment Has Not Been Satisfied.  ..................................................21

VI.     Bronson's Motion to Vacate the Section 5 Injunction and Penny Stock Bar Is
        Untimely and Not Otherwise Warranted under Rule 60(b) and Was Waived. ..........22


CONCLUSION...................................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Agostini v. Felton,* 521 U.S. 203 (1997) ........................................................................19

*Am. Arb. Ass'n, Inc. v. Defonseca,* No. 93-cv- 2424, 1997 WL 102495 (S.D.N.Y. Mar. 6, 1997) ....................................................................................................................................................13

*Amica Mutual Ins. Co. v. Noel,* No. 16-cv-469, 2017 WL 2311857 (D. Conn. May 26, 2017)....12

*AMG Capital Management., LLC v. FTC,* 141 S. Ct. 1341 (2021) ...............................................19

*Atlantic Marine Construction Co., v. United States District Court,* 134 S. Ct. 568 (2013) ..........20

*Central Vt. Pub. Serv. Corp. v. Herbert,* 341 F.3d 186 (2d Cir. 2003) ................................... 2, 11

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) .......................... 25n

*DeWeerth v. Baldinger,* 38 F.3d 1266 (2d Cir. 1994).................................................................. 21

*Empresa Cubana Del Tabaco v. General Cigar Co. Inc.*, 385 F. App'x. 29 (2d Cir. 2010).........11

*FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019).......................................................19

*Gonzalez v. Crosby*, 545 U.S. 524 (2005)....................................................................................19

*Kokesh v. SEC,* 137 S. Ct. 1635 (2017) ................................................................ 1, 2, 3, 18, 23-24

*Liu v. SEC,* 140 S. Ct. 1936 (2020) ............................................... 1, 2, 3, 14, 15, 16, 17, 18, 23-24

*Manney v. Intergroove Tontrager Vertriebs GMBH,* No. 10-cv-4493, 2012 WL 4483092 (E.D.N.Y. Sept. 28, 2012)..............................................................................................................12

*Marrero Pichardo v. Ashcroft,* 374 F.3d. 46 (2d Cir. 2004).....................................................21n

*McFadden v. Poole*, No. 07-CV-6475T, 2014 WL 636575 (W.D.N.Y. Feb. 18, 2014) ..............12

*Nemaizer v. Baker,* 793 F.2d 58 (2d Cir. 1986)...........................................................................11

*PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894 (2d Cir. 1983) ....................................................11

*Rudgayzer v. Google, Inc.,* No. 13-cv-120 (ILG) (RER), 2014 WL 12676233 (E.D.N.Y.  Feb. 10, 2014) ................................................................................................................................20

*Saad v. SEC,* 873 F.3d 297 (D.C. Cir. 2017) ...............................................................24

*Saad v. SEC*, 980 F.3d 103 (D.C. Cir. 2020) ..............................................................24

*Saunders v. Goord*, No. 98-cv-8501, 2007 WL 1434974 (S.D.N.Y. May 17, 2007)...........21-22

*SEC v. Ahmed*, No. 15-cv-13042, 2021 WL 916266 (D. Mass. Mar. 10, 2021) ...................16, 20

*SEC v. Amerindo Investment Advisors Inc.*, No. 05-cv-5231 (RJS), 2017 WL 3017504 (S.D.N.Y. July 14, 2017)................................................................................................................19

*SEC v. Blackburn*, 15 F.4th 676 (5th Cir. 2021) ............................................................16

*SEC v. Boock*, 750 F. App'x 61 (2d Cir. 2019) ...........................................................14

*SEC v. Boock,* No. 09-cv-8261, 2019 WL 2074725 (S.D.N.Y. May 10, 2019) ...........................20

*SEC v. Bronson,* 756 Fed. Appx. 38 (2d Cir. 2018) ........................................................2, 8, 18

*SEC v. Bronson*, 246 F. Supp. 3d 956 (S.D.N.Y. Mar. 27, 2017) ...........................5, 6, 7, 16, 23

*SEC v. Cavanagh,* 155 F.3d 129 (2d Cir. 1998) ..............................................................22, 23

*SEC v. Durante*, 641 F. App'x 73 (2d Cir. 2016) ..........................................................11

*SEC v. First Jersey Sec. Inc.,* 101 F.3d 1450 (2d Cir. 1996).........................................8, 17, 24, 25

*SEC v. Gentile,* 939 F.3d 549 (3d Cir. 2019)..............................................................24

*SEC v. Laura*, No. 18-cv-5075, 2020 WL 8772252 (E.D.N.Y. Dec. 30, 2020) ...........................18

*SEC v. Liu,* No. 16-cv-00974-CJC, 2021 WL 2374248 (C.D. Cal. June 7, 2021) .......................17

*SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082 (2d Cir. 1972) ......................................24, 25

*SEC v. Owings Group LLC*, No. RDB-18-2046, 2021 WL 1909606 (D. Md. May 12, 2021) .....16

*SEC v. Penn,* No. 14-cv-581 (VEC)*,* 2021 WL 1226978 (S.D.N.Y. Mar. 31, 2021)........13, 17, 20

*SEC v. Radius Capital Corp.*, No. 11-cv-116 (JES), 2017 WL 3446912 (S.D. Fla. Aug. 11, 2017) ................................................................................................................20

*SEC v. Romeril*, 15 F.4th 166 (2d Cir. 2021) ..............................................................14

*SEC v. Westport Capital Mkts., LLC*, No. 17-cv-2064, 2021 WL 2801626 (D. Conn. July 6, 2021) ..........................................................................................................16, 18

*Springsteen-Abbott v. SEC*, 989 F.3d 4 (D.C. Cir. 2021) ............................................24

*Tapper v. Hearn*, 833 F.3d 166 (2d Cir. 2016) ...................................................... 3, 19

*Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754 (2d Cir. 1986). ............................... 19

*United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260 (2010)........................... 3, 14

## STATUTES AND RULES

15 U.S.C. § 77t(g)(1) .....................................................................................................8

15 U.S.C. § 78u(d)(1) ....................................................................................................4

15 U.S.C. § 78u(d)(5) ..................................................................................................14

15 U.S.C. § 78u(d)(6)(A)...............................................................................................4

Federal Rules of Civil Procedure Rule 60(b)(4) ..................................................2, 4, 13

Federal Rules of Civil Procedure Rule 60(b)(5) .....................................................1, 4

Federal Rules of Civil Procedure Rule 60(b)(6) .............................................1, 3, 4, 15

Federal Rules of Civil Procedure Rule 60(c)(1) ....................................................2, 11

Federal Rules of Civil Procedure Rule 65(d)............................................................ 4

National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283 ........16

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in opposition to Defendant Edward Bronson's motion pursuant to Federal Rules of Civil Procedure Rule 60(b)(4), 60(b)(5) and 60(b)(6) (DE 300), and his memorandum of law in support thereof (DE 300-1; "Br."), for relief from the amended final judgment entered in this case on August 28, 2017 ("Final Judgment") (DE 193).

## PRELIMINARY STATEMENT

Bronson seeks to modify the Final Judgment by vacating it insofar as it orders $9,355,271.79 in disgorgement and $2,177,100.59 in prejudgment interest (the "disgorgement award") against Bronson and his co-defendant, E-Lionheart Associates, LLC ("E-Lionheart") (collectively "Defendants").  Bronson argues that: (1) the Supreme Court's subsequent decisions in *Kokesh v. SEC,* 137 S. Ct. 1635 (2017), and *Liu v. SEC,* 140 S. Ct. 1936, 1940-41 (2020), rendered the "disgorgement award" void for lack of jurisdiction under Rule 60(b)(4); (2) the disgorgement award should be vacated under Rule 60(b)(6) as inconsistent with the ostensible changes in law resulting from *Kokesh* and *Liu;* and (3) if the disgorgement award is vacated, the monetary portion of the judgment should be deemed satisfied, under Rule 60(b)(5), based on Bronson and E-Lionheart's payments of the monetary penalties the Final Judgment imposed on them.

Bronson also moves to vacate the injunction against future violations of Section 5 of the Securities Act of 1933 ("Section 5") (the "Section 5 injunction") and the bar against engaging in any sales of penny stocks (the "penny stock bar") imposed on him in the Final Judgment. Bronson contends that they are "not exclusively forward-looking" and therefore improperly penal under *Kokesh* and *Liu;* that the Section 5 injunction lacks the specificity required under Rule 60(d); and that it is otherwise unconstitutional.

1

Bronson's motion should be denied because it fails procedurally and substantively.  First, the motion is untimely.  Rule 60(c)(1) requires: "A motion under Rule 60(b) must be made within a reasonable time." The Final Judgment was issued on August 28, 2017.  There is no excuse for Bronson's failure to move to modify the Final Judgment until more than four years after it was entered; until three years after his appeal from the Final Judgment was denied in *SEC v. Bronson,* 756 Fed. Appx. 38 (2d Cir. 2018); until more than four years after *Kokesh* (a decision he raised in that appeal); until more than 20 months after the SEC moved to hold Bronson in contempt for his failure to comply with the disgorgement and penalty awards in the Final Judgment; and until more than 16 months after the *Liu* decision.  Bronson's excuse that he only recently "secured counsel to challenge the infirmities in the judgment obtained by the SEC" (Br. at 10) is factually incorrect and legally unavailing.  Bronson, a lawyer himself, was represented by experienced counsel before this Court, with brief exceptions.  He has also been represented by counsel throughout the SEC's multi-year effort to compel him to satisfy his obligations under the Final Judgment.  The fact that Bronson delayed seeking approval to file this motion until the eve of the contempt hearing "as part of a coordinated, last minute effort to adjourn the contempt hearing," as this Court has already found, is not only "troubling and transparent," but a further basis to deny Bronson's motion on the equities.

Bronson's motion also fails on the merits.  "[F]inal judgments should not be lightly reopened," and Rule 60(b) relief from judgments is "extraordinary" and appropriate only in "exceptional circumstances." *Central Vt. Pub. Serv. Corp. v. Herbert,* 341 F.3d 186, 190 (2d Cir. 2003).  None are present here.

Bronson's claim that the disgorgement award is void under Rule 60(b)(4) because the Court lacked jurisdiction fails because an award of disgorgement is a question of the Court's

2

remedial authority, not its jurisdiction.  The Supreme Court has made clear that a judgment is not void under Rule 60(b)(4) "simply because it is or may have been erroneous," but is void only in the "rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 270, 271 (2010).  Bronson fails to establish a valid jurisdictional error or due process claim.  At most, the Court's disgorgement award involves a question of statutory interpretation, not the Court's jurisdiction.  Thus, the Final Judgment cannot be voided under Rule 60(b)(4).

 Bronson's argument that the disgorgement award should be vacated under Rule 60(b)(6) because it is inconsistent with subsequent changes in law resulting from *Kokesh* and *Liu* is also unavailing.  Rule 60(b)(6) provides for relief other than on the grounds specified in Rule 60(b)(1) through (5) based on "any other reason that justifies relief."  However, a subsequent change in law is not a basis to vacate a final judgment under Rule 60(b)(6).  *Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016).  As discussed below, numerous courts have denied motions to vacate judgments based on similar arguments relying on *Kokesh* and *Liu.*

 Moreover, neither *Kokesh* nor *Liu* changed the law that a district court is authorized to award disgorgement.  Bronson argues that the disgorgement award "exceeds the traditional bounds of equity"; is inconsistent with *Liu* because it is not being collected for identifiable victims; exceeds Bronson's net receipts; and improperly imposes joint and several liability on Bronson and E-Lionheart.  However, the *Liu* Court left open the question whether disgorgement that is not paid over to identifiable victims is permissible; the disgorgement award took into account Bronson's trading expenses and thus did not exceed his net profits; and this Court appropriately imposed joint and several liability on Bronson and his wholly-owned limited

3

liability company E-Lionheart, the entity through which he engaged in the illegal stock sales and from which he received all of the ill-gotten gains.

Bronson's arguments for vacating the Section 5 injunction and the penny stock bar are also unavailing. There is no basis to vacate these remedies under Rule 60(b)(4), as the Court was authorized to impose these remedies under 15 U.S.C. §§ 78u(d)(1) and (d)(6)(A) ("Section 78u(d)(1)" and "Section 78u(d)(6)(A)," respectively); and Bronson fails to cite to any change in law or other legitimate basis for vacating these remedies under Rule 60(b)(6). Finally, Bronson's argument that the Section 5 injunction should be vacated because it violates Rule 65(d)'s specificity requirement fails on numerous grounds, including that he waived any challenge to the Section 5 injunction by not raising it prior to entry of the Final Judgment or on appeal. The Second Circuit has upheld such bars against challenges based on lack of specificity, and there is no change of law or circumstances that warrants modifying this portion of the Final Judgment under Rule 60(b)(4), (5) or (6).

## PROCEDURAL BACKGROUND

### I.     The Complaint

On August 22, 2012, the SEC filed its Complaint charging Bronson and E-Lionheart with violations of Section 5 over a multi-year period by engaging in a scheme to purchase billions of shares of stock from small companies and illegally resell those shares to the investing public without complying with the registration requirements of the federal securities laws. Complaint (DE 1). Bronson and E-Lionheart reaped close to $10 million in profits from the scheme. *Id.* at ¶¶ 1, 10-31. The Complaint also charged Fairhills Capital, Inc. ("Fairhills"), which Bronson owned and was President of, as a Relief Defendant based on its receipt of at least $600,000 in proceeds from the illegal stock sales that Bronson transferred to Fairhills. *Id.* at ¶¶ 9, 32-36.

## II.     The Final Judgment

The Court granted the SEC's motion for summary judgment on March 27, 2017.  *SEC v.*
*Bronson,* 246 F. Supp. 3d 956 (S.D.N.Y. Mar. 27, 2017) (DE 178, "Summary Judgment Order").
A Final Judgment, entered on June 8, 2017 (DE 186), held Defendants jointly and severally
liable for disgorgement of $9,355,271.79 and prejudgment interest of $2,177,100.59; imposed
civil penalties of $150,000 on Bronson and $725,000 on E-Lionheart; and imposed a Section 5
injunction and penny stock bar on both Defendants.  The amended Final Judgment, entered on
August 28, 2017 (DE 193), also ordered Relief Defendant Fairhills to disgorge $645,000 (the
portion of the $9,355,271.19 that Bronson had diverted to it) and pay prejudgment interest of
$151,031.37, jointly and severally with Defendants.

### A.     The Disgorgement Award

The Court calculated the disgorgement amount based on E-Lionheart's net profits derived
from its illegal resale of 353 tranches of securities it acquired from 63 issuers.  *Bronson,* 246 F.
Supp. 3d at 975-76.  The Court noted: "Defendants do not dispute that disgorgement is an
appropriate remedy, but rather argued that 'the basis of any damages should be limited only to
[the ten] issuers' 'identified in the Complaint and subsequent written discovery.'"  *Id.* at 975.
Defendants also did not dispute the accuracy of the SEC's calculation of gross profits but argued
that it should be reduced by their expenses.  *Id.* at 976.  The Court held that Defendants were
entitled to an offset for transaction costs associated with selling the stocks, such as brokerage
fees, and ordered them to provide a calculation of their transaction expenses.  *Id.*

Defendants submitted a laundry list of purported expenses, such as salaries, but failed to
comply with the Court's Order to provide transaction costs.  The SEC submitted its own
calculations of Defendants' transaction costs—consisting of brokerage fees, transfer agent fees
and monthly custodial charges, totaling $277,375.50—which the Court deducted from the

5

uncontested gross profits, to arrive at the disgorgement amount of $9,355,271.79.  Prejudgment

interest was calculated based on that amount.  *See* Order dated June 8, 2017 (DE 186) at 1-4.

The Court held Defendants jointly and severally liable for the disgorgement award.  *Id.* at 4.[1]

### B.      The Civil Penalty

The Court imposed a third-tier penalty, which requires a finding of "fraud, deceit,

manipulation, or deliberate or reckless disregard of a regulatory requirement" which "directly or

indirectly resulted in substantial losses or created a significant risk of substantial losses to other

persons," based on numerous false statements by Defendants that created "a significant risk of

substantial loss to the investing public."  The Court ordered Bronson to pay the maximum third-

tier penalty for individuals of $150,000 and E-Lionheart to pay the maximum third-tier penalty

for entities of $725,000.  *Bronson,* 246 F. Supp. 3d at 977-979.

### C.      The Section 5 Injunction and Penny Stock Bar

The Final Judgment also permanently enjoined Defendants from violating Section 5 and

barred them from participating in any offering of penny stocks.  The Court found that several

factors weighed in favor of a permanent injunction: (1) "Defendants' violations of § 5 were not

isolated, but continuous and systematic over a period of more than three years"; (2) Defendants

engaged in numerous material misrepresentations that they were not acquiring the stock with a

view to reselling to others (a prerequisite to qualifying for an exemption from registration) when

their "typical practice" was to do exactly that and "immediately resell the stock after it was

cleared for trading"; (3) "Remarkably, Defendants continued to engage in transactions

---

[1] Although the Court did not specifically state its rationale for imposing joint and several
liability, there was clear factual support for it, given the uncontested evidence that Bronson was
the sole managing member of E-Lionheart; all of the illegal sales were made through E-
Lionheart; and all of the illegal profits were received by E-Lionheart, Bronson's alter ego.  *See,
Id.* at 961-64.

supposedly pursuant to Rule 504(b)(1)(iii) through other entities after the SEC filed the instant Action, exhibiting disregard for the seriousness of the allegations"; and (4) Defendants "had yet to acknowledge their culpability." *Id.* at 974. The Court also took into account that Bronson was a "knowledgeable investor (and attorney) with extensive experience in the securities industry and conceded that he was familiar with the relevant securities law provisions." The Court further noted that Bronson's career in trading has been largely focused on transactions in unregistered securities and found: "This, combined with the fact that Bronson could continue working for many years, suggest a potential for future violations." *Id.* The Court additionally noted that the injunction to obey the law was not onerous; that Defendants did not specifically oppose the requested injunction relief; and that, since persistent refusals to admit any wrongdoing make it doubtful that Defendants would avoid any such violations in the future absent the injunction, a permanent injunction was warranted. *Id.* at 974-75.

The Court "similarly" found that imposition of a permanent penny stock bar was appropriate, noting: "The repeat nature of Defendants' violations, as well as the lack of acknowledgment of wrongdoing, weigh in favor of ordering such relief." *Id.*

## III.    Defendants' Appeal from the Final Judgment

Defendants and Relief Defendant appealed the Final Judgment on three grounds, arguing that the Court erred: (1) in finding that Defendants lacked a sufficient nexus to Delaware to allow them to rely upon a Delaware statute that would have rendered their securities sales exempt from registration under the federal securities laws; (2) by including in the disgorgement award profits from certain securities sales that were not specifically described in the Complaint but instead identified in subsequent discovery, on the ground that they were beyond the five-year statute of limitations imposed by *Kokesh;* and (3) in imposing a lifetime penny stock bar because

Defendants had no prior history of securities violations, they lacked scienter, and there was no threat of future violations.  *SEC v. Bronson,* 756 Fed. Appx. 38 (2d Cir. 2018).

The Second Circuit denied the appeal in its entirety.  With respect to Defendants' disgorgement argument based on *Kokesh*, the Court held that the SEC was not required to specify in the Complaint the precise amount of disgorgement it sought and that the Court's disgorgement award did not include transactions beyond the statute of limitations.  *Id.* at 40.

The Second Circuit declined to address Defendants' appeal from the penny stock bar on the ground that they failed to raise it before this Court.  *Id.* at 41 n. 1.  However, the Second Circuit went on to state: "In any event, we discern no error, much less an abuse of discretion, in the district court's imposition of the bar under 15 U.S.C. § 77t(g)(1)," citing *SEC v. First Jersey Sec. Inc.,* 101 F.3d 1450, 1477-78 (2d Cir. 1996).  *Id.*

Defendants: (1) did not appeal the Section 5 injunction; (2) did not argue, in opposition to the penny stock bar, that the Court lacked the authority to impose a penny stock bar; (3) did not argue that the Court lacked the authority to impose disgorgement; (4) did not argue that the disgorgement award failed to deduct Defendants' expenses and therefore exceeded their "net profits"; and (5) did not argue that the Court erred in imposing joint and several liability on Bronson, E-Lionheart and Fairhills for the disgorgement award.

## IV.    Bronson's Refusal to Comply with the Final Judgment

On March 19, 2020, the SEC moved for an Order to Show Cause ("OSC") why Bronson should not be held in contempt for failure to pay the disgorgement, prejudgment interest and penalty amounts imposed on him pursuant to the Final Judgment.  DE 202-205.  The Court issued an OSC on March 22, 2020.  DE 206.  Bronson's counsel, Paul Rachmuth, filed a response to the SEC's motion on April 14, 2020.  DE 209.  On January 19, 2021, after extensive

litigation, the Court granted the SEC's motion and found Bronson in civil contempt of the

Court's Final Judgment for failing to pay any portion of his disgorgement obligation, "despite

having sufficient (if not substantial) resources to do so."  DE 223 at 15 ("Contempt Order").  The

Court found:

> It has been over three years since the Court ordered Bronson to disgorge
> his illegal profits.  In that time Bronson has been working hard at investing
> clients' funds and working on multiple international and domestic
> projects, the proceeds from which have gone to support an extravagant
> lifestyle for Bronson and his family.  Bronson, however, has not paid a
> penny toward his financial obligation in this case.  In such circumstances,
> it is appropriate to consider the possibility of incarceration.

*Id.* at 29.  The Court further stated:  "The Court's patience is at an end.  Bronson has not only

flouted the Court's Order for three years, but has also 'chosen to make every effort to hide his

financial condition and steadfastly frustrate the SEC's efforts at collection'" (citation omitted).

*Id.* at 29-30.  The Court ordered Bronson to make a good faith payment of $25,000 no later than

one week from entry of its Order and directed him to provide a full accounting of all assets and

income, among other directives.  *Id.* at 30.  The Court stated that it would thereafter consider

amending its Contempt Order to impose a specific payment schedule.  *Id.*

Bronson failed to make a timely payment of the $25,000 ordered by the Court and, on

January 29, 2021, the Court issued another OSC why Bronson should not be held in contempt.

DE 227.  After numerous submissions by the SEC and counsel for Bronson, on May 14, 2021,

the Court scheduled a hearing on June 3, 2021, to resolve ongoing disputes regarding Bronson's

failure to produce documents and the status of his compliance with the Court's Contempt Order.

DE 241.  At Bronson's request, the hearing was adjourned to July 7, 2021.  DE 251.  Bronson's

current counsel filed a Notice of Appearance on July 6, 2021.  DE 265.  On July 7, 2021, the

parties appeared in court and reached a settlement whereby Bronson agreed to cure his contempt

by paying the Final Judgment in full, mooting the need for a hearing on the OSC.  Bronson's

agreed-upon settlement was embodied in the Court's Order July 9 Order.  DE 272.  Bronson

agreed to satisfy his obligations under the Judgment by, in summary, paying $1.1 million by

August 13, 2021, to be credited first to the penalties and post-judgment interest thereon that

Bronson and E-Lionheart owed, and making ten monthly installment payments of $1.1 million

thereafter until he satisfied the disgorgement award.

Bronson belatedly made the initial required payment; did not make the second payment;

promised the Court he would make the second payment within 30 days; failed to do so; and

failed to make the third payment.  *See* Maureen King Letter dated October 18, 2021.  DE 287.

On the same day, Bronson filed a Notice of Lack of Financial Capacity claiming a financial

inability to make the required payments.  DE 288.  The Court ordered Bronson to show cause at

a hearing on November 22, 2021, why he should not be found in contempt for his failure to

comply with the Court's Orders, including making the required payments and complying with

the Court's ordered discovery requests and financial disclosure obligations.  DE 290.

By letter dated November 17, 2021, two witnesses associated with Bronson who had

been ordered to appear in person at the November 22 OSC hearing filed a letter seeking to

excuse their appearance.  The Court denied their request.  DE 298.  The Court also granted the

SEC's letter motion (DE 293) to compel Bronson to produce certain previously ordered financial

documents and disclosures.  DE 297.  After business hours on November 18, 2021, Bronson filed

a letter seeking permission to file his Rule 60(b) motion to vacate the Final Judgment the

following day, one business day before the November 22 OSC hearing.  DE 295.  The Court

responded to these last minutes effort to derail the OSC hearing as follows:

> The timing and sequence of the letters from Mr. Bronson's counsel and
> surrogates is troubling and transparent.  Both applications could have been
> made soon after the Court issued the scheduling order, but the lawyers
> who filed them waited until two business days before the hearing to file

> them…. [T]here has been a coordinated, last-minute effort to adjourn the contempt hearing.  So, the Court will make this clear.  The hearing is going forward.

DE 297.

On November 22, 2021, the Court held the OSC hearing and found Bronson in civil contempt, rejecting his claim of financial incapacity to pay the Final Judgment.  (November 22, 2021 Minute Entry).  Bronson was ordered, *inter alia,* to pay $500,000 by December 23, 2021, and make monthly installment payments of $1.1 million thereafter until he has paid the Final Judgment in full.  The Court made clear that, if Bronson failed to make these payments, the U.S. Marshals would immediately take him into custody.  DE 302 (Order dated November 24, 2021).

## ARGUMENT

"[F]inal judgments should not be lightly reopened," and Rule 60(b) relief from judgments is "extraordinary" and appropriate only in "exceptional circumstances." *Central Vt. Pub. Serv. Corp. v. Herbert,* 341 F.3d 186, 190 (2d Cir. 2003).  "Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).  For that reason, motions for relief from judgments under Rule 60(b) are generally "disfavored" in the Second Circuit.  *See, e.g., Empresa Cubana Del Tabaco v. General Cigar Co. Inc.*, 385 F. App'x. 29, 31 (2d Cir. 2010).

## I.      Bronson's Motion Is Untimely.

Motions for relief under Rule 60(b)(4), (5) and (6) must be made "within a reasonable time."  Fed. R. Civ. P. 60(c); *see also SEC v. Durante*, 641 F. App'x 73, 78 (2d Cir. 2016) (summary order denying motion for relief from disgorgement under Rules 60(b)(5) and (6) on timeliness grounds).  In considering whether a Rule 60(b)(6) motion was filed within a "reasonable time," a court "must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894,

897 (2d Cir. 1983) (citing cases).  Previous delays and bad-faith behavior by the movant are relevant to this analysis.  *See Amica Mutual Ins. Co. v. Noel,* No. 16-cv-469, 2017 WL 2311857, at *1 (D. Conn. May 26, 2017) (finding delay of one month after judgment unreasonable where there were "frequent, unexcused delays" and a failure to appear at a hearing).

There is no justification for Bronson's delay in raising these claims more than four years after the Final Judgment was entered in August 2017; three years after his appeal was denied in November 2018; more than 4 years after *Kokesh*—a decision he relied on in that appeal—was decided in 2017; more than 16 months after *Liu* was decided in June 2020; and 20 months after the SEC first moved for an OSC to hold Bronson in contempt for failure to comply with the disgorgement and penalty awards in the Final Judgment.

Bronson claims he did not move sooner because "Mr. Bronson (after litigating *pro se* for so many years) recently secured counsel to challenge the infirmities in the judgment obtained by the SEC."  Br. at 10.  This claim is factually incorrect.  Bronson was represented by multiple counsel during the underlying litigation.  And he has been represented by counsel throughout the SEC's 20-month effort to compel him to comply with the Final Judgment.

The fact that Bronson proceeded *pro se* on appeal (where he raised *Kokesh*) does not change the analysis, particularly considering that he is himself a lawyer who has engaged in sophisticated securities and financial transactions.  *See, e.g., McFadden v. Poole*, No. 07-CV-6475T, 2014 WL 636575, at *1 (W.D.N.Y. Feb. 18, 2014) (a litigant's "pro se status does not excuse him from complying with the timing requirements of Rule 60(c)").  And although Bronson is not formally moving under Rule 60(b)(1), there is a wealth of case law in that context holding that *pro se* status does not establish excusable neglect.  *See, e.g., Manney v. Intergroove Tontrager Vertriebs GMBH*, No. 10-cv-4493, 2012 WL 4483092, at *3 (E.D.N.Y. Sept. 28,

2012) ("Nor may plaintiffs rely upon their pro se status, or lack of legal sophistication, as a basis for relief under Rule 60(b)(1)." (citing cases)); *Am. Arb. Ass'n, Inc. v. Defonseca*, No. 93-cv-2424, 1997 WL 102495, at *2 (S.D.N.Y. Mar. 6, 1997) ("I am mindful of the defendants' pro se status.  However, a lack of legal sophistication cannot form the basis of a claim of excusable neglect.  This is especially true in the case at bar, since Defendant Maloney is an attorney." (citations omitted).  There is simply no excuse for Bronson's failure to file this motion sooner.

The equities also weigh in favor of denying his motion.  The SEC's efforts to enforce the Final Judgment have consumed a significant amount of this Court's time and resources, as evidenced by the approximately one hundred docket entries relating to these efforts.  Many of these filings have been necessitated by Bronson's repeated delays or failures to comply with this Court's various discovery and payments Orders.  Moreover, the Court has already found that Bronson delayed filing this motion until the eve of the contempt hearing "as part of a coordinated effort to adjourn the contempt hearing."  Bronson's repeated dilatory tactics and numerous refusals to comply with this Court's directives constitute bad faith and are a further basis to deny his motion.  *See SEC v. Penn,* No. 14-cv-581 (VEC)*, 2021 WL 1226978 at *6-7 (S.D.N.Y. Mar. 31, 2021) (denying Rule 60(b)(6) motion filed more than two years after judgment was entered and more than two months after *Liu* as untimely, finding that the interests of finality outweighed the alleged reasons for delay where Defendant had engaged in dilatory "shenanigans" throughout the litigation).  The motion should be denied in its entirety as untimely.

## II.     Bronson's Argument that the Final Judgment Is Void for Lack of Jurisdiction under Rule 60(b)(4) Fails Because the Claimed Erroneous Disgorgement Award Is Not A Jurisdictional Issue.

Rule 60(b)(4) provides that "on motion and just terms, the court may relieve a party… from a final judgment [or] order…[if] the judgment is void."  Bronson argues that the disgorgement award is void for lack of jurisdiction under Rule 60(b)(4) because it was not for the

benefit of investors and, therefore, it exceeded the Court's equitable powers as ostensibly circumscribed in *Kokesh* and *Liu.* Br. at 10, 13-17.  As a threshold matter, this argument fails because a court's decision imposing a remedy, even if erroneous, is not a jurisdictional defect that renders a judgment void under Rule 60(b)(4).  Indeed, in the very case Bronson cites, *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 270 (2010), the Supreme Court made clear that a judgment is not void under Rule 60(b)(4), "simply because it is or may have been erroneous," but is void only where it is "so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final."  This occurs "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."  *Id.* at 271.

Here, any legal error in ordering remedies "was not jurisdictional, for [this Court] had both subject matter and personal jurisdiction; hence relief under Rule 60(b)(4) is unavailable." *SEC v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021); *see* Complaint ¶ 5 ("This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§  77t(b), 77t(d) and 77v(a)]."  Indeed, in an analogous case, the Second Circuit summarily affirmed the denial of a Rule 60(b)(4) motion where the defendants argued that the judgment was void in light of a change in law based on *Kokesh.  SEC v. Boock*, 750 F. App'x. 61 (2d Cir. 2019).

Federal courts are statutorily authorized to impose equitable relief in SEC enforcement actions under 15 U.S.C. § 78u(d)(5), which provides that "[i]n any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."  In *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020), the Supreme Court re-

14

affirmed federal courts' long-recognized authority to order disgorgement, holding that "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [Section 21(d)(5) of the Securities Exchange Act]." Finally, Bronson fails to cite a single case vacating a disgorgement award under Rule 60(b)(4) on the ground that it was void for lack of jurisdiction. Thus, Bronson fails to identify any basis to vacate the Final Judgment under Rule 60(b)(4) for lack of jurisdiction.

## III.   The Final Judgment Is Not Inconsistent with Recent Supreme Court Precedent.

Rule 60(b)(6) provides for relief other than on the grounds specified in Rule 60(b)(1) through (5), based on "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Bronson argues that the Final Judgment should be vacated because: "After this Court entered Final Judgment in his case, the Supreme Court decided three important cases that severely limited the SEC's ability to seek disgorgement and issue punitive injunctions," citing *Kokesh*, *Liu* and *AMG*. Br. at 7-9. Bronson argues that, based on these cases, courts are not empowered to award disgorgement that "exceeds the traditional bounds of equity" and that the disgorgement award here does so because it is not being collected for identifiable victims; it exceeds his net receipts; and it improperly imposes joint and several liability on Defendants. Br. at 2-3, 7-9, 12-17.

Bronson's argument fails because it misapprehends the holdings of these cases. The Final Judgment is not inconsistent with these subsequently decided cases, and, even if it were, that would not constitute a basis to vacate the Final Judgment under Rule 60(b)(6).

### A.   The Final Judgment Is Not Inconsistent with *Liu*.

In *Liu,* the Supreme Court reaffirmed a district court's authority to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims" under 15 U.S.C. § 78u(d)(5), which permits courts to award equitable relief in SEC enforcement actions. The Court also held that courts have "flexibility to impose collective liability" in cases involving

15

"concerted wrongdoing." 140 S. Ct. at 1940-41, 1945, 1949. Bronson has not established that the Final Judgment is inconsistent with these principles.

First, the Summary Judgment Opinion required Defendants to pay only the net profits from their unregistered stock sales and asked them to submit their transaction costs. *Bronson, supra,* 246 F. Supp. 3d at 976. They failed to do so. DE 186 at 1-4. The SEC nevertheless undertook to calculate their transactions costs, and the Court subtracted that amount from gross profits. *Id.*; *see also* Final Judgment (DE 186) at 3. Thus, the disgorgement award was based on Defendants' net profits.

Second, *Liu* left "open" whether "depositing disgorgement funds with the Treasury may be justified where it is infeasible to distribute the collected funds to investors." 140 S. Ct. at 1948; *see also id.* at 1949 (leaving it to the lower courts to evaluate "in the first instance" whether an order directing any proceeds to the Treasury would be "for the benefit of investors as required by § 78u(d)(5) and consistent with equitable principles"); *SEC v. Blackburn*, 15 F.4th 676, 682 (5th Cir. 2021) ("*Liu* left open" the circumstances under which disgorgement may be disbursed to the Treasury "when it is 'infeasible to distribute the collected funds to investors'") (quoting *Liu*, 140 S. Ct. at 1948); *SEC v. Westport Capital Mkts., LLC*, No. 17-cv-2064, 2021 WL 2801626, at *9 (D. Conn. July 6, 2021) (*Liu* "does not foreclose disgorgement" if distribution to investors is infeasible). Because "the Supreme Court specifically reserved judgment on whether depositing funds with the Treasury 'where it is infeasible to distribute the collected funds to investors,' would be permissible," Rule 60(b)(6) relief is not warranted. *SEC v. Ahmed*, No. 15-cv-13042, 2021 WL 916266, at *4 (D. Mass. Mar. 10, 2021).[2]

---

[2] To the extent it is relevant, the disgorgement award is also consistent with the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 6501, which added new Exchange Act Section 21(d)(7) to expressly authorize courts to award disgorgement in SEC

Third, *Liu* did not foreclose joint and several liability.  To the contrary, it recognized that the common law permitted "liability for partners engaged in wrongdoing."  *Liu,* 140 S. Ct. at 1949, and remanded the case "to determine whether the facts are such that petitioners can, consistent with equitable principles, be found liable for profits as partners in wrongdoing or whether individual liability is required."  On remand, the district court imposed joint-and-several liability on the husband-and-wife defendants where the wife "played an integral role in the scheme," their finances were commingled, and the wife enjoyed the fruits of the scheme.  *SEC v. Liu,* No. 16-cv-00974-CJC, 2021 WL 2374248, at *9 (C.D. Cal. June 7, 2021).

Moreover, a wrongdoer can be held liable for ill-gotten gains paid to alter ego entities. *See SEC v. Owings Group LLC*, No. RDB-18-2046, 2021 WL 1909606, at *4 (D. Md. May 12, 2021) (holding that *Liu* "did not suggest that ordering individuals to disgorge funds received by corporate entities under their control is improper"); *see also First Jersey Secs.*, 101 F.3d at 1475-76 (defendant held liable with corporate entity of which he was the sole owner and which he controlled); *Penn*, 2021 WL 1226978, at *12-13 (denying Rule 60(b) motion; holding that imposing joint and several liability on an individual defendant whose conduct and scienter were imputed to entity defendants he controlled was "not in any way inconsistent with *Liu*"; and collecting cases).

The Court's Summary Judgement Order (DE 178 at 2-8, 23) contained clear evidence that Bronson and E-Lionheart engaged in concerted wrongdoing given that Bronson was the sole managing partner in E-Lionheart and engaged in his illegal scheme through it.  The Final Judgment's imposition of joint and several liability was well-founded and consistent with *Liu.*

---

actions, while omitting the phrase "for the benefit of investors," which is present in Section 21(d)(5), and which the *Liu* Court construed as a "limitation[]" or "restrict[ion]" on a court's equitable authority to disburse collected disgorgement amounts. *Liu*, 140 S. Ct. at 1948-49.

B.      **The Final Judgment Is Not Inconsistent with *Kokesh*.**

Bronson's reliance on *Kokesh* (which he already raised on appeal) is even more flawed.

In *Kokesh,* the Court held that a five-year statute of limitations applies to SEC claims for

disgorgement.  137 S. Ct. at 1639.  Bronson cites *Kokesh* for the proposition that disgorgement is

a penalty and appears to suggest that disgorgement is therefore beyond the Court's equitable

powers to impose.  *See, e.g.,* Br. at 7-8, 15.  However, as Bronson concedes, the *Kokesh* Court

"stopped short" of addressing the SEC's authority to seek such relief.  Br. at 8.  In fact, as the *Liu*

Court explained, "the *Kokesh* Court evaluated a version of the SEC's disgorgement remedy that

seemed to exceed the bounds of traditional equitable principles" and held that such *excessive*

disgorgement imposed a penalty "for the purposes of 28 U.S.C. § 2462."  *Liu*, 140 S. Ct. at 1940.

*Kokesh* "has no bearing" on the SEC's ability to conform future disgorgement requests to

equitable principles, and cannot be read to render permissible disgorgement a penalty for all

purposes.  *Id.* at 1940, 1946 (disgorgement, as defined by the Supreme Court, is not a "punitive

sanction[]"); *see also Westport Capital Mkts.,* 2021 WL 2801626, at *9; *SEC v. Laura*, No. 18-

cv-5075, 2020 WL 8772252, at *4 (E.D.N.Y. Dec. 30, 2020).  Thus, neither *Kokesh* nor *Liu*

forecloses the disgorgement award here or otherwise provides a basis to modify or vacate the

disgorgement award under Rule 60(b)(6) or any other provision of Rule 60(b).

Moreover, Bronson appealed the Final Judgement after *Kokesh* was decided and did not

argue that the Court was not authorized to impose the disgorgement award.  Thus, he has waived

that argument.  And his only challenge to the disgorgement award on appeal — that it included

profits from stock sales that occurred beyond the five-year statute of limitations — was

summarily rejected by the Second Circuit.  *SEC v. Bronson,* 756 Fed. Appx. 38 (2d Cir. 2018).

C.      **The Final Judgment Is Not Inconsistent with *AMG Capital Management*.**

Bronson's reliance on *AMG Capital Mgmt., LLC v. FTC,* 141 S. Ct. 1341 (2021) (Br. at 9), is entirely misplaced.  There, the Supreme Court held that a statute that authorized the Federal Trade Commission to seek only injunctive relief did not authorize the FTC to also seek equitable monetary relief in the form of disgorgement.  That holding has no relevance here, given that *Liu* explicitly affirmed district courts' authority to award disgorgement in SEC cases under the equitable relief statute applicable to SEC enforcement actions, 15 U.S.C. § 78u(d)(5).  *See FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 158 & n.16 (3d Cir. 2019) (emphasizing the "unique history and structure of the FTC Act" and explaining that the "statutory scheme" governing remedies in FTC cases "is not similar to the securities laws").

IV.     **A Change in Law Is Not a Basis to Vacate a Judgment under Rule 60(b)(6).**

Even if Bronson could identify a valid argument why the Final Judgment is not consistent with the recent Supreme Court precedent, a change of law is rarely a basis to vacate a judgment under Rule 60(b)(4), (5) or (6).  For example, it is well-settled in the Second Circuit that a subsequent change in law is rarely a basis to vacate a final judgment under Rule 60(b)(6).  *Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016).  This principle applies even where the intervening change in law is a Supreme Court decision.  *See, e.g.*, *Gonzalez v. Crosby*, 545 U.S. 524, 536–38 (2005); *Agostini v. Felton,* 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)."); *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 757 (2d Cir. 1986).

Indeed, even after the Supreme Court's decision in *Kokesh* changed the statute of limitations period applicable to disgorgement awards, courts declined to disturb final judgments awarding disgorgement in SEC cases.  *See, e.g.*, *SEC v. Amerindo Investment Advisors Inc.*, No. 05-cv-5231 (RJS), 2017 WL 3017504, at *8 (S.D.N.Y. July 14, 2017) (holding that, even where

19

the disgorgement award included periods outside the statute of limitations, the disgorgement

award was not void under Rule 60(b)(4) because Defendant "cannot possibly argue this Court

'lacked jurisdiction;'" the award was not inequitable or detrimental to the public interest under

Rule 60(b)(5); and the *Kokesh* holding did not constitute "extraordinary circumstances" under

Rule 60(b)(6); *SEC v. Radius Capital Corp.*, No. 11-cv-116 (JES), 2017 WL 3446912, at *3

(S.D. Fla. Aug. 11, 2017) (same); *SEC v. Boock,* No. 09-cv-8261, 2019 WL 2074725, at *1

(S.D.N.Y. May 10, 2019) (similar).  Courts have also declined to grant Rule 60(b) relief based on

*Liu*.  *See, e.g.*, *Penn*, 2021 WL 1226978, at *10-14; *Ahmed*, 2021 WL 916266, at *3-5.

Bronson's reliance upon *Rudgayzer v. Google, Inc.,* No. 13-cv-120 (ILG) (RER), 2014

WL 12676233, at *3 (E.D.N.Y.  Feb. 10, 2014) (Br. at 11-12), is misplaced.  There, after

acknowledging the general rule that decisions should not be vacated under Rule 60(b)(6) absent

"extraordinary circumstances," the district court withdrew its November 15, 2013 order

dismissing a Complaint for improper venue under Rule 12(b)(3) based on a ruling of the

Supreme Court 18 days later in *Atlantic Marine Construction Co., v. United States District*

*Court,* 134 S. Ct. 568 (2013), which held that a forum-selection clause may only be enforced

through a motion to transfer under a separate statute, not through a motion to dismiss.

*Rudgayzer*, 2014 WL 12676233, at *1.  In that case, the movants filed their Rule 60(b)(6) motion

28 days after entry of the order and 10 days after the supervening Supreme Court decision, which

the district court held was "plainly inconsistent" with its recent prior order.  *Id.* at *1-3.

The facts here do not remotely rise to the level of "extraordinary circumstances" the court

found in *Rudgayzer.*  Indeed, were the Court to apply the four-factor test cited in *Rudgayzer,*

2014 WL 12676233, at *5, to determine whether a supervening change of law justifies Rule

60(b)(6) relief here, all four factors would overwhelmingly weigh in favor of denying Bronson's

motion.  First, *Liu* and *Kokesh* are not "beyond any question inconsistent" with the Final

Judgment, as explained above in Sections III.A and B.  Second, Bronson did not notify the Court

of a pending motion that may alter the decisional law; to the contrary, he delayed raising these

issues until well after *Kokesh* and *Liu* were decided.  Third, substantial time has elapsed between

the Final Judgment and the pending motion.  And, fourth, the equities strongly disfavor Bronson,

given his unexcused delay in bringing his motion; his failure to raise these issues below or on

appeal; the egregiousness and long-running nature of his illegal scheme; his failure to

acknowledge wrongdoing and his continuation of the illegal conduct even after the SEC filed its

Complaint; the inequitable result if he is permitted to keep over \$9 million dollars in ill-gotten

gains; and his dilatory tactics and repeated violation and contempt of this Court's Orders.  Thus,

there is no basis to vacate the Final Judgment under Rule 60(b) based on a subsequent change of

law even if there were one, which there is not.[3]

## V.    Bronson's Motion to Vacate the Disgorgement Award Under Rule 60(b)(5) Fails Because the Final Judgment Has Not Been Satisfied.

Bronson's contention that the remaining monetary portion of the Final Judgment should

be vacated under Rule 60(b)(5) because it has been satisfied by his payment of civil penalties

(Br. at 10-11) fails because it is premised on the mistaken claim, as discussed above, that the

disgorgement award should be vacated.  In addition, it is well settled that the portion of Rule

60(b)(5) that permits a court to vacate a judgment where "applying it prospectively is no longer

equitable" does not apply to money judgments.  *See, e.g. DeWeerth v. Baldinger,* 38 F.3d 1266,

1275 (2d Cir. 1994) (under Rule 60(b)(5), "judgments involving injunctions have 'prospective

application' while money judgments do not"); *Saunders v. Goord*, No. 98-cv-8501, 2007 WL

---

[3] Bronson's reliance on *Marrero Pichardo v. Ashcroft*, 374 F.3d 46 (2d Cir. 2004), Br. at 12, is misplaced. That case involved "incompetent lawyering," and "dramatic changes in governing law" that occurred *before,* not subsequent to, the order in question.  *Id.* at 49, 56.

1434974, at *5 (S.D.N.Y. May 17, 2007) ("money judgments" do not have prospective application under Rule 60(b)(5)).

## VI.   Bronson's Motion to Vacate the Section 5 Injunction and Penny Stock Bar Is Untimely and Not Otherwise Warranted under Rule 60(b) and Was Waived.

Bronson argues that the Section 5 injunction and penny stock bar should be vacated under Rule 60(b)(5) because they "are no longer equitable, given that the state of the law has changed since the *Liu* decision." Br. at 11. Specifically, he contends that they are "punishments, not equitable injunctions authorized by § 78u(d)(1)" because they "label Bronson as a wrongdoer"; were "imposed for their deterrent effect, not to compensate or rehabilitate victims"; and are not both necessary "when they both, essentially, achieve the same purpose." Br. at 20; *see also* Br. 17-20. As a result, Bronson argues, "[b]oth the Penny Stock Bar and the Section 5 injunction were unlawful when issued and should be stricken from the Final Order." *Id.*

All of these arguments are purely legal. Bronson does not argue that there are any changed factual circumstances that would warrant modifying the Section 5 injunction or penny stock bar. He does not and cannot plausibly argue that he no longer poses a threat of violating the securities laws, given his dilatory tactics and repeated contempt for the Court's lawful orders. The arguments he does make fail for numerous reasons.

First, as Bronson himself concedes, the Court was statutorily authorized to impose the Section 5 injunction under 15 U.S.C. § 78u(d)(1) and was statutorily authorized to impose the penny stock bar under Section 78u(d)(6)(A). Br. at 18 & n.4. Thus, these remedies were clearly within the Court's powers to impose at the time of the Final Judgment.

To obtain an injunction, the SEC must demonstrate that there is a substantial likelihood of future violations of illegal securities conduct. *SEC v. Cavanagh,* 155 F.3d 129, 135 (2d Cir. 1998). Here, the Court found that several factors weighed in favor of a permanent injunction: (1)

22

"Defendants' violations of § 5 were not isolated, but continuous and systematic over a period of more than three years"; (2) Defendants engaged in numerous material misrepresentations that they were not acquiring the stock with a view to reselling to others (a prerequisite to qualifying for an exemption from registration) when their "typical practice" was to do exactly that and "immediately resell the stock after it was cleared for trading"; (3) "[r]emarkably, Defendants continued to engage in transactions supposedly pursuant to Rule 504(b)(1)(iii) through other entities after the SEC filed the instant Acton, exhibiting disregard for the seriousness of the allegations"; and (4) "Defendants had yet to acknowledge their culpability." *Bronson,* 246 F. Supp. 3d at 973-75.  The Court also took into account that Bronson was a "knowledgeable investor (and attorney) with extensive experience in the securities industry and conceded that he was familiar with the relevant securities law provisions."  The Court further noted that Bronson's career in trading has been largely focused on transactions in unregistered securities and found: "This, combined with the fact that Bronson could continue working for many years, suggest a potential for future violations." *Id.*  The Court also noted that the injunction to obey the law was not onerous; that Defendants did not specifically oppose it; and that, since persistent refusals to admit any wrongdoing made it rather doubtful that Defendants would avoid any such violations in the future absent the injunction, a permanent injunction was warranted. *Id.* at 975.

The Court "similarly" found that imposition of a permanent penny stock bar was appropriate, noting in particular: "The repeat nature of Defendants' violations, as well as the lack of acknowledgment of wrongdoing, weigh in favor of ordering such relief." *Id.*  The Court's imposition of the Section 5 injunction and penny stock bar was well-supported by the record.

Second, there has been no subsequent change of law reversing the Court's power to issue such injunctions and bars.  Neither *Kokesh* nor *Liu* held that district courts can no longer issue

23

injunctions under Section 78u(d)(1) or penny stock bars under Section 78u(d)(6)(A).  Moreover, the Second Circuit has long recognized district courts' power to impose just such injunctions and bars.  *See, e.g., SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1102 (2d Cir. 1972); *First Jersey Securities,* 101 F.3d at 1477-78.  Bronson fails to identify any change of law limiting that power.  Indeed, the Third Circuit, in *SEC v. Gentile,* 939 F.3d 549 (3d Cir. 2019), held that those remedies, when properly imposed, continue to be remedial after *Kokesh*.

Bronson cites then-Judge Kavanaugh's concurring opinion in *Saad v. SEC,* 873 F.3d 297, 304 (D.C. Cir. 2017), which viewed an expulsion or suspension of a securities broker as a penalty, not an equitable remedy, based on *Kokesh*.  However, the D.C. Circuit later rejected that position and held, consistent with *Gentile*, that *Kokesh* has no bearing on determining whether such bars are remedial.  *Saad v. SEC*, 980 F.3d 103, 106-109 (D.C. Cir. 2020); *see also Springsteen-Abbott v. SEC*, 989 F.3d 4, 9 (D.C. Cir. 2021).

And finally, if Bronson thought that the Section 5 injunction and penny stock bar were not adequately justified by a finding of likelihood of future misconduct, he should have made those arguments before entry of the Final Judgment, which he did not, or on appeal, which he only did as to the penny stock bar, and the Second Circuit rejected his argument.  In all events, there is absolutely no basis for him to wait until now to seek such relief.

Bronson also argues that the Court should vacate the Section 5 injunction because it violates Rule 65(d)'s requirement that an injunction "state its terms specifically" and "describe in reasonable detail … the act or acts restrained."  Br. at 20-22.  However, Bronson did not raise this argument before the Court; did not appeal the Section 5 injunction on this or any other ground; does not and cannot justify his failure to raise this argument until over four years after the Final Judgment was entered; and fails to cite any provision of Rule 60(b) or any change of

law that provides a basis to modify the Final Judgment on this ground.  Bronson's argument also fails because, as he concedes (Br. at 21), the Second Circuit has upheld such injunctions.  *See, e.g., Manor Nursing Centers,* 458 F.2d at 1102 ("There can be no abuse of discretion in framing an injunction in terms of the specific statutory provision which the court concludes has been violated."); *First Jersey Securities,* 101 F.3d at 1477-78.  These holdings still control. [4]

Also unavailing for the foregoing reasons are Bronson's arguments that the Section 5 injunction violates (1) his Due Process rights under the Constitution because it allows the SEC to enforce the law by means of a contempt proceeding instead of a "full-scale prosecution," and (2) the separation of powers clause of the Constitution because enforcing the injunction by means of a contempt proceeding ostensibly bypasses Congressional rules to enforce the law and Congressional remedies for violations of the law.  Bronson fails to cite any Second Circuit law to support his claim that the Section 5 injunction issued here is unconstitutional in any way or that there is any valid ground under Rule 60(b) to vacate it at this late date.

## CONCLUSION

For all the foregoing reasons, Bronson's motion should be denied in its entirety.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

/s/ *Kevin P. McGrath*
Kevin P. McGrath
200 Vesey Street, Suite 400
New York, NY 10281
Tel: (212) 336-0533
Email: mcgrathk@sec.gov

---

[4] Bronson's reliance on *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (Br. at 22) is unavailing. The wide-ranging injunction there contained various unique defects not present here, such as a failure to specify the laws to be obeyed. *Id.* at 144-46.

25