**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **12 Civ. 6421 (KMK)** |
| **v.** | |
| **EDWARD BRONSON, E-LIONHEART ASSOCIATES, LLC, d/b/a FAIRHILLS CAPITAL,** | |
| **Defendants,** | |
| **and** | |
| **FAIRHILLS CAPITAL, INC.** | |
| **Relief Defendant.** | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
RELIEF FROM THE CONTEMPT JUDGMENT AND SUBSEQUENT ORDERS**

Kevin P. McGrath
Maureen Peyton King
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Room 20-100
New York, NY 10004
Tel.: 212-336-0111 (King)
E-mail:  kingmp@sec.gov
*Attorneys for Plaintiff*
*Securities and Exchange Commission*

March 16, 2022

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………..ii

PRELIMINARY STATEMENT…………………………………………………………...……1

BACKGROUND…………………………………………………………………………....2

ARGUMENT…………………………………………………………………….......4

   I.   Bronson's Motion for Reconsideration Should Be Denied ..................................................5

        A.  Bronson's Motion for Reconsideration Is Time Barred .........................................5

        B.  Bronson Cannot Meet the Second Circuit's Standard for Reconsideration............6

        C.  Defendants' Reliance on Rule 69(a) is Misplaced...................................................7

        D.  Bronson's Incarceration is Appropriate ................................................................12

   II.   The Final Judgment is Valid and Should Not be Vacated or Modified...........................13

   CONCLUSION……………………………………………………………………….......16

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*AMG Capital Mgmt., LLC v. FTC*
   141 S. Ct. 1341 (2021) ................................................................................................n7, n10

*Belfiore v. Procter & Gamble Co.*
   140 F. Supp. 3d 241 (E.D.N.Y. 2015) ......................................................................6

*CFTC v. Escobio*
   946 F.3d 1242 (11th Cir. 2020) ...............................................................................9

*CFTC v. Wellington Precious Metals Inc., et al.*
   950 F.2d 1525 (11th Cir. 1992) ................................................................................13

*Close-Up Intern., Inc. v. Berov*
   411 F. App'x 349 (2d Cir. 2011) ..............................................................................12

*Close-Up Intern., Inc. v. Berov*
   474 Fed. App'x 790 (2d Cir. 2012) ...................................................................12, 13

*Ecopetrol S.A. v. Offshore Exploration and Production LLC*
   172 F. Supp. 3d 691 (S.D.N.Y. 2016) ......................................................................8

*Henderson v. Shineski*
   562 U.S. 428 (2011) ...............................................................................................14

*Homeward Residential, Inc. v. Sand Canyon Corp.*
   No. 12 Civ. 5067, 2014 WL 4680849 (S.D.N.Y. Sept. 17, 2014) ............................6

*In re Irving*
   600 F.2d 1027 (2d Cir. 1979) ..................................................................................5

*In re Terrorist Attacks on September 11, 2001*
   741 F.3d 353 (2d Cir. 2013) ....................................................................................11

*Int'l Union, United Mine Workers of America v. Bagwell*
   512 U.S. 821 (1994) ................................................................................................12

*Johnson v. Holder*
   564 F.3d 95 (2d Cir. 2009) ......................................................................................6

*Kansas v. Nebraska*
   574 U.S. 445 (2015) ................................................................................................9

*Kokesh, v. SEC*
    137 S. Ct. 1635 (2017) ............................................................................ passim

*Liu v. SEC*
    140 S. Ct. 1936 (2020) ............................................................................ passim

*Matarese v. LeFevre*
    801 F.2d 98, 107 (2d Cir. 1986) ............................................................... 5

*McComb v. Jacksonville Paper Co.*
    336 U.S. 187 (1949) ................................................................................. 8

*Pasadena City Bd. of Ed. v. Spangler*
    427 U.S. 424 (1976) ................................................................................. 10

*Reynoldsville Casket Co. v. Hyde*
    514 U.S. 749 (1995) ................................................................................. 10

*SEC v. AMX International, Inc.*
    7 F.3d 71 (5th Cir. 1993) .......................................................................... 9

*SEC v. Bremont*
    No. 96 Civ. 8771, 2003 WL 21398932 (S.D.N.Y. 2003) ......................... 12

*SEC v. Boock*
    750 F. App'x. 61 (2d Cir. 2019) ............................................................... 15

*SEC v. Cavanagh*
    445 F.3d 105 (2d Cir. 2006) ..................................................................... 9

*SEC v. de Maison*
    2021 WL 5936385 (2d Cir. Dec. 16, 2021) ............................................. 10

*SEC v. Huffman*
    996 F.2d 800 (5th Cir. 1993) .................................................................... 9

*SEC v. Manor Nursing Ctrs., Inc.*
    458 F.2d 1082 (2d Cir.1972) .................................................................... 12

*SEC v. Penn, No. 14-cv-581 (VEC),*
    2021 WL 1226978 (S.D.N.Y. Mar. 31, 2021) ......................................... 5

*SEC v. Rind*
    991 F.2d 1486 (9th Cir. 1993) .................................................................. 9-10

*SEC v. Romeril*
 15 F.4th 166 (2d Cir. 2021) ................................................................................................14

*SEC v. Zubkis*
 No. 97-cv-8086 (JGK), 2003 WL 22118978 (S.D.N.Y. September 11, 2003) .......................8

*Shillitani v. United States*
 384 U.S. 364 (1986)........................................................................................................7, 12

*Steel Co. v. Citizen's for a Better Env't*
 523 U.S. 83 (1998)..............................................................................................................14

*Stevens v. Miller*
 676 F.3d 62 (2d Cir. 2012).....................................................................................................5

*Teague v. Lane*
 489 U.S. 288 (1989)..............................................................................................................10

*United States Aid Funds, Inc. v. Espinosa,*
 559 U.S. 260 (2010)........................................................................................................5, 14

## **STATUTES**

Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001, *et seq.*..............................................9

18 U.S.C. 401(3) ............................................................................................................................7

## **RULES AND REGULATIONS**

Fed. R. Civ. P. 60(b) ..................................................................................................................5, 9

Fed. R. Civ. P. 60(b)(4)....................................................................................................13, 14, 15

Fed. R. Civ. P. 60(c) ........................................................................................................................5

Fed. R. Civ. P. 69(a) ................................................................................................................ passim

Fed. R. Civ. P. 69(a)(1)...................................................................................................................7

Fed. R. Civ. P. 70 ..................................................................................................................... passim

S.D.N.Y. Local Rule 6.3 ..............................................................................................................2, 5

**<u>SECONDARY SOURCES</u>**

13 James Wm. Moore *et al.*, *Moore's Federal Practice*, §§ 69.02, 69 App.102[2] (3d ed. 2013) .8

12 Moore's Federal Practice, Civil, § 60.44[2][a] (2019) ............................................................14

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in opposition to Defendant Edward Bronson ("Bronson") and E-Lionheart Associates, LLC d/b/a Fairhills Capital ("E-Lionheart") (collectively "Defendants") Supplemental Memorandum of Law in Support of their Motion for Relief from the Contempt Judgment and Subsequent Orders ("Supplemental MOL")(DE 337)).  Defendants move to vacate the contempt order entered against Bronson (DE 223, the "First Contempt Order") and the orders directing his incarceration for failure to comply with his disgorgement obligations (DE 302, 321 and 326). The motion is perhaps most telling for what it does not say:  defendants nowhere assert that they are unable to pay the judgment, nor do they challenge this Court's extensive findings that Bronson has the means to "sustain a lifestyle of relative opulence," "has access to substantial resources," "has failed to comply with this Court's clear and unambiguous Order," "has made no reasonably diligent efforts to comply," and that his "effort to depict his luxurious living arrangements as liabilities, or as necessary living expenses, is a classic example of chutzpah."

Instead, in an effort to continue to delay Bronson's compliance with a lawfully entered court order, defendants make a series of purely legal assertions that they could have raised—but did not—long ago:  they argue that the disgorgement award exceeded the bounds of equity and thus is a punitive "money judgment" not subject to enforcement by incarceration under Fed. R. Civ. P. Rule 70 ("Rule 70"), but instead enforceable only by means of a writ of execution under Fed. R. Civ. P. 69(a) ("Rule 69(a)").  Defendants' arguments, as set forth in their Supplemental MOL, and in their initial memorandum of law in support of their motion for relief from the Final Judgment (DE 193) ("Initial MOL") (DE 300), which the Supplemental MOL partially relies on, are untimely, barred by law of the case, and substantively meritless.  In sum, under S.D.N.Y. Local Rule 6.3, Bronson had 14 days from entry of the First Contempt Order to move for

reconsideration. The Court entered the First Contempt Order 14 *months* ago, in January 2021.  In addition, Bronson had 60 days to appeal the First Contempt Order.  Thus, his time to move for reconsideration of the First Contempt Order, or to appeal it, has long passed.  In addition, the disgorgement award was validly entered and equitable.  The equitable remedies of contempt and incarceration are therefore available - and appropriate here - to enforce the Final Judgment.  The Court should deny Defendants' motions for relief from the First Contempt Order, the incarceration orders and the Final Judgment.

## **<u>BACKGROUND</u>**

The Court is familiar with the background of this case.  The SEC's response to Defendants' Initial MOL established that the Final Judgment is valid and should not be reopened.  This response focuses on the issue on which this Court permitted supplemental briefing:  Bronson's attack on the First Contempt Order.

Bronson disgorged none of his ill-gotten gains, so the SEC moved for contempt against him.  DE 202.  Following briefing, the Court found Bronson in contempt on January 19, 2021. DE 223.  In a 30-page decision, the First Contempt Order carefully analyzed Bronson's conduct under the Second Circuit's three-part test for civil contempt and concluded that Bronson's lavish spending while failing to disgorge his ill-gotten gains warranted finding him in contempt.  DE 223.  In reaching this conclusion, the Court rejected Bronson's inability-to-pay argument based on its findings that Bronson was relying on income from V2IP to "sustain a lifestyle of relative opulence," "has access to substantial resources," "has failed to comply with this Court's clear and unambiguous Order," "has made no reasonably diligent efforts to comply," and "has failed to show that compliance would be impossible." First Contempt Order at 26-28.  The Court further noted that "Bronson is "not entitled to satisfy the disgorgement judgment at his convenience and only insofar as it does not cause him any discomfort," and "his effort to depict

his luxurious living arrangements as liabilities, or as necessary living expenses, is a classic example of chutzpah."  DE 223 at 28 (internal cite omitted).

Bronson's violations of the First Contempt Order led to a status conference on July 7, 2021.  At the conference, Bronson agreed to a payment plan requiring him to pay the penalties imposed in the Final Judgment and, then, $1.1 million per month to disgorge his ill-gotten gains ("Payment Plan Order").  DE 272.  Bronson then failed to make good on the payment obligations to which he had agreed, which resulted in this Court convening another contempt hearing where it found that Bronson had "failed to meet the burden of demonstrating a complete inability to pay" and again held him in contempt.  DE 302 at 2 (the "Second Contempt Order").  The Second Contempt Order set forth a strict payment schedule and ordered that imprisonment would follow should Bronson fail to meet his obligations.  *Id.*  In January 2022, after an evidentiary hearing and Bronson's repeated violations of the Payment Plan Order and Second Contempt Order, the Court incarcerated Bronson until he paid the January 2022 payment.  DE 320.  The Court re-incarcerated Bronson two weeks later when he failed, without explanation, to make the February 13, 2022 payment.  DE 326.

Defendants filed the Initial MOL on November 22, 2021, that challenged the Final Judgment and which the SEC opposed.[1]  DEs 300, 305, 307.  The Defendants now supplement that motion and seek relief from the Court's contempt and incarceration orders.  DE 337.  Defendants argue that the disgorgement and pre-judgment interest portion of the Final Judgment is inequitable based on subsequent Supreme Court cases and therefore void for lack of jurisdiction; that the First Contempt Order and incarceration orders should therefore be vacated or modified; and that the disgorgement awarded here is a type of "money judgment" subject to

---

[1] The SEC's Opposition is incorporated by reference herein.

enforcement only by means of a writ of execution under Rule 69(a), and not by incarceration under Rule 70.  Defendants are incorrect on all counts.

## **ARGUMENT**

The Court should deny Defendants' motion for reconsideration of the First Contempt Order and incarceration orders, as well as their pending Rule 60(b) motion.[2]  Defendants' arguments to reconsider the contempt and incarceration orders are untimely and barred by law of the case.  And even if the Court considers the substance of the motions, the Second Circuit standard for reconsideration is strict – and Defendants' arguments fall woefully short.

Defendants argue that the disgorgement award failed to meet the requirements for an equitable disgorgement award under *Liu* because it was not based on Defendants' net profits, imposed joint and several liability, and will not be distributed to victims.  *Liu v. SEC*, 140 S. Ct. 1936 (2020).  Based on these inaccurate assumptions, they then assert that the disgorgement order is a punitive money judgment that cannot be collected through incarceration.   Contrary to their arguments, the disgorgement award comports with the equitable principles set forth in *Liu* and, therefore, the equitable remedies of contempt and incarceration are available - and appropriate here - to enforce the Judgment.

---

[2] Though Defendants' Supplemental MOL is directed towards challenging the First Contempt Order, the SEC's arguments herein are equally applicable to defending the propriety of the Second Contempt Order.

I.      **Bronson's Motion for Reconsideration Should Be Denied.**

A. **Bronson's Motion for Reconsideration Is Time Barred.**

The time to challenge the First Contempt Order – by reconsideration, appeal or Rule 60(b) - has passed.  S.D.N.Y. Local Rule 6.3, *Motions for Reconsideration or Reargument*, required Bronson to move for reconsideration within 14 days.[3]  The Court entered the First Contempt Order 14 *months* ago, in January 2021.  Likewise, the time to appeal the First Contempt Order has passed.  Bronson had 60 days to appeal before the First Contempt Order became final. *In re Irving*, 600 F.2d 1027 (2d Cir. 1979).  Thus, Bronson now seeks to improperly substitute Rule 60(b) for a timely appeal.  But "[i]n no circumstances … may a party use a Rule 60(b) motion as a substitute for an appeal it failed to take in a timely fashion." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012); *see United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) ("a motion under Rule 60(b)(4) is not a substitute for a timely appeal") (internal citations omitted); *Matarese v. LeFevre*, 801 F.2d 98, 107 (2d Cir. 1986) ("[A] Rule 60(b)(6) motion may not be used as a substitute for appeal.").  And Rule 60(b) motions also must be brought within a "reasonable time."  Fed. R. Civ. P. 60(c).  *See SEC v. Penn,* No. *14-cv-581 (VEC),* 2021 WL 1226978 at \*6-7 (S.D.N.Y. Mar. 31, 2021) (denying Rule 60(b)(6) motion filed more than two years after judgment was entered and more than two months after *Liu* was issued as untimely, finding that the interests of finality outweighed the alleged reasons for delay where Defendant had engaged in dilatory "shenanigans" throughout the litigation).  Thus, by any

---

[3] Given that only Bronson had standing to challenge the First Contempt Order, we refer to Bronson, rather than Defendants, in this context.

means: reconsideration, appeal or Rule 60(b), Bronson's time to challenge the First Contempt Order has passed.[4]

**B. Bronson Cannot Meet the Second Circuit's Standard for Reconsideration.**

Even if the motion for reconsideration of the First Contempt Order were timely, Bronson cannot meet the Second Circuit's standard for reconsideration. Courts grant motions for reconsideration when "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12 Civ. 5067, 2014 WL 4680849, at *1 (S.D.N.Y. Sept. 17, 2014) (Torres, J.) (granting motion for reconsideration) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "The standard for a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Belfiore v. Procter & Gamble Co.*, 140 F. Supp. 3d 241, 245 (E.D.N.Y. 2015) (internal citations omitted). "A motion for reconsideration will only be granted on one of the following three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. *Id.* (internal citations omitted). Likewise, the "law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F.3d 95, 99

---

[4] The deadlines for seeking reconsideration or appeal of the Second Contempt Order, which was entered on November 24, 2021, have also expired. That Order made clear that "if Bronson fails to pay and/or fails to file proof of payment on ECF by the due date of the payment along with proof of funds available to make the payment the U.S. Marshals Service for the Southern District of New York shall take Bronson into custody for his civil contempt." DE 302 at 2.

(2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)).

No grounds for reconsideration exist here.  Defendants offer no new evidence and no change of law since the First Contempt Order was entered.  Indeed, every authority they cite in their brief save one was available before this Court entered the First Contempt Order.[5]  The two cases on which they rely most heavily—*Kokesh* and *Liu*—were issued years ago and did not address the enforcement of equitable orders.  *Kokesh v.* SEC, 137 S. Ct. 1635 (2017); Liu, 140 S. Ct. 1936.  Moreover, as set forth in the SEC's opposition to the Initial MOL, *Kokesh* and *Liu* did not undermine the remedies imposed against Defendants.  *Kokesh* issued before Defendants' appeal and was cited by both sides and the Second Circuit in resolving that appeal.  *Liu* issued in June 2020, after Defendants' appeal but 7 months before entry of the First Contempt Order, 13 months before the Payment Plan Order, 17 months before the entry of the Second Contempt Order and Defendants' filing of the Initial MOL, and 20 months before they filed the Supplemental MOL.  Defendants offer no explanation for their many months of silence that followed what they characterize as an intervening change in law.  And as explained briefly below, and in more detail in the SEC's Opposition MOL, there was no clear error or manifest injustice in the Court's Final Judgment.

### C.  Defendants' Reliance on Rule 69(a) is Misplaced.

Because the time for challenging the First Contempt Order has long passed, this Court does not need to consider Defendants' challenges to that order.  But in the event that the Court reaches those arguments, it should reject them.

---

[5] Defendants cite *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021), which came out months after the First Contempt Order. That case concerned limits on remedies in a fully separate statutory scheme from the securities laws that are applicable here and provides no arguable basis for disturbing the First Contempt Order.

Ample authority in this and other courts—discussed at length in this Court's First Contempt Order—holds that contempt is available to enforce compliance with a disgorgement order in SEC civil enforcement actions.  First Contempt Order at 10-13.  *See also, e.g.*, *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (discussing "courts' inherent power to enforce compliance with lawful orders through civil contempt."); *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 194-95 (1949) (holding that the contempt power was an appropriate means to enforce compliance with an injunction for, among other things, the payment of wages and overtime pay required by the Fair Labor Standards Act); *Ecopetrol S.A. v. Offshore Exploration and Production LLC*, 172 F. Supp. 3d 691, 697 (S.D.N.Y. 2016) (in deciding whether contempt pursuant to Rule 70 was available, the court recognized that "contempt is appropriately imposed for the violation of courts' orders…that are traditionally available in equity" and citing an SEC disgorgement case, *SEC v. Zubkis*, No. 97-cv-8086 (JGK), 2003 WL 22118978, at *7 (S.D.N.Y. September 11, 2003)); 18 U.S.C. 401(3) (cited in First Contempt Order at 10).

Defendants' reliance on Rule 69 is misplaced.  Rule 69(a)(1) provides:  "A money judgment is enforced by a writ of execution, *unless the court directs otherwise*." (Emphasis added).  The history of Rule 69 indicates that this latter clause preserves the established equity practice, following the merger of law and equity. 13 James Wm. Moore *et al.*, *Moore's Federal Practice*, §§ 69.02, 69 App.102[2] (3d ed. 2013).  Under cases like *McComb*, contempt proceedings are appropriate against Bronson because the disgorgement order is an equitable order in the public interest designed to compel his compliance with the federal securities laws. *Kokesh* and *Liu* support this conclusion by recognizing the public character of the disgorgement remedy and situating it within courts' historic equitable powers. *See Kokesh*, 137 S. Ct. at 1643 ("The violation for which [disgorgement] is sought is committed against the United States rather

than an aggrieved individual… When the SEC seeks disgorgement, it acts in the public interest, to remedy harm to the public at large, rather than standing in the shoes of particular injured parties.") (internal quotation marks omitted); *Liu*, 140 S. Ct. at 1942 ("Equity courts have routinely deprived wrongdoers of their net profits from unlawful activity.").  These decisions reinforce binding Circuit law recognizing that disgorgement is a distinctly public-regarding equitable remedy available in securities enforcement actions.  *SEC v. Cavanagh*, 445 F.3d 105, 116-20 (2d Cir. 2006).  Moreover, it is appropriate for this Court to exercise the full panoply of its equitable powers because "[w]hen federal law is at issue and the public interest is involved, a federal court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." *Kansas v. Nebraska*, 574 U.S. 445, 456 (2015) (internal quotation marks omitted).

Defendants next posit that the Final Judgment is punitive post-*Liu*.  But that argument fails for the reasons discussed in the SEC's response to Defendants' Rule 60(b) motion.

Defendants' attempt to distinguish the disgorgement remedy from all other equitable remedies is meritless.  In support of this distinction, Defendants cite an inapt legal restitution case, *CFTC v. Escobio*, 946 F.3d 1242 (11th Cir. 2020), not a disgorgement case.  The *Escobio* court concluded that a CFTC restitution order was like a private debt because the restitution was legal and not equitable.  *Id*. at 1244-45.  And unlike disgorgement, the restitution was not "limited to the amount that the defendant wrongfully gained." *Id*. at 1254-55.  Indeed, restitution is a remedy expressly collected by the federal government pursuant to a statutory remedy, the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001, *et seq.*, while disgorgement in this case was ordered under the Court's equitable authority.  *See, e.g., SEC v. Huffman*, 996 F.2d 800 (5th Cir. 1993); *SEC v. AMX International, Inc.*, 7 F.3d 71 (5th Cir. 1993).  To that end,

Defendants contend, wrongly, that the equitable character of a disgorgement award mutates to a punitive money judgment when quantified by a specified amount of money.  Even though disgorgement is for a particular amount of money, it is an equitable remedy that seeks to deprive a wrongdoer of his unjust enrichment.  *See SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) ("[T]he fact that disgorgement involves a claim for money does not detract from its equitable nature."); *SEC v. de Maison*, 2021 WL 5936385, at *2 (2d Cir. Dec. 16, 2021) ("*Liu* did not disturb this Court's longstanding principle that specific tracing is unnecessary in ordering disgorgement for securities fraud.") (internal quotation marks and editing omitted).[6]  Thus, the inescapable conclusion – conceded in the Defendants' motion - follows: "coercive equitable remedies, have historically been enforceable via the court's civil contempt powers."  DE 337, p.12.  And Rule 70 provides a basis codified in the FRCP for imposing contempt, as do the other authorities the Court relied on in the First Contempt Order.

Defendants' assertion that *Liu*'s guidance regarding the distribution of collected disgorgement funds precludes this Court from invoking its equitable authority to order contempt is likewise meritless.  As discussed in the SEC's response to Defendants' initial Rule 60(b) motion, *Liu*'s discussion of the circumstances when disgorged funds may be distributed to the Treasury provides no basis for vacating the Final Judgment.  Unless and until the judgment is modified, basic respect for the judicial process requires Bronson to comply with the order, regardless of his objections to it.  *See Pasadena City Bd. of Ed. v. Spangler*, 427 U.S. 424, 439-40 (1976) ("[T]hose who are subject to the commands of an injunctive order must obey those commands, notwithstanding eminently reasonable and proper objections to the order, until it is

---

[6] Thus, *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341, *1341 (2021) does not apply as the *AMG* court determined that the FTC lacks the authority to award disgorgement pursuant to Section 13(b) of the Federal Trade Commission Act.

modified or reversed.").  Even if the judgment were inconsistent with *Liu*, Bronson must comply

with it because "[n]ew legal principles, even when applied retroactively, do not apply to cases

already closed."  *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995); *see also Teague v.*

*Lane*, 489 U.S. 288, 308 (1989) ("[I]t has long been established that a final civil judgment

entered under a given rule of law may withstand subsequent judicial change in that rule."). *In re*

*Terrorist Attacks on September 11, 2001*, 741 F.3d 353, 357 (2d Cir. 2013) ("Whenever the law

changes, parties who lost a prior case because of the now-altered law may feel that justice was

not done. Generally, the interest in finality outweighs that concern.").

Nevertheless, to the extent that this issue is relevant to this Court's consideration, the

SEC notes that distribution to victims may well be feasible in this case—provided that Bronson

lives up to his obligation to pay and the SEC is able to collect adequate funds.  It has not yet been

determined by the SEC or the Court that disgorgement, if collected from the Defendants, will not

be returned to victims.  Indeed, if feasible, the SEC will propose a plan to distribute the

disgorged funds to victims.  Whether a distribution to victims is feasible will depend in part on

how much is collected from the Defendants - who are thwarting collection efforts.  It would be

wholly inequitable to allow a defendant to obstruct collection efforts – as Bronson is – and then

claim that since the amount collected renders a distribution unfeasible, the Court has no remedy

in equity.  Without knowing what funds will be collected, the SEC cannot formulate a

distribution plan and the Court cannot yet assess the plan's feasibility.[7]

---

[7] *Liu* defers to the district courts to engage in feasibility analyses.  "To the extent feasibility is
relevant *at all* to equitable principles, we observe that the lower courts are well equipped to
evaluate the feasibility of returning funds to victims of fraud." *Liu v. SEC*, 140 S. Ct. 1936, n.5
(2020).  As part of that analysis, the SEC will consider the amount collected and the number of
victims.  Generally, victim identification for a distribution only takes place after funds are
collected post-judgment.  Here, the SEC is still trying to collect from the recalcitrant Defendants.

In sum, on these facts, contempt is appropriate to compel Bronson's compliance with the disgorgement order and, if feasible, to return disgorged funds to Defendants' victims.

**D.      Bronson's Incarceration is Appropriate.**

"Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an *appropriate remedy." SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103 (2d Cir.1972) (emphasis added)*.* Incarcerating defendants who fail to pay disgorgement is a well-established contempt remedy in the Second Circuit. *See SEC v. Bremont*, No. 96 Civ. 8771, 2003 WL 21398932, at *7 (S.D.N.Y. June 18, 2003) (collecting cases and finding that "[i]ncarceration is appropriate and reasonable in these circumstances and has been ordered where defendants in securities fraud cases have failed to pay court-ordered disgorgement or civil penalties"). And in cases such as Bronson's, incarceration is "not merely for failing to pay the judgment but for disregarding clear and unambiguous orders of the court with which he is financially able to comply." *Close-Up Intern., Inc. v. Berov*, 411 F. App'x 349, 354 (2d Cir. 2011). Indeed, in a subsequent opinion in *Close-Up Intern.*—the opinion Bronson purports to rely on in challenging the propriety of incarceration as a sanction for failure to comply with a payment order—the Second Circuit ultimately affirmed incarceration as an appropriate sanction in such circumstances. *Close-Up Intern., Inc. v. Berov*, 474 Fed. App'x 790, 793-96 (2d Cir. 2012). Thus, Bronson is not, as he suggests, in a "debtors' prison." DE 337 at 10. He "carr[ies] 'the keys of [his] prison in [his] own pocket[ ]'": compliance with the Court's Orders. *Shillitani v. United States*, 384 U.S. 364, 368 (1986) (internal cite omitted). How long he remains incarcerated is entirely up to Bronson.

The Court should not reconsider "[t]he paradigmatic coercive, civil contempt sanction…confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.'" *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, *828 (1994) (internal citations omitted). Bronson in fact paid after he was jailed the first time. That "indicate[s] that coercive detention is indeed working to induce [Bronson's] compliance and more pointedly that [Bronson] has an ability to comply with the district court's order." *Close-Up Intern., Inc. v. Berov*, 474 F. App'x 790, 796 (2d Cir. 2012). Thus, Bronson cannot show that his "continued detention is punitive." *Id*. Indeed, "many months or perhaps even several years may pass before it becomes necessary to conclude that incarceration will no longer serve the purpose of the civil contempt order." *CFTC v. Wellington Precious Metals Inc., et al.*, 950 F.2d 1525, 1531 (11th Cir. 1992).

Bronson does not assert an inability to pay the disgorgement. In fact, he consented to the payment plan ordered, DE 272, and when he violated that order, the Court found that he "failed to meet the burden of demonstrating complete inability to pay," DE 302 at 2. Thus, because Bronson has not disgorged his ill-gotten gains, there is no reason to reconsider his incarceration.

## II.    The Final Judgment is Valid and Should Not be Vacated or Modified.

Defense counsel explicitly assured the Court at the pre-motion conference that he would limit the Supplemental MOL to the question of whether the First Contempt Order and incarceration orders should be vacated. Nonetheless, a substantial portion of the Supplemental MOL improperly reargues points raised in Defendants' Initial MOL. Specifically, Defendants reargue that the Final Judgment is void for lack of jurisdiction under Rule 60(b)(4) (Supplemental MOL at 5-9) and that the Final Judgment should be vacated under Rule 60(b)(6)'s

catch-all provision based on an alleged change in decisional law based on *Liu*, *Kokesh*, and *AMG* (Supplemental MOL at 13-15).  The SEC has already responded to these arguments in its opposition to Bronson's Rule 60(b) motion and will not do so again here, except to respond briefly to Defendants' argument that the Final Judgment is void under Rule 60(b)(4) for lack of jurisdiction.

Defendants ignore well-settled Supreme Court and Second Circuit precedent that a claimed error of law does not result in a lack of jurisdiction warranting vacating a Final Judgment.  Defendants argue that the disgorgement award was inequitable, and therefore beyond the Court's equitable jurisdiction to impose, because it was not awarded for the benefit of investors, was not limited to the Defendants' net profits and held Defendants and the relief defendant jointly and severally liable for the disgorgement award, all ostensibly contrary to the requirements of an equitable disgorgement award set forth in *Liu*.  Supplemental MOL at 5-9.

However, as set forth in the SEC's Opposition MOL, at 13-15, the Supreme Court made clear in *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 270 (2010), that a judgment is not void under Rule 60(b)(4) "simply because it is or may have been erroneous," but is void only where it is "so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." (Internal citations omitted).  This occurs "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."  *Id.* at 271.  And to briefly expand on this point, we note that the Supreme Court subsequently clarified that "jurisdiction" refers to "a court's adjudicatory capacity, *Henderson v. Shineski*, 562 U.S. 428, 435 (2011), namely its "statutory or constitutional *power* to adjudicate the case," *Steel Co. v. Citizen's for a Better Env't,* 523 U.S. 83, 89 (1998).  *Accord* Black's Law Dictionary (11[th] ed.

2019) (jurisdiction is the "legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it"). Thus, "[a] lack of subject-matter jurisdiction for the purpose of making a judgment void means a court's lack of jurisdiction over an entire category of cases, not whether a court makes a proper or improper determination of subject matter in a particular case." 12 Moore's Federal Practice, Civil, § 60.44[2][a] (2019). *See also SEC v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021), *reh'g denied* Dec. 21. 2021 (noting that even if a Final Judgment violated defendant's First Amendment rights, it was not void under Rule 60(b)(4) simply because it was erroneous; and affirming the judgment where the court had both subject matter and personal jurisdiction)*; SEC v. Boock*, 750 F. App'x. 61 (2d Cir. 2019) (summarily affirming denial of a Rule 60(b)(4) motion where defendants argued the judgment was void based on a change in law in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017)).

Defendants do not claim that they were deprived of due process or that the Court lacked personal jurisdiction over them. And the Court clearly had subject matter jurisdiction over this securities enforcement action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)]. Further, the Supreme Court in *Liu*, 140 S. Ct. at 1940, made clear that courts have the equitable power to award disgorgement in SEC enforcement actions pursuant to Section 21(d)(5) of the Securities Exchange Act of 1934. Thus, this Court had jurisdiction over this action and, regardless of whether the disgorgement award in this case was or was not erroneous, that decision does not deprive the Court of its jurisdiction or warrant vacating the Final Judgment under Rule 60(b)(4).

## **CONCLUSION**

For the reasons set forth above, the Court should deny Defendants' motions for relief from the First Contempt Order, the incarceration orders and the Final Judgment.

Dated: New York, New York
       March 16, 2022

                                   s/ *Maureen Peyton King*
                                   Maureen Peyton King
                                   Kevin P. McGrath
                                   Securities and Exchange Commission
                                   New York Regional Office
                                   100 Pearl Street, Room 20-100
                                   New York, NY 10004
                                   Tel.: 212-336-0111 (King)
                                   E-mail:  kingmp@sec.gov