# EXHIBIT 4

**STOCK PURCHASE AGREEMENT**

1.      **THIS STOCK PURCHASE AGREEMENT** ("Agreement), dated as of April 6, 2022 (the "Agreement Date"), is by and between Bruce Bent ("Buyer"), and Top Knot, Inc. (USA) ("Seller") by the liquidating trustee, pursuant to the order dated Aug 17, 2021, in the case 12-cv-6421 (S.D.N.Y.) (the "Liquidating Trustee") for the transfer of common stock of the publicly traded Florida corporation known as Hallmark Venture Group Inc. (OTCPink: HLLK, the "Company").

**ARTICLE I**
**CONSIDERATION**

Subject to the terms and conditions herein set forth, and based on the representations, warranties and agreements contained herein, the Parties agree as follows:

2.      <u>Sales of Shares.</u>      Seller hereby agrees to electronically transfer to Buyer, and Buyer purchases from Seller, Twelve Million, Three Hundred and Eighty-seven Thousand (12,387,000) shares (the "Shares") of free trading common stock of the Company.

3.      <u>Closing Date.</u> The transfer of stock described in this agreement shall take place and become effective on the occurrence of all Conditions Precedent and third-party electronic transfer of free trading shares of the Company.

4.      <u>Purchase Price.</u>      The purchase price for the Shares (the "Purchase Price") shall be 50% of the closing price for the Company shares, as reported by OTCMarkets.com on the trading day immediately preceding the Closing Date.

5.      <u>Non-Insider Transaction.</u>      The equity position represented by the Shares purchased by Buyer are being purchased arms-length by and between the Parties and the Company is not a Party to the agreement.

**ARTICLE II**
**REPRESENTATIONS AND WARRANTIES**

6.      <u>Representations and Warranties of Seller.</u>  Seller represents and warrants to Buyer, as of the date hereof and as of the closing, as follows:

a.      <u>Organization, Standing, Power.</u> Seller is an individual and maintains he has all requisite power and authority to enter into this Agreement and to consummate the transfer and sale of the stock herein. Seller warrants that the stock is un-assessable and validly booked on the books of the Company.  No pledge, restriction or right of first refusal covering the stock exists on the books and records of the Company the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary action on the part of the parties.  This Agreement has been duly

executed and delivered and constitutes a valid and binding obligation enforceable in accordance with its terms, except that such enforceability may be subject to (i) bankruptcy, insolvency, reorganization or other similar laws relating to enforcement of creditors' rights generally, and (ii) general equitable principles. Seller, if not a natural person, is an entity duly organized, validly existing and in good standing under the laws of the applicable jurisdiction. Seller has now, and will have at the Closing Date, all requisite legal, corporate and partnership power (as applicable) to enter this Agreement. All action on the part of the Seller necessary for the sale of the Shares and the performance of Seller's obligations under this Agreement has been taken or will be taken prior to the Closing Date. This Agreement, when executed and delivered by the Seller will constitute valid and legally binding obligations of Seller, enforceable in accordance with their terms, except as enforcement may be limited by applicable bankruptcy laws or other similar laws affecting creditors' rights generally.

        b.     <u>Good Delivery by the Seller.</u>  The Seller acknowledges and understand the obligation to provide all necessary paperwork supporting documentation regarding the history, origin of the shares and valid legal opinion stating the shares are valid and freely tradable from restrictive legends. The Seller must provide the necessary paperwork to satisfy the compliance department of the Buyer's Broker Dealer.

        7.     <u>Representations and Warranties of Buyer.</u>  Buyer represents and warrants to Seller, as of the date hereof and as of the closing, as follows:

        a.     <u>Execution.</u>  This Agreement has been duly executed and delivered by Buyer and constitutes a valid and binding obligation of Buyer enforceable in accordance with its terms, except that such enforceability may be subject to (i) bankruptcy, insolvency, reorganization of other similar laws relating to enforcement of creditors' rights generally, and (ii) general equitable principles.

        b.     <u>Experience.</u>  By reason of prior experience, Buyer can evaluate the risks and merits of an investment in the Shares and of protecting his own interests in connection with this investment. Buyer understands that there is no guaranty of ever recovering the investment contemplated herein and understands that the entire investment may be lost. Buyer acknowledges that Seller makes no warranty regarding the value or marketability of the shares.

### <u>ARTICLE III</u>
### <u>COVENANTS</u>

        8.     <u>Confidentiality.</u>  Each party hereto will hold and will cause its consultants and advisors to hold in strict confidence, unless compelled to disclose by judicial or administrative process or, in the opinion of its counsel, by other requirements of law, all documents, information, and Trade Secrets concerning the other party furnished it by such other party or its representatives in connection with the transactions contemplated by this Agreement (except to the extent that such information can be sworn

to have been (i) previously known by the party to which it was furnished, (ii) in the public domain through no fault of such party, or (iii) later lawfully acquired from other sources by the party to which it was furnished), and each party will not release or disclose such information to any other person, except its auditors, attorneys, financial advisors, bankers and other consultants and advisors in connection with this Agreement.  Each party shall be deemed to have satisfied its obligation to hold confidential information concerning or supplied by the other party if it exercises the same care as it takes to preserve confidentiality for its own similar information.  In the event of termination of this Agreement, each party shall use its best efforts to return to the other party all documents and copies thereof received from the other party that contain information subject to the confidentiality requirements of this Section.

9.      Further Assurances.    Each Party agrees that upon request of any other they will, from time to time, without further consideration, execute and deliver to such other all such instruments and documents of further assurance or otherwise, and will do any and all such acts and things as may be reasonably required, to carry out the obligations of such party hereunder and to consummate the transactions contemplated hereby.

## ARTICLE IV
## THE CLOSING

10.     Electronic Closing.    The Seller shall electronically deliver the Shares to the brokerage account designated by the Buyer. Upon delivering the Shares to the designated account of the Buyer, a confirmation statement will be issued on completion of the transfer of ownership.

11.     Payment.    Payment shall be made to the account specified by the Seller and approved by the Liquidating Trustee within three business days of the delivery of the Shares.

## ARTICLE V
## MISCELLANEOUS

12.     Notices.

a.      All notices to be provided to either Party shall also be provided to the Liquidating Trustee.

b.      Notices shall be provided by overnight delivery or electronic mail to the addresses below each parties and Liquidating Trustee's signature below and shall be deemed given on the business day such notice is received.

13.     Entire Agreement.    This Agreement sets forth the entire agreement and understanding of the parties hereto with respect to the transaction contemplated hereby,

and supersedes all prior agreements, arrangements and understandings related to the subject matter hereof.

14.     Survival of Representations.  All representations, warranties, agreements and covenants hereunder shall survive to Closing and remain effective.  Consummation of the transactions contemplated hereby shall not be deemed or construed to be a waiver of any right or remedy possessed by any party hereto, notwithstanding that such party knew or should have known that such right or remedy existed.

15.     Governing Law.        This Agreement shall be deemed to have been negotiated and executed in the state of New York and shall be construed and enforced in accordance with the laws of such state.

16.     Binding Effect and Assignment.        This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, administrators, legal representatives, and assigns.

17.     Counterparts.  This Agreement may be executed in counterparts. Each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  In making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

18.     Attorney's Fees.        If a dispute should arise between the parties, the prevailing party shall be reimbursed by the non-prevailing party for all reasonable expenses incurred in resolving such dispute, including reasonable attorney's fees and costs.

19.     Severability.    Should any term, provision or portion of this agreement be ruled unenforceable for any reason by any court of competent jurisdiction, all remaining terms of this agreement shall remain enforce and enforceable and affected by any blue pencil removal of the other terms and provisions.

20.     Venue:        This Agreement shall be governed by and construed in accordance with the laws of the State of New York. In the event any action, suit or proceeding should be instituted because of any matter affecting this Agreement, the parties designate White Plains, Westchester County, New York, as the only venue in which same is to be instituted.

[Signature Page Follows]

      **IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed on the day and year last written below.

**BUYER:**                                                    **SELLER:**

**Bruce Bent**                                             **Top Knot, Inc., USA**

By: _____       By: _____
       Bruce Bent                                             Ryan Stumphauzer
                                                                     Solely in his capacity as the Liquidating
                                                                     Trustee, pursuant to the order dated Aug.
                                                                     17, 2021, in the case 12-cv-6421
                                                                     (S.D.N.Y.)

Dated: <u>April 6, 2022</u>                               Dated: _____