

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

DIVISION OF
ENFORCEMENT

# MEMO ENDORSED

April 26, 2022

**By ECF**
Hon. Kenneth M. Karas
United States District Court
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, New York 10601-4150

    Re:    *SEC v. Bronson et al.,* 12-cv-6421 (KMK)

Dear Judge Karas:

    I write on behalf of Plaintiff Securities and Exchange Commission ("SEC") to respectfully request that in response to Defendant Edward Bronson's ("Bronson") *Letter Motion for Order Directing the Liquidating Trustee to Execute the Sale of Securities* (DE-342) the Court order the Trustee to conduct due diligence concerning the proposed stock sale transactions ("Sales") including obtaining relevant information about the buyer, the price, the source of funds, and the market impact, and, submit that information for the Court's review. The SEC also requests that, should that due diligence review raise concerns about the legitimacy or market impact of the Sales, the Court hold a hearing before approving the Sales. The manner of the Sales - over 135 million shares in four issuers - differs materially from the sales contemplated in the Court's August 17, 2021 Order ("Aug. 17 Order"), which are subject to a daily trading volume limits to protect against market impact. DE 278. Bronson also appears to have financial ties to the buyer, Bruce Bent ("Bent"), and the purchase price for the shares is half of the current the market price. Exs. 2-4; DE 342-1 – 342-4. Thus, the Court should not approve the Sales without finding that the Sales will yield a reasonable value under the circumstances. The SEC also requests that the Court order Bronson to produce certain documents.

    As brief background, after holding Bronson in contempt for violating the Court's Final Judgment by failing to pay the ordered disgorgement and penalty, the Court entered the Aug. 17 Order appointing Ryan Stumphauzer as Trustee ("Trustee"). The Aug. 17 Order charged the Trustee with responsibility for liquidating Top Knot Inc.'s securities portfolio to satisfy the Final Judgment subject to a daily trading limit for each issuer equal to 10% of the trading volume for the security on the last day on which OTCmarkets.com reported trading volume. DE 278. The parties agreed to these terms. *Id.*

Case 7:12-cv-06421-KMK Document 344 Filed 04/26/22 Page 2 of 3

Despite the trading volume limit, Bronson approached the SEC about the Sales of millions of shares of HLLK, VGLS, HUML, and SPRV to Bruce Bent ("Bent") at *half* the market value of the securities on April 11 – *without including* the Trustee. Ex. 1. On April 12, the SEC objected to the Sales: (i) as they would no doubt violate the daily trading limit the Aug. 17 Order imposed; (ii) based on the lack of information about the buyer; and (iii) based on concerns about the Trustee's apparent lack of involvement in the proposed transactions. *Id.* The SEC asked Bronson's counsel to provide: (i) Bent's contact information; (ii) justification for discounting the Sales price by half; and (iii) diligence on Bent including his ability to pay for the shares he seeks. *Id.* Counsel provided *none* of this information to the SEC. Indeed, when I spoke with the Trustee after learning of the Sales, he suggested that one of Bent's entities – not Bent – is the buyer – yet the contracts before the Court reference no entity. If the Sales are above-board, it is not clear why Bronson would oppose their review by the Trustee and the Court.

Bent's role as President of Matthews Development Ltd. (Alberta) ("Matthews") may explain why Bronson seeks to avoid any review of the Sales. Exs. 2-3. Matthews wired Top Knot Inc. over $1,000,000 in 2021 – and $1.1 million more in January 2022. Exs. 9 (summary exhibit and redacted transfer compilation), 12-13 (summary exhibit and redacted bank statement). What is not yet clear is how much more Matthews holds for Bronson or Top Knot Inc.[1] Thus, Bronson should disclose the full extent of his ties to Bent and all Matthews entities *before* the Court considers approving the Sales.

Bronson seeks to sell the shares for half their market value without offering any justification. Bronson states in conclusory fashion that private sale discounts are "customary." But Bronson does not point to anything supporting the reasonableness of selling the shares for half their value. DE 342. Based on the SEC's calculation, the shares are valued at $1.77 million, so after discounting the shares, the Sales would yield around $885,000 (before deducting costs). Ex. 4 (summarizing the OTC price quotes for April 25, 2022 at Exs. 5-8). Thus, Bronson's unsupported assertion that the Sales warrant a 50% discount should be vetted to maximize the amount available to potentially return to investors.

Bronson also makes inconsistent and unsupported claims about market impact. Bronson appears to be claiming that if the Sales do not occur the securities price will go down but if the Sales occur there will be no impact. But Bronson does not address how the market for the security may be impacted. That significant penny stock sales could artificially manipulate the securities' price is precisely why the Aug. 17 Order imposed a protective volume restriction on sales. Thus, the Trustee should examine and the Court should consider the likely market impact before the Sales are permitted.

---

[1] As the Court recognized that Top Knot Inc. is Bronson's entity, its funds should be available to satisfy Bronson's disgorgement obligation: "We've got to stop pretending that Top Knot isn't some shell game that's being played here. Let's stop pretending that this is not his business. Enough. No one's being fooled by this. Nobody." Nov. 22 Hearing Tr. 98.

2

What's more, the Sales may be more gamesmanship. Since the Sales are connected to Bent, who serves as President of Matthews, the entity that transferred over $2.1 million to Top Knot Inc. between May 2021 and January 2022, it is worth probing whether Bronson, not Bent, is funding the Sales transactions. This would explain the desire to cut the cost of the shares in half.

Bronson is correct that he "carr[ies] 'the keys of [his] prison in [his] own pocket[ ]'": but the keys are *compliance* with the Court's Orders. *Shillitani v. United States*, 384 U.S. 364, 368 (1986) (internal cite omitted). Top Knot Inc.'s financial records suggest that Bronson continues to violate the Court's order to pay what he owes by maintaining funds abroad that he could use to satisfy his disgorgement obligation. For example in 2021, Top Knot Inc. received funds from at least four countries: $1.1 million dollars from Matthews in Canada, $679,000 more from Turks and Caicos and apparently the Cayman Islands; and still another $600,000 through Bronson's attorney Paul Rachmuth's escrow account in the United States – for a total of over $2.2 million. Exs. 9-11. In January 2022, Top Knot Inc. received $1.1 million more from Matthews. Exs. 12-13. What's more, even after the Court admonished Bronson's lavish personal spending at the November 22, 2021 hearing, Top Knot Inc.'s January 2022 bank statement continues to reflect such spending – clear indicia that Bronson continues to have access to funds. Ex. 13.

For these reasons, the SEC requests that the Court review the proposed sales for reasonableness after the Trustee conducts due diligence on the buyer, the discounted price, the source of funds, the potential market impact of the Sales, and any other relevant facts. If the Court holds a hearing on the Sales, the SEC requests that Bronson, Bent, John Kellas, and the Trustee be ordered to appear. Also, ahead of any hearing and, in any event, by no later than May 10th, the SEC respectfully requests that Bronson produce the last five months of account statements for himself (personal and joint), V2IP, Inc., Dawn Bronson and Top Knot, Inc., and all documents concerning all Matthews entities including, but not limited to, Matthews Development Ltd. (Alberta), Matthews Southwest, Matthews Investment Ltd., and Bent.

Respectfully submitted,

*s/ Maureen Peyton King*
Maureen Peyton King
Senior Trial Counsel

Bronson is to respond to this letter by 4/28/22.

So Ordered.
4/26/22

3