UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

          v.

EDWARD BRONSON, *et al.*

                              Defendants.

No. 12-CV-6421 (KMK)

OPINION & ORDER

Appearances:

Andrew Matthew Calamari, Esq.
Christopher John Dunnigan, Esq.
Maureen Peyton King, Esq.
Marsha Catherine Massey, Esq.
Kevin Patrick McGrath, Esq.
Wendy Beth Tepperman, Esq.
Judith Ann Weinstock, Esq.
United States Securities & Exchange Commission
New York, NY
Washington, DC
*Counsel for Plaintiff*

Paul Andrew Rachmuth, Esq.
Rockville Centre, NY
*Counsel for Defendants*

Ryan Dwight O'Quinn, Esq.
DLA Piper LLP
Miami, FL
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

The United States Securities and Exchange Commission ("SEC" or "Plaintiff") brought this Action against Edward Bronson ("Bronson") and his firm, E-Lionheart Associates, LLC ("E-Lionheart"), alleging violations of securities registration requirements under §§ 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and 77e(c). (*See* Compl. (Dkt. No. 1).) The SEC also asserted a claim for unjust enrichment against Fairhills Capital, Inc. ("FCI" or "Relief Defendant"; together with Bronson and E-Lionheart, "Defendants"). (*Id.*) On June 8, 2017, the Court entered a Final Judgment against Defendants. (*See* Final J. (Dkt. No. 186).)[1] On January 19, 2021, after Bronson failed to pay anything toward the Final Judgment, the Court issued a Contempt Order against Bronson. (*See* Dkt. No. 223.) On November 24, 2021, the Court issued another Contempt Order and delineated a payment plan for late 2021 and early 2022. (Dkt. No. 302). And on January 27, 2022, and January 28, 2022, the Court issued additional Contempt Orders regarding Bronson's failure to meet the payment requirements and directed that Bronson be taken into custody (together, the "Contempt Orders"). (Dkt. Nos. 318, 321).

Before the Court are: (1) Bronson's Motion for Relief from the June 8, 2017, Final Judgment (the "Final Judgment Motion"), (*see* Not. of Mot. (Dkt. No. 300)), and (2) Bronson's Motion for Relief from the Contempt Orders (the "Contempt Motion"), *see* Not. of Mot. (Dkt. No. 336) (collectively, the "Motions"), both pursuant to Federal Rule of Civil Procedure 60(b).[2] For the reasons explained below, the Motions are denied.

---

[1] On August 28, 2017, this Court entered an Amended Final Judgment against Defendants in order to clarify FCI's liability. (Am. Final J. 3–4 (Dkt. No. 193).)

[2] Although the Motion for Relief from Final Judgment requests that the Court vacate its June 8, 2017, Final Judgment, the Court will assume for purposes of resolving the Motion that it requests relief from the Court's August 28, 2017, Amended Final Judgment, which replaced the original judgment. (*See* Am. Final J. 3 (explaining that, "where a 'district court's purpose in

I.  Background

On August 12, 2012, the SEC filed its Complaint, alleging that Bronson and E-Lionheart reaped approximately $10 million in unlawful profits from selling shares they bought at deep discounts from approximately 100 penny stock companies.  (*See* Compl. ¶¶ 10–31.)  The Complaint also alleged that FCI, of which Bronson was the owner and President, received at least $600,000 in proceeds from the illegal stock sales that Bronson transferred to FCI.  (*Id.* ¶¶ 9, 32–36.)

Defendants' scheme, in essence, was to buy shares of penny stocks at a discounted rate and quickly resell those shares to the public in violation of applicable registration and resale restrictions.  (Op. & Order Denying Defs.' Mot. To Dismiss ("MTD Op.") 2 (Dkt. No. 21).)  To effectuate their scheme, Defendants would "cold call[]" companies and offer to purchase their securities at a steep discount from the market rate.  (Compl. ¶ 15; Op. & Order Granting Pl.'s Mot. for Summ. J. ("Summ. J. Op.") 2 (Dkt. No. 178).)  If the company expressed interest in the offer, Defendants would provide the company's transfer agent with an opinion letter stating that the securities were exempt from registration under Regulation D of the Securities Act and Delaware state law.  (Summ. J. Op. 6; MTD Op. 3–4.)  This purported exemption allowed Defendants to bypass restrictions on the resale of stock.  Thus, having acquired a company's stock at a discount, Defendants would turn a profit by immediately reselling the stock to the public at the prevailing market rate.  (Summ. J. Op. 8; MTD Op. 2–3, 4.)

---

amending its judgment [is] simply to clarify the court's intended disposition of the case,' the 'district court clearly has power to make this type of clerical correction.'" (quoting *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990))).

On March 27, 2017, this Court granted Summary Judgment in favor of the SEC, concluding that the securities were not exempt from registration.  (*See* Summ. J. Op. 18–25.)[3] Although Defendants purported to rely on Rule 504(b)(1)(iii) of Regulation D, which requires in relevant part that offers or sales of securities be made "exclusively according to state law exemptions from registration," the state-law exemption on which Defendants relied—Delaware Securities Act § 73-207(b)(8)—applies "only where there is a sufficient nexus between Delaware and the transaction at issue," (Summ. J. Op. 19 (citation and internal quotation marks omitted)). The Court concluded that such a nexus was lacking, (*see id.* at 19–23), and, in response to Defendants' argument that "parties may choose the law governing their . . . securities transactions," the Court further concluded that "Defendants [could not] artificially select a particular state's security laws [to] evad[e] the registration requirements of the federal securities laws where the transactions at issue have no connection to that state," (*id.* at 23, 25).  On April 26, 2017, Defendants filed a Notice of Appeal from the Court's March 27, 2017 Opinion & Order.  (Dkt. No. 181.)  On May 26, 2017, the Second Circuit denied the appeal as being in default.  (Dkt. No. 187.)

On June 8, 2017, the Court entered Final Judgment against Defendants: (i) permanently enjoining Defendants from violating § of the Securities Act of 1933 and 15 U.S.C. § 77e; (ii) permanently barring Defendants from participating in any offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock; (iii) ordering Bronson, E-Lionheart Associates, and FCI jointly and severally liable for disgorgement of $9,355,271.79 and

---

[3] The Court had previously denied Defendants' Motion To Dismiss the Complaint on March 31, 2014.  (*See* MTD Op.)

prejudgment interest thereon in the amount of $2,177,100.59; and (iv) ordering Bronson liable for a civil penalty in the amount of $150,000 and E-Lionheart liable for a civil penalty in the amount of $725,000.  (*See* Final J. 4).  On July 5, 2017, Defendants filed a Notice of Appeal to the Second Circuit from the Court's Final Judgment.  (Dkt. No. 189.)

On August 28, 2017, this Court entered an Amended Final Judgment: (i) permanently enjoining Defendants from violating § 5 of the Securities Act of 1933 and 15 U.S.C. § 77e; (ii) permanently barring Defendants from participating in any offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock; (iii) ordering Bronson, E-Lionheart Associates, and FCI jointly and severally liable for disgorgement of $9,355,271.79 and prejudgment interest thereon in the amount of $2,177,100.59; (iv) ordering Bronson liable for a civil penalty in the amount of $150,000 and E-Lionheart liable for a civil penalty in the amount of $725,000; and (v) ordering FCI jointly and severally liable for disgorgement of $645,000.00 and prejudgment interest thereon in the amount of $151,031.37.  (Am. Final J. 4.)  The Second Circuit affirmed this Court's Final Judgment on November 20, 2019.  (Dkt. No. 198.)

On February 19, 2020, the SEC filed an Application for an Order to Show Cause as to why Bronson should not be held in contempt, alleging that Bronson, despite "earning substantial income," had paid nothing toward the Court's Judgment.  (Dkt. No. 202.)  On January 19, 2021, the Court granted the SEC's Application and ordered that:

> 1. Bronson shall make a good-faith payment of $25,000 to the SEC no later than one week from entry of this Order;
>
> 2. Bronson must produce all financial records and other documents requested by the SEC—including records and documents for Dawn Bronson and V2IP—no later than two weeks from entry of this Order, along with a full accounting of all assets and income;

3. Bronson and Dawn Bronson must sit for an SEC deposition no later than February 26, 2021, unless the SEC requests a postponement;

4. Within four weeks of Bronson's or Dawn Bronson's deposition—whichever is later—Bronson shall meet with the SEC to negotiate in good faith a long-term payment plan to satisfy his obligation to the Court. After meeting with Bronson, the SEC shall file with the Court a proposed payment plan, which shall be supported by a detailed and comprehensive accounting of Bronson's financial condition.

(Jan. 19, 2021 Contempt Order at 30 (Dkt. No. 223).)[4]  The Court explained its reasoning, stating:

It has been over three years since the Court ordered Bronson to disgorge his illegal profits.  In that time Bronson has been working hard at investing clients' funds and working on multiple international and domestic projects, the proceeds from which have gone to support an extravagant lifestyle for Bronson and his family.  Bronson, however, has not paid a penny toward his financial obligation in this case.  In such circumstances, it is appropriate to consider the possibility of incarceration.

(*Id.* at 29.)  The Court also stated, "The Court's patience is at an end.  Bronson has not only flouted the Court's Order for three years, but has also chosen to make every effort to hide his financial condition and steadfastly frustrate the SEC's efforts at collection."  (*Id.* at 29–30.)  Finally, the Court noted:

Although the Court declines, for now, to order Bronson incarcerated, the Court will revisit this decision if Bronson violates any provisions of this Order.  Bronson will remain in contempt until he has (1) paid the full amount of disgorgement and prejudgment interest owed to the Court, or (2) provided documentation, including financial records.

 (*Id.* at 30.)

On January 27, 2021, the SEC filed a letter to the Court stating that Bronson had failed to make his first good-faith payment.  (Dkt. No. 224.)  The Court ordered Bronson to make the required payment by January 29, 2021 at 5pm "or face the full range of sanctions."  (Dkt. No.

---

[4] Dawn Bronson is Bronson's wife.  (*See* Dkt. No. 203.)

225.)  Though Bronson did make the initial payment, it was late—a delay which the Court

ordered Bronson to explain in an affidavit.  (*See*  Dkt. No. 227.)

On February 5, 2021, the SEC filed a letter explaining to the Court that Bronson had

failed to provide a full accounting of assets and income and all financial records and documents

as required by  the Court's January 2021 Order.  (*See* Dkt. No. 229.)  After a series of letters and

submissions back and forth from the Parties, on April 7, 2021, the Court ordered Bronson "to

provide a complete accounting of which documents have and have not been produced" "[f]or

each category of documents requested in Dkt. Nos 229-1, 229-2, and 229-3."  (Dkt. No. 238.)

The Court also instructed Bronson "to state the basis on which [any] document(s) are being

withheld and provide those documents to the Court under seal for in camera review."  (*Id.*)

Finally, the Court further instructed Bronson to "provide a complete accounting of all assets and

income with documentary support for each calculation" by Friday, April 30, 2021.  (*Id.*)

On May 11, 2021, the SEC filed a letter in which it stated, "Certain categories of

documents have still not been produced to the Commission. . . .  Nor has Bronson provided a full

accounting as ordered.  Due to Bronson's failures, the Commission cannot make a completely

informed recommendation for a payment plan."  (Dkt. No. 240.)  The SEC also noted that

"Bronson has not shown an inability to make significant payments.  Indeed . . . Bronson

maintains a lavish lifestyle and documents obtained from third parties suggest that he has access

to significant assets."  (*Id.*)  The SEC noted in its submissions attached to the letter that to date,

Bronson had still only paid $25,000 toward the Judgment.  (Dkt. 240-1.)

In response, the Court scheduled a hearing for June 3, 2021 "to resolve the ongoing

disputes regarding Edward Bronson's production of documents and the status of his compliance

with the Court's January 19, 2021 Order."  (Dkt. No. 241.)  The Court also ordered that,"[a]t a

minimum, [] Bronson and his wife, Dawn Bronson, should be prepared to testify under oath and respond to questions from the Court and the SEC." (*Id*.)  On May 25, 2021, the Court ordered an additional four witnesses to appear at the June 3, 2021 hearing: John Kellas ("Kellas"), Stuart Krost ("Krost"), Chelsea Krost, and Allen Tucci ("Tucci").  (Dkt. No. 245.)  On May 28, 2021, the Court granted a request by Stuart and Chelsea Kost to adjourn the hearing, (*see* Dkt. No. 247), and rescheduled it for July 7, 2021, (Dkt. No. 251).  The Court also granted Bronson's request to call his own witnesses.  (*Id*.)

On July 7, 2021, just before the hearing was to begin, the Parties reached a settlement.  (Dkt. (minute entry for Jul. 7, 2021).)  The settlement, which the Court So Ordered, required that Bronson pay:

> (i) $1.1 million dollars by August 13, 2021[,] credited first to the penalties and post-judgment interest thereon owed by Bronson and E-Lionheart as set forth in the Judgment.  Prior to making the payment, counsel for Bronson shall contact the Commission and obtain the payoff figures for both penalties, and then pay the full balance owed thereon directly to the Commission as set forth below.  Any amount remaining from the $1.1 million payment following the payment of the penalties shall be paid directly to the Court's Registry Investment System account (hereinafter CRIS account) established for this action as set forth below.  Those funds shall be credited to the prejudgment interest and disgorgement ordered to be paid in the Judgment;
>
> (ii) Following the initial payment on or before August 13, 2021, ten (10) installments of $1.1 million dollars per month are due on the 13th of each month: September 13, 2021, October 13, 2021, November 13, 2021, December 13, 2021, January 13, 2022, February 13, 2022, March 13, 2022, April 13, 2022, May 13, 2022 and June 13, 2022; and
>
> (iii) a final payment including the balance of prejudgment interest and disgorgement and all post-judgment interest (which shall continue to accrue until payment is made in full) on July 13, 2022.

(Dkt. No. 272.)  The so-ordered settlement also provided that "the Court shall appoint a liquidator to whom neither party objects to sell securities in the Top Knot Inc. USA [("Top Knot")] brokerage account held at UMB–168.1 (and any other account that Bronson designates)

to facilitate the satisfaction of any portion of the Judgment and payments ordered herein." (*Id.*) Accordingly, on August 17, 2021, the Court appointed Ryan Stumphauzer ("Stumphauzer") as Liquidating Trustee. (Dkt. No. 278.)

Also on August 17, the SEC filed a letter informing the Court that Bronson failed to make the initial payment of $1.1 million by August 13, 2021—instead paying only $200,000. (Dkt. No. 277.) On September 15, 2021, the SEC filed a letter informing the Court that "Bronson's counsel filed three proofs of payment on ECF: $200,000 dated August 13; $300,000 dated August 20; and $600,000 dated August 27. U.S. Treasury was unable to negotiate the August 27 check because of a lack of sufficient funds." (Dkt. No. 282.) The SEC also moved to compel Bronson to "describe in detail the sources of funds for the $200,000 and $300,000 payments," "submit all future payments by wire transfer to avoid any lag time in learning of delinquencies," and "impose any appropriate additional sanctions for Bronson's failure to submit timely payments." (*Id.*)

On October 18, 2021, the SEC provided a further update: "Bronson made the first payment, due August 13, late, and did not make the second or third payments, due on the 13th of September and October." (Dkt. No. 287.) The same day, Bronson filed a Notice of Lack of Financial Capacity. (Dkt. No. 288.) On October 19, 2021, the Court scheduled a hearing on November 22, 2021, during which time "Bronson is expected to provide proof that he lacks the financial capacity to comply with the Court's Orders in this case." (Dkt. No. 290.)

On October 27, 2021, the SEC requested that Bronson produce the materials and information requested in its letter motion to compel. (Dkt. No. 291; *see also* Dkt. No. 282.) The SEC also requested:

> [F]or the period from July 1 to the present, Bronson produce: (i) proof of all sources of income and the amount of that income; (ii) for all other funds received directly

or indirectly the amount and source of those funds; (iii) proof of all expenses he claims for himself and his family; (iv) all amounts he has transferred to third parties; (v) documents reflecting all financial accounts for the Bronson family and every Top Knot entity and any other entity or person that pays expenses for the Bronsons; and (vii) a current mortgage statement for the Bronsons' residence.

(Dkt. No. 291.) Finally, the SEC requested that Kellas, Dawn Bronson, Krost, and Jordan Weinstein ("Weinstein") be ordered to appear along with the Liquidating Trustee, Stumphauzer. (*See id.*) The Court granted all three of the SEC's requests and stated that "[a]t a minimum, the witnesses listed herein must be prepared to testify" at the hearing on November 22, 2021. (Dkt. No. 292.)

On November 18, 2021, the SEC informed the Court that Bronson missed the November 13, 2021 payment. (Dkt. No. 293.) The SEC also noted that although Bronson had provided some of the requested documents, he did not provide all of the documents that the Court ordered. (*Id.*) Further, the SEC claimed that the information, which is not "categorical and detailed" as required by precedent, "render impossible any suggestion that Bronson is entirely unable to make payments toward the Court's Judgment." (*Id.*)

In response, the Court ordered that Bronson "to provide substantial details about his and Top Knot's offshore income, assets and cashflow, a current mortgage statement for the residence where the Bronsons reside. Also, [] Bronson is to bring multiple copies of each document produced in response to the November 22 hearing." (Dkt. No. 294.) The Court also ordered that Paul Rachmuth ("Rachmuth"), one of Bronson's current attorneys, appear and be prepared to testify at the November 22, 2021 hearing. (*Id.*)

Also on November 18, 2021, Krost and Weinstein wrote a letter to the Court requesting that their appearance at the November 22, 2021 hearing be excused, a request which this Court

denied.  (Dkt. No. 298.)[5]  The same day, after close of business, Bronson requested permission to

file an expedited Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure

60(b) by Friday, November 19, 2021, one business day before the scheduled contempt hearing

on November 22, 2021.  (Dkt. No. 295.)  The Court rejected this request, noting:

> The timing and sequence of the letters from [] Bronson's counsel and surrogates is
> troubling and transparent. . . . [T]here has been a coordinated, last-minute effort to
> adjourn the contempt hearing.  So, the Court will make this clear: The hearing is
> going forward on 11/22.  Once the hearing is over, there can be a discussion about
> a Rule 60(b) motion.

(Dkt. No. 297.)

On November 22, 2021, the Court held the contempt hearing, during which Bronson

testified.  (*See* Dkt. (entry for Nov. 22, 2021)); *see also* Hearing Tr. (Dkt. No. 341).)  Krost and

Weinstein failed to appear.  (*See* Dkt (entry for Nov. 22, 2021)).  The Court found Bronson to be

in civil contempt and rejected Bronson's claim of financial incapacity to pay the Court's

Amended Final Judgment.  (*See id.*)  The finding of contempt was accompanied by a finding that

Bronson's testimony, which was contradicted by both the record and common sense, was not

credible.  (*See, e.g.*, Hearing Tr. at 117, 119, 121.)

On the same day, Defendants filed their Motion for Relief from the Court's Final

Judgment and accompanying papers.  (Dkt. Nos. 300, 300-1.)  The SEC filed an Opposition on

December 13, 2021.  (Dkt. No. 305.)  Defendants filed their Reply on December 20, 2021.  (Dkt.

No. 307.)

On November 24, 2021, the Court issued an Order directing Bronson to make a $500,000

payment by December 23, 2021, after which time Bronson was to resume his monthly payments

---

[5]  The Court notes that Krost tried—unsuccessfully—to be excused from appearing for the
June 3, 2021 hearing, a request which was also made at the last minute.  (Dkt. No. 247.)  Both
attempts to evade appearing before this Court were denied.  (Dkt. Nos. 251, 298.)

of $1.1 million on the 13th of every month until the Judgment is satisfied.  (*See* Dkt. No. 302.)
The Court ordered the U.S. Marshals Service to take Bronson into custody for civil contempt in
the event that Bronson failed to make a payment. (*See id.*)

Bronson filed Notices of Payment on December 22 and 23, 2021, as well as on January
12, 2022, notifying the Court that he had paid the SEC in the amounts of $150,000, $200,000,
and $300,000, respectively.  (*See* Dkt. Nos. 308, 309, 310.)  On January 13, 2022, Bronson filed
a Notice informing the Court that Bronson "scheduled a payment" in the amount of $800,000 to
be paid on January 21, 2022.  (Dkt. No. 311.)  On January 14, 2022, the SEC filed a letter to the
Court informing the Court that Bronson only paid $300,000 toward the $1.1 million that he owed
on January 13, 2021.  (Dkt. No. 312.)  The SEC also noted that Bronson failed to provide any
proof of funds indicating that his alleged scheduled payment of $800,000 would go through on
January 21, 2022.  (*Id.*)  Bronson filed a letter in response, notifying the Court that he expected
the $800,000 payment to go through, which would make him current on his payment plan.  (Dkt.
No. 313.)  The Court ordered Bronson to make the payment by noon on January 19, 2022, or else
be incarcerated for contempt.  (Dkt. No. 316.)

On January 27, 2022, the SEC filed a letter informing the Court that Bronson failed to
make the payment of $800,000 by noon on January 19, 2022.  (Dkt. No. 317.)  The SEC noted
that Bronson made a payment for $100,000 on January 19, 2022, which went through, and
another payment for $700,000, which was rejected for insufficient funds.  (*See id.*)  The SEC
therefore requested that Bronson be taken into custody.  (*See id.*)  The Court granted the SEC's
request, and ordered that Bronson be incarcerated.  (Dkt. No. 318.)

On January 28, 2022, Bronson submitted a Notice of Payment notifying the Court that he
had paid the remaining $700,000 of the $1.1 million that was due January 13, 2022, through

three additional payments in the amounts of $300,000 on January 25, 2022, $380,000 on January

28, 2022, and $20,000 on January 28, 2022, respectively.  (Dkt. No. 319.)  The SEC

acknowledged that it received the $300,000 payment on January 25, 2022, but that the other two

payments remained pending.  (Dkt. No. 320.)  The SEC therefore requested Bronson's continued

incarceration until the funds cleared.  (*Id.*)  The Court granted the SEC's request, noting that

Bronson has "repeatedly and brazenly flouted the Court's multiple orders to pay disgorgement

over the past several years" and that, "[g]iven the clear pattern of [] Bronson's contempt, there is

no reason to give [] Bronson the benefit of the doubt."  (Dkt. No. 321.)

On January 29, 2022, the SEC filed a letter informing the Court that the $380,000 and

$20,000 payments cleared, making Bronson current—albeit late—on his payment schedule.

(Dkt. No. 322.)  The same day, Bronson filed an emergency letter motion requesting that he be

released from custody.  (Dkt. No. 323.)  The Court granted Bronson's request, but noted that his

letter "omit[ted] many material facts."  (Dkt. No. 324.)  The Court also stated, "[] Bronson's

conduct in the long history of this case is one of continuous contempt for this Court's orders.

Thus, while the Court will grant this application, [] Bronson is advised that a late payment, by

even a day, will result in his arrest and imprisonment."  (*Id.*)[6]

On February 14, 2022, the SEC filed a letter notifying the Court that Bronson failed to

provide proof of compliance with the Court's Order to pay the $1.1 million installment payment

due by February 13, 2022, in accordance with his payment plan.  (Dkt. No. 325.)  The Court

responded by requesting the SEC to submit an arrest warrant, (Dkt. No. 326), which the SEC did,

---

[6] The Court also noted, "the Court is compelled to note for the record that when a
member of the Court's staff delivered the order to US Marshals requiring [] Bronson's
imprisonment, [] Rachmuth, one of [] Bronson's attorneys, made several inappropriate comments
to this staff member about his views regarding the SEC and the Court's order."  (*Id.*)

(Dkt. No. 327.)  On February 16, 2022, Bronson was arrested pursuant to the arrest warrant. (Dkt. No. 328.)

On February 18, 2022, Bronson filed a pre-motion letter requesting permission to file a Motion for Relief from the Court's Contempt Orders pursuant to Federal Rule of Civil Procedure 60(b) on an expedited basis.  (Dkt. No. 329.)  Specifically, the proposed motion sought relief from: the January 19, 2021 Contempt Order, which required a proposed payment plan, (Dkt. No. 223); the November 24, 2021 Contempt Order delineating a payment plan for late 2021 and early 2022, (Dkt. No. 302); and the January 27, 2022 and January 28, 2022 Contempt Orders regarding failure to meet the payment requirements and directing that Bronson be taken into custody, (*see* Dkt. Nos. 318, 321, 329).

The Court held a pre-motion conference on March 2, 2022, during which the Court set a briefing schedule for Bronson's proposed Motion.  (*See* Dkt. No. 335.)  On March 9, 2022, Bronson filed his consolidated Motion for Relief from the Court's Contempt Orders, pursuant to Federal Rule of Civil Procedure 60(b), and accompanying papers.  (Dkt. Nos. 336, 337.)  The SEC filed its Opposition on March 16, 2022.  (Dkt. No. 338.)  Bronson filed his Reply on March 22, 2022.  (Dkt. No. 339.)

## II.  Discussion

### A.  Standard of Review

Rule 60(b) provides that, "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding."  Fed. R. Civ. P. 60(b).  Specifically, Rule 60(b) provides six grounds for relief:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the

14

judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

*Id*. "Properly applied[,] Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Leeber Realty LLC v. Trustco Bank*, No. 17-CV-2934, 2019 WL 498253, at *3 (S.D.N.Y. Feb. 8, 2019) (alteration in original) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)), *aff'd*, 798 F. App'x 682 (2d Cir. 2019). "Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Vasquez v. Fredericks*, No. 15-CV-9528, 2021 WL 1579489, at *1 (S.D.N.Y. Apr. 22, 2021) (quoting *Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990)). "Although [Rule 60(b)] should be broadly construed to do substantial justice, final judgments should not be lightly reopened." *Tapper v. Hearn*, 833 F.3d 166, 170 (2d Cir. 2016) (citation, alteration, and quotation marks omitted). "The movant must adduce 'highly convincing material' in support of the motion." *Leeber Realty*, 2019 WL 498253, at *3 (quoting *United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977)); *see also Empresa Cubana Del Tabaco v. General Cigar Co. Inc*., 385 F. App'x. 29, 31 (2d Cir. 2010) (summary order) (noting that Rule 60(b) motions are "disfavored").

B. Analysis

1. Timeliness

Rule 60(b) motions "must be made within a reasonable time. . . ." Fed. R. Civ. P. 60(c)(1). "The Second Circuit has found delays as short as 18 months unreasonable and thus untimely." *Spurgeon v. Lee*, No. 11-CV-600, 2019 WL 569115, at *2 (E.D.N.Y. Feb. 11, 2019); *see also Kellogg v. Strack*, 269 F.3d 100, 104 (2d Cir. 2001) (finding a 26-month delay in filing Rule 60(b) motion "patently unreasonable"); *Rodriguez v. Mitchell*, 252 F.3d 191, 201 (2d Cir.

2001) (finding a Rule 60(b) motion untimely when filed three and one-half years after

judgment); *Truskoski v. ESPN, Inc*., 60 F.3d 74, 77 (2d Cir. 1995) (finding 18-month delay was

unreasonable); *James v. United States*, 603 F. Supp. 2d 472, 479 (E.D.N.Y. 2009) (collecting

cases and noting that "[f]ederal courts have found unexcused delays shorter than [21] months to

be unreasonable and therefore, time-barred."); *Moses v. United States*, No. 90-CR-863, 2002 WL

31011864, at *2 (S.D.N.Y. Sept. 9, 2002) (collecting cases and noting that courts have denied

Rule 60(b) motions as untimely after delays of 10, 16, and 20 months), *aff'd*, 119 F. App'x 357

(2d Cir. 2005).

Bronson filed his Motion for Relief from the Final Judgment on November 22, 2021,

(*see* Not. of Mot. (Dkt. No. 300)), which is almost four and a half years (53 months) after the

Court issued the Final Judgment on June 8, 2017, (*see* Final J.), and over four years (50 months)

after the Court issued the Amended Final Judgment on August 28, 2017, (*see* Am. Final J.).

Bronson filed his Motion for Relief from the Court's Contempt Orders on March 9, 2022, (*see*

Not. of Mot. (Dkt. No. 336)), which is almost five years (57 months) after the Court issued the

Final Judgment, (*see* Final J.), and four and a half years (54 months) after the after the Court

issued the Amended Judgment, (*see* Am. Final J.).  These delays clearly exceed the length of

time that courts within the Second Circuit have found to be reasonable.  *See, e.g.*, *Muller v. Lee*,

No. 13-CV-0775, 2021 WL 199284, at *3 (N.D.N.Y. Jan. 20, 2021) (finding 4- year delay

untimely); *Brown v. United States*, No. 05-CR-538, 2018 WL 2021800, at *4 (S.D.N.Y. Apr. 30,

2018), *report and recommendation adopted*, 2018 WL 2323226 (S.D.N.Y. May 22, 2018)

(same).

Bronson argues that his Motions are timely given the "rapidly changing legal landscape"

in the wake of the Supreme Court's decisions in *Kokesh v. S.E.C.*, 137 S. Ct. 1635 (2017) and

*Liu v. S.E.C.*, 140 S. Ct. 1936 (2020).  (Defs.' Reply Mem. of Law in Supp. of Mot. for Relief from Final J. ("Defs.' Final J. Reply") 9–10 (Dkt. No. 307); *see also* Defs.' Reply Mem. of Law in Supp. of Mot. for Relief from Contempt Orders ("Defs.' Contempt Reply") at 8–10 (Dkt. No. 339).)   However, as the SEC argues, (*see* Pl.'s Mem. of Law in Opp'n to Mot. for Relief from Final J. ("Pl.'s Final J. Opp'n") 12 (Dkt. No. 305); Pl.'s Mem. of Law in Opp'n to Mot. for Relief from Contempt Orders ("Pl.'s Contempt Opp'n") (Dkt. No. 338)), there are substantial delays between the dates that these decisions were handed down and the dates that Bronson filed each of his Motions.  As an initial matter, *Kokesh* was decided on June 5, 2017, *see Kokesh*, 137 S. Ct. at 1635, which is *before* the Court issued its Final Judgment on June 8, 2017, (*see* Final J.).  In any event, Bronson waited over four years after *Kokesh* to file his Motion for Relief from the Final Judgment on November 22, 2021, (*see* Not. of Mot. (Dkt. No. 300)), and three years after his appeal was denied by the Second Circuit on November 20, 2018, *see S.E.C. v. Bronson*, 756 F. App'x 38 (2d Cir. 2018), *as amended* (Nov. 20, 2018).[7]  Bronson also waited almost five years (57 months) after *Kokesh* was decided to file his Motion for Relief from the Court's Contempt Orders on March 9, 2022.  (*See* Not. of Mot. (Dkt. No.  336).)  Additionally, Bronson waited 17 months after *Liu* was decided on June 22, 2020, *see Liu*, 140 S. Ct. at 1936, to file his Motion for Relief from the Final Judgment, and 20 months to file his Motion for Relief from the Court's Contempt Orders.

Courts in this district have denied Rule 60(b) motions as untimely in similar scenarios. *See, e.g.*, *LaFontaine v. Comm'r of Corr. Servs.*, No. 96-CV-9308, 2005 WL 1161934, at *2 (S.D.N.Y. May 17, 2005) ("[T]he argument raised by [the] petitioner, based on the Second

---

[7] In fact, the Second Circuit even cited *Kokesh* in its decision denying Bronson's appeal. *See Bronson*, 756 F. App'x at 40.

Circuit decision in *Galarza*, could not have been raised until that decision was handed down.
But *Galarza* was decided . . . over three years prior to the filing of the Rule 60(b)(6) motion.
Even allowing time for the *Galarza* decision to have become available and for the preparation of
papers, the present motion cannot be said to have been filed within a reasonable time."), *aff'd*,
184 F. App'x 96 (2d Cir. 2006).

The court's reasoning in *S.E.C. v. Penn* is particularly instructive. *See* No. 14-CV-581,
2021 WL 1226978 (S.D.N.Y. Mar. 31, 2021). In that case, the court denied the defendant's Rule
60(b) motion as untimely because it was filed "more than two years after the [c]ourt entered
judgment against him in 2018 and more than two months after the Supreme Court's decision in
*Liu*, the purported basis of his motion." *Id.* at *6. The court explained:

> [The defendant] offers no explanation or justification for his delay in filing this
> motion, and the [c]ourt finds that this is just one more attempt by [the defendant]
> to prolong the inevitable, the turning over of assets to . . . satisfy the judgment that
> was entered against him. Accordingly, the [c]ourt finds that [the defendant's]
> motion for relief from the judgment was not made within a reasonable time and
> must be denied. [The defendant] has engaged in a series of strategic moves to delay
> the [c]ourt's issuance of judgments against him and against the entities he controls.
> While there are many examples of such behavior, [the defendant's] actions
> surrounding an evidentiary hearing . . . is an excellent illustration of his larger
> pattern of dilatory conduct that wastes judicial time and that has delayed this case
> for no legitimate reason.

*Id.* Bronson attempts to distinguish the facts of *Penn*, arguing:

> First, unlike [] Bronson who challenged the disgorgement award at summary
> judgment and on appeal, the defendant did not appeal the amount of the
> disgorgement award. . . . Second, the court explained that the defendant had
> delayed the proceedings against him by failing to appear at an evidentiary hearing
> and had caused years of discovery delays. Here, . . . [] Bronson has actively
> participated in the proceedings against him and continues to do so.

(Defs.' Contempt Reply 8.) Although Bronson is correct that he did challenge the disgorgement
award at summary judgment and on appeal, Bronson's attempt to distinguish the facts of his case
from *Penn* is in vain. Indeed, the facts of *Penn* are in fact remarkably similar to the instant case.

18

Bronson has engaged in a similar "pattern of dilatory conduct," *see Penn*, 2021 WL 1226978, at *6, in order to avoid making payments in satisfaction of the Amended Final Judgment, as evidenced by his failure to make *any* payments for years after the Amended Judgment was entered.  In another example, described *supra*, after close of business on Thursday, November 2021, Bronson requested permission to file his Motion for Relief from the Final Judgment by Friday, November 19, 2021—one business day before the scheduled contempt hearing on Monday, November 22, 2021.  (*See* Letter from Ryan O'Quinn, Esq. to Court (Nov. 18, 2021) (Dkt. No. 295).)  The Court rejected this request, noting that the timing of the request was "troubling and transparent" and indicative of a "a coordinated, last-minute effort to adjourn the contempt hearing."  (Dkt No. 297).)  The *Penn* court put it well: "[w]hile the events surrounding the [] hearing represent an egregious form of his dilatory actions, such tactics have been ever-present in this litigation."  *Penn*, 2021 WL 1226978, at *7.  Thus, finding no compelling justification for the delay, the court denied Penn's motion.

The same is true in this case, where there is one unmistakable and indisputable fact: Bronson has done everything he could to avoid complying with this Court's orders.  Thus, given this record, the Court concludes that Bronson's Rule 60(b) Motions are untimely.  *See Vasquez*, 2021 WL 1579489, at *2 (finding 34-month delay untimely); *Randolph v. United States,* No. 16-CR-06116, 2020 WL 7343981, at *5 (W.D.N.Y. June 16, 2020) (finding 26-month delay untimely); *Sanchez v. Charity Rest. Corp*., No. 14-CV-5468, 2019 WL 4187356, at *3 (S.D.N.Y. Sept. 4, 2019) (finding three-year delay untimely); *Warren v. Columbia Presbyterian Hosp*., No. 12-CV-5139, 2019 WL 2250419, at *2 (S.D.N.Y. May 24, 2019) (finding two-year delay untimely) (collecting cases); *Francis v. United States*, No. 06-CR-80, 2019 WL 2006136, at *2 (S.D.N.Y. May 6, 2019) (finding two-year delay untimely); *Spurgeon*, 2019 WL 569115, at *2

(finding 33-month delay untimely); *United States v. Al-Khabbaz*, No. 04-CR-1379, 2017 WL 7693368, at *3 (S.D.N.Y. Dec. 18, 2017) (finding 28-month delay untimely); *Griffin v. Burge*, No. 08-CV-934, 2014 WL 3893747, at *5–6 (N.D.N.Y. Aug. 7, 2014) (finding 28-month delay untimely).

  2. Merits

  Even if they were timely, however, Bronson's Motions fail on the merits. Bronson argues that he is entitled to relief from the Amended Final Judgment under subsections (4), (5), and (6) of Rule 60(b). (*See* Not. of Mot. (Dkt. No. 300).) Bronson also argues that he is entitled to relief from the Court's various Contempt Orders under subsections (4) and (6) of Rule 60(b). (*See* Not. of Mot. (Dkt. No. 336)). Because the analysis is substantially the same—particularly given that Contempt Orders found Bronson to be in civil contempt for failure to comply with the Amended Final Judgment, (*see* Dkt. Nos. 223, 302, 318, 321)—the Court will consider the Motions together.

  a. Rule 60(b)(4)

  Rule 60(b)(4) allows a court to vacate a judgment if "the judgment is void." Fed. R. Civ. P. 60(b)(4). "A judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure 'only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Leeber Realty*, 2019 WL 498253, at *8 (quoting *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 193 (2d Cir. 2006)).

  Bronson argues that "[g]iven the recent Supreme Court precedent on the lack of equitable nature of the remedies ordered in the Final Judgment, this Court did not have equitable jurisdiction over the judgment ordered and, therefore, the judgment was void." (Defs.' Mem. of

Law in Supp. of Mot. for Relief from Final J. ("Defs.' Final J. Mem.") 10 (Dkt. No. 300-1).)[8]

The SEC counters that Bronson's argument fails because the issue Bronson raises is not a

jurisdictional one.  (*See* Pl.'s Final J. Opp'n 13–14.)

> The Supreme Court has held:
>
> [A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. . . . The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule.  A judgment is not void, for example, simply because it is or may have been erroneous. . . .

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (quotation marks

omitted).[9]

The Second Circuit in *Romeril*, following *Espinosa*, recently found that "relief under

Rule 60(b)(4) was not available" in that case because "[a]ny legal error [in the judgment] was not

jurisdictional, for the district court had both subject matter and personal jurisdiction . . . ." *S.E.C.

v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021).  Defendants do not argue that the Court lacked

personal jurisdiction over them.  (*See generally* Defs.' Final J. Mem.; Defs.' Final J. Reply.)

As for subject matter jurisdiction, § 21(d)(5) of the Securities Exchange Act of 1934

provides: "In any action or proceeding brought or instituted by the Commission under any

provision of the securities laws, the Commission may seek, and any Federal court may grant, any

equitable relief that may be appropriate or necessary for the benefit of investors."  15 U.S.C. §

78u(d)(5).  In *Kokesh*, the Supreme Court held that disgorgement constituted a "penalty" for the

---

[8] Bronson does not argue that there was a violation of due process.  (*See* Defs.' Final J. Mem.; *see also* Defs.' Final J. Reply.)  Thus, the Court's analysis focuses on the jurisdictional argument.

[9] The Supreme Court has clarified that "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, i.e., its subject-matter or personal jurisdiction." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (italics omitted).

purposes of 28 U.S.C. § 2462, which establishes a five-year statute of limitations for "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture." *Kokesh*, 137 S. Ct. at 1639. The *Kokesh* Court left open the question of whether disgorgement could qualify as equitable relief under § 21(d)(5) of the Securities Exchange Act of 1934, which entitles the SEC to punish securities fraud through civil penalties and "any equitable relief that may be appropriate or necessary for the benefit of investors." § 78u(d)(5). In *Liu*, the Supreme Court answered that question, holding that a disgorgement award is permissible equitable relief under § 21(d)(5) if it does not exceed a wrongdoer's net profits and is awarded for the benefit of victims. *Liu*, 140 S. Ct. at 1940. Although *Liu* narrowed the circumstances in which a disgorgement award can serve as permissible equitable relief under the statute, i.e., when it does not exceed a wrongdoer's net profits and is awarded for victims, (*see id.*), it clearly affirmed district courts' equitable power to award disgorgement orders in securities enforcement cases, *see S.E.C. v. NIR Grp., LLC*, No. 11-CV-4723, 2022 WL 900660, at *3 (E.D.N.Y. Mar. 28, 2022) ("In *Liu*, the Supreme Court affirmed a court's power to award disgorgement in an SEC enforcement action pursuant to [§] 78u(d)(5) but held that any disgorgement must 'fall[ ] into those categories of relief that were typically available in equity' and that any disgorgement awarded may not exceed a 'defendant's net profits from wrongdoing.'" (quoting *Liu*, 140 S. Ct. at 1942)); *S.E.C. v. Cope*, No. 14-CV-7575, 2021 WL 653088, at *2 (S.D.N.Y. Feb. 19, 2021) ("While *Liu* limited to a certain extent the scope of the disgorgement remedy, a district court retains broad equitable power to fashion appropriate remedies for federal securities law violations, including imposing disgorgement." (quotation marks and citation omitted)), *aff'd sub nom. S.E.C. v. de Maison*, No. 21-620, 2021 WL 5936385 (2d Cir. Dec. 16, 2021). Thus, the Court clearly had subject matter jurisdiction to adjudicate Defendants' case and there is therefore no basis for relief under Rule

22

60(b)(4) in light of *Kokesh* and *Liu*. *See S.E.C. v. Boock*, 750 F. App'x. 61, 61–62 (2d Cir. 2019) (summary order) (rejecting defendants' argument that the judgments against them were jurisdictionally void under Rule 60(b)(4) after *Kokesh* held that disgorgement was a penalty within the five-year statute of limitations under 28 U.S.C. §2462).

Next, Bronson argues that "[e]ven if the Court declines to vacate the Final Judgment and resulting Contempt [Orders] pursuant to *Liu*, the Court should nonetheless vacate the Contempt [Orders] for lack of jurisdiction because the Final Judgment constitutes a 'money judgment' that must be enforced by a writ of execution." (Defs.' Mem. in Supp. of Mot. for Relief from Contempt Orders ("Defs.' Contempt Mem.") 9 (Dkt. No. 337) (citing Fed. R. Civ. P. 69(a)(1).) The SEC counters that "Defendants' reliance on Rule 69 is misplaced" because "[a]mple authority in this and other courts . . . holds that contempt is available to enforce compliance with a disgorgement order in SEC civil enforcement actions." (Pl.'s Mem. in Opp'n to Defs.' Mot. for Relief from Contempt Orders ("Pl.'s Contempt Opp'n") 8 (Dkt. No 338).)

The Court agrees with the SEC. A court has "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority," including "[d]isobedience or resistance" to its lawful orders. 18 U.S.C. § 401(3); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."); *Armstrong v. Guccione*, 470 F.3d 89, 102 (2d Cir. 2006) (same); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175, 2021 WL 3418475, at *4 (S.D.N.Y. Aug. 5, 2021) (reciting the same principle). Courts in this district have consistently found defendants to be in contempt for failure to comply with disgorgement orders in SEC civil enforcement actions. *See, e.g.*, *Schwarz v. ThinkStrategy Cap. Mgmt. LLC*, No. 09-CV-9346, 2015 WL 4040558, at *22 (S.D.N.Y. July 1, 2015) (finding the defendant to be in

contempt for failure to pay the court's disgorgement judgment); *S.E.C. v. Durante*, No. 01-CV-9056, 2013 WL 6800226, at *15 (S.D.N.Y. Dec. 19, 2013) (same), *report and recommendation adopted*, 2014 WL 5041843 (S.D.N.Y. Sept. 25, 2014), *aff'd*, 641 F. App'x 73 (2d Cir. 2016); *S.E.C. v. Pittsford Capital Income Partners, LLC*, No. 06-CV-6353, 2010 WL 2025500, at *1, *5 (W.D.N.Y. May 20, 2010) (same); *S.E.C. v. Zubkis*, No. 97-CV-8086, 2003 WL 22118978, at *7 (S.D.N.Y. Sept. 11, 2003) (same); *S.E.C. v. Musella*, 818 F. Supp. 600, 611–12 (S.D.N.Y. 1993) (same).

Accordingly, this Court clearly had jurisdiction to impose both the Amended Final Judgment and the Contempt Orders, rendering relief under Rule 60(b)(4) unavailable.

### b. Rule 60(b)(5)

Rule 60(b)(5) provides that a court "may relieve a party . . . from a final judgment, order, or proceeding" where "applying [the judgment] prospectively is no longer equitable," Fed. R. Civ. P. 60(b)(5), such as when "'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest,'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)). "In order to obtain relief under this provision, a movant must show, first, that the challenged order is prospective in nature, and second, that it would be inequitable to permit the order to remain in place." *Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513, 2021 WL 4480487, at *2 (E.D.N.Y. Sept. 30, 2021).

"[A] final judgment or order has 'prospective application' for purposes of Rule 60(b)(5) only where it is 'executory or involves the supervision of changing conduct or conditions.'" *Tapper*, 833 F.3d at 170 (internal quotation marks omitted) (quoting *DeWeerth v. Baldinger*, 38 F.3d 1266, 1275 (2d Cir. 1994)). The Second Circuit has long held that "judgments involving

injunctions have 'prospective application,' while money judgments do not." *DeWeerth*, 38 F.3d at 1275; *see also Penn*, 2021 WL 1226978, at *3 n.7 (citing the same principle); *S.E.C. v. Longfin Corp.*, No. 18-CV-2977, 2020 WL 4194484, at *2 (S.D.N.Y. July 21, 2020) (same), *aff'd sub nom. S.E.C. v. Altahawi*, 849 F. App'x 323 (2d Cir.), *cert. denied*, 142 S. Ct. 594 (2021); *Saunders v. Goord*, No. 98-CV-8501, 2007 WL 1434974, at *2 (S.D.N.Y. May 15, 2007) (same).  Because the disgorgement orders under the Amended Final Judgment are money judgments, they do not have prospective application, and Rule 60(b)(5) is thus inapplicable. (Am. Final J. 4.)

Rule 60(b)(5) is similarly inapplicable to the injunctive relief ordered under the Amended Final Judgment—namely, the § 5 injunction and the penny stock bar.  (*Id.*)  Bronson argues that enforcing the § 5 injunction and the penny stock bar "is no longer equitable, given that the state of the law has changed since the *Liu* decision."  (Defs.' Final J. Mem. 11.)  However, *Liu* did not disturb courts' authority to impose § 5 injunctions under 15 U.S.C. § 78u(d)(1) and penny stock bars under 15 U.S.C. § 78u(d)(6)(A).  *See generally Liu*, 140 S. Ct. at 1936.[10]  Indeed, the Supreme Court in *Liu* did not "purport to extend its holding beyond approving the availability of disgorgement that complies with certain requirements of longstanding equity jurisprudence." *S.E.C. v. Voight*, No. 15-CV-2218, 2021 WL 5181062, at *4 (S.D. Tex. June 28, 2021) (finding that certain portions of the court's judgment which imposed an asset freeze and a "gag order" were not invalidated in light of *Liu* because the defendants "read[] too much into *Liu*" and failed to cite any "authority that has interpreted *Liu* holding in such sweeping fashion").  Thus, it is unsurprising that, after *Liu*, district courts around the country have continued to impose

---

[10] The Court notes that the Supreme Court does not cite § 78u(d)(1) or § 78u(d)(6)(A) at all in the *Liu* opinion.  *See id.*

disgorgement awards, penny stock bars, and injunctions pursuant to various provision of the securities laws in securities enforcement actions.  *See, e.g.*, *S.E.C. v. KRM Servs., LLC,* No. 19-CV-1424, 2021 WL 4498646, at *5 (E.D. Va. Aug. 26, 2021) (recommending entry of default judgment and imposition of injunction and disgorgement award post-*Liu*), *report and recommendation adopted*, 2021 WL 4190655 (E.D. Va. Sept. 15, 2021); *S.E.C. v. Almagarby*, No. 17-CV-62255, 2021 WL 4461831, at *5 (S.D. Fla. Aug. 16, 2021) (recommending an injunction, a penny stock bar, and a disgorgement award post-*Liu*), *report and recommendation adopted*, 2022 WL 832279 (S.D. Fla. Feb. 15, 2022); *S.E.C. v. Dang*, No. 20-CV-1353, 2021 WL 1550593, at *8–9 (D. Conn. Apr. 19, 2021) (granting default judgment in favor of the SEC and ordering the imposition of injunction and disgorgement award post-*Liu*); *S.E.C. v. Faulkner*, No. 16-CV-1735, 2021 WL 75551, at *9, *16 (N.D. Tex. Jan. 8, 2021) (imposing an injunction and a disgorgement award post-*Liu*); *S.E.C. v. Erwin*, No. 13-CV-3363, 2020 WL 7310584, at *6 (D. Colo. Dec. 11, 2020) (imposing an injunction and a disgorgement award post-*Liu*); *S.E.C. v. Curative Biosciences, Inc.*, No. 18-CV-925, 2020 WL 7345681, at *4–8 (C.D. Cal. Oct. 22, 2020) (imposing a § 5 injunction, a penny stock bar, and a disgorgement award post-*Liu*); *see also S.E.C. v. Gallison*, No. 15-CV-5456, 2022 WL 604258, at *11 (S.D.N.Y. Mar. 1, 2022) (granting summary judgment post-*Liu* in favor of the SEC where the SEC requested a § 5 injunction, a penny stock bar, and a disgorgement award).  The relief requested is therefore unavailable under Rule 60(b)(5).

### c. Rule 60(b)(6)

Rule 60(b)(6) provides that a judgment may be vacated for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  "Rule 60(b)(6) only applies if the reasons offered for relief from judgment are not covered under the more specific provisions of Rule 60(b)(1)–(5)."

*Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (citation omitted); *see also Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988) ("Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment . . . provided that the motion . . . is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." (citation and quotation marks omitted)); *Kurfirst v. Birnbaum*, No. 95-CV-1587, 1996 WL 612489, at *2 (E.D.N.Y. Oct. 19, 1996) ("Subsections (1) and (6) are mutually exclusive, so that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.").  Additionally, "[w]hile Rule 60(b)(6) represents a grand reservoir of equitable power to do justice in a particular case, that reservoir is not bottomless and may only be tapped when the moving party demonstrates that extraordinary circumstances warrant relief."  *Bey v. Iaquinto*, No. 12-CV-5875, 2016 WL 462412, at *5 (S.D.N.Y. Feb. 4, 2016) (citations, alteration, and quotation marks omitted).

Bronson argues that *Kokesh* and *Liu* represent changes in decisional law that merit relief under Rule 60(b)(6).  (*See* Defs.' Final J. Mem. 11; Defs.' Final J. Reply 4.)  However, "as a general matter, a mere change in decisional law does not constitute an 'extraordinary circumstance' for the purposes of Rule 60(b)(6)."  *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004); *S.E.C. v. Amerindo Inv. Advisors Inc.*, No. 05-CV-5231, 2017 WL 3017504, at *8 (S.D.N.Y. July 14, 2017) (same); *see also Agostini v. Felton*, 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6). . . .").

In any event, the Court does not find that the Amended Final Judgment is inconsistent with *Kokesh* and *Liu*.  As outlined above, in *Kokesh*, the Supreme Court held that disgorgement constituted a "penalty" for the purposes of  28 U.S.C. § 2462, which establishes a five-year

statute of limitations for "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture." *Kokesh*, 137 S. Ct. at 1639. "*Kokesh*'s holding was narrow and limited solely to the statute of limitations in 28 U.S.C. § 2462." *Gallison*, 2022 WL 604258, at *6 (quoting *United States v. Bank*, 965 F.3d 287, 296 (4th Cir. 2020) (quoting *United States v. Dyer*, 908 F.3d 995, 1003 (6th Cir. 2018))). In *Liu*, the Supreme Court held that a disgorgement award is permissible equitable relief under § 21(d)(5) if it does not exceed a wrongdoer's net profits and is awarded for victims. *Liu*, 140 S. Ct. at 1940.

Bronson first argues that the disgorgement ordered under the Amended Final Judgment is invalid under *Liu* because it is not based on Defendants' net profits. (*See* Defs.' Final Judgment Mem. 14–15.) However, as the SEC points out, (*see* Pl.'s Opp'n 16), the Court's Summary Judgment Opinion ordered Defendants to "provide the SEC with a calculation of their transaction expenses for the purpose of calculating the disgorgement figure . . . ." (Summ. J. Op. 36.) Defendants failed to do so. (*See* Letter from Kevin P. McGrath, Esq., to Court ("McGrath Letter") (May 17, 2017) at 1 (Dkt. No. 182); Final J. 3 ("The Court agrees with the SEC that the 'Options' for 'pro rata allocation' and 'category allocation,' . . . are nonresponsive to the Court's order to 'to provide the SEC with a calculation of [Defendants'] transaction expenses for the purpose of calculating the disgorgement figure.'").) The Court therefore relied on the SEC's calculation of Defendants' transaction costs and subtracted that number from Defendants' gross profits, yielding Defendants' net profits. (*See* Final J. 3, 4 n.3; *see also generally* Am. Final J. (adding disgorgement obligation for Relief Defendant).) This was permissible under the circumstances. *See S.E.C. v. McCaskey*, No. 98-CV-6153, 2002 WL 850001, at *4 (S.D.N.Y. Mar. 26, 2002) (*report and recommendation*) (stating that a court "may, in its discretion, deduct from the disgorgement amount any direct transaction costs, such as brokerage commissions, that

plainly reduce the wrongdoer's actual profit"); *S.E.C. v. Rosenfeld*, No. 97-CV-1467, 2001 WL 118612, at *2 (S.D.N.Y. Jan. 9, 2001) (*report and recommendation*) (noting that "[a] court may in its discretion, deduct from the defendant's gross profits certain expenses incurred while garnering the illegal profits, including . . . transaction costs such as brokerage commissions"). The disgorgement order therefore reflected Defendants' net profits in accordance with *Liu*.

Second, Bronson argues that "[n]either the Complaint nor [the Final Judgment] specif[ies] any identifiable harmed investors to whom the disgorged profits should be returned." (Defs.' Final J. Mem. 15.)  Bronson argues that this result is counter to *Liu*, which he claims does not allow disgorged funds to be sent to the U.S. Treasury.  (*See id.*)  However, *Liu* left open the question "as to whether the SEC is permitted to deposit disgorgement funds with the Treasury when it is infeasible to distribute such funds to investors."  *Penn*, 2021 WL 1226978, at *13 (citing *Liu*, 140 S. Ct. at 1948); *see also S.E.C. v. Westport Cap. Markets, LLC*, 547 F. Supp. 3d 157, 170 (D. Conn. 2021) (noting that the Supreme Court in *Liu* "did not foreclose disgorgement . . . where it is infeasible to distribute the collected funds to investors") (citation and quotation marks omitted)); *S.E.C. v. Laura*, No. 18-CV-5075, 2020 WL 8772252, at *5 (E.D.N.Y. Dec. 30, 2020) ("*Liu* . . . does not require that a disgorgement award reflect every individually wronged investor's private agreements.  If it did, a court would need to conduct a mini-trial as to each investor before it could order disgorgement.  There is no reason to believe that *Liu*, which confirmed the breadth of the SEC's power to seek equitable awards, also stealthily erected such a substantial barrier to SEC recovery."); *accord Voight*, 2021 WL 5181062, at *9 ("*Liu* cannot fairly be read as implicitly importing into the SEC civil enforcement context additional equitable limitations on disgorgement such as tracing to an identifiable *res*.").  Thus, the Court concludes that its disgorgement order is consistent with *Liu*.

Third, Bronson argues that the Amended Final Judgment is inconsistent with *Liu* because it "seeks disgorgement on a joint and several basis," and "equity requires that disgorgement be particularized by each defendant." (Defs.' Final J. Mem. 16–17.) "Defendants' argument misinterprets *Liu*. The Supreme Court found that disgorgement cannot be applied jointly and severally when such a remedy was not available at common law but that the 'common law did . . . permit liability for partners engaged in concerted wrongdoing.'" *Penn*, 2021 WL 1226978, at *12. As such, "[j]oint and several liability for disgorgement is properly imposed when multiple defendants have collaborated in an illegal scheme." *F.T.C. v. Shkreli*, No. 20-CV-706, 2022 WL 135026, at *48 (S.D.N.Y. Jan. 14, 2022); *see id.* ("*Liu* did not categorically reject a disgorgement order imposed against multiple parties."). Here, Bronson acted in concert with E-Lionheart and FCI (the "Entity Defendants") to effectuate the penny stock scheme. (*See* Summ. J. Op. 2–8.) Indeed, this case is analogous to *First Jersey*, in which "an individual defendant was required to disgorge net profits accruing to his company where he was 'primarily liable' for the fraud that created these profits, was 'intimately involved' in the perpetration of the fraud, and was a 'controlling person' of the company." *Shkreli*, 2022 WL 135026, at *48 (citing *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1475 (2d. Cir. 1996).) More recently, the court in *Shkreli* applied the same reasoning, finding that imposing joint and several liability on individual and entity defendants was not inconsistent with *Liu*. *See id.* Specifically, the court noted that "[the defendant] was the prime mover in th[e] [] scheme. It was his brainchild and he drove it each step of the way. As [the entity's] founder and its largest shareholder, any excess profit gained from [the defendant's] scheme directly benefited him." *Id.* The court further noted that the defendant "was no side player in, or a 'remote, unrelated beneficiary of, [the entity's] scheme. . . . He was the mastermind of its illegal conduct and the person principally responsible for it

30

throughout the years." *Id.* (quotation marks and citation omitted).  The same is true of Bronson.

Bronson is the sole managing member of E-Lionheart, and from 2005 to 2009, Bronson was its

sole employee.  (*See* Summ. J. Op. 2–3.)  In addition, at various times, E-Lionheart's office was

located at Bronson's residences.  (*See id.*)  The transactions which formed the basis of the claim

were made through E-Lionheart.  (*See id.* at 4–8.)  Bronson is also the President and owner of

FCI.  (*See* Summ. J. Op. 4.)  There is therefore no question that Bronson was integral to the

scheme, which he ran through the companies that he controlled.  *See Westport Cap.*, 547 F.

Supp. 3d at 171 (imposing disgorgement award jointly and severally where "[the individual

defendant] owns [the entity defendant], and he wears just about every hat of importance in the

company" and finding that "[i]t is beyond dispute that [the entity defendant] and [the individual

defendant] each received substantial benefits from their concerted, wrongful activities"); *Penn*,

2021 WL 1226978, at *13 ("[The individual defendant] and his entities carried out the fraud

together, making joint and several liability for disgorgement appropriate.").

   Thus, "[b]ecause the Court finds that its disgorgement orders are not beyond any question

inconsistent with the Supreme Court's decision in *Liu*, Defendants' Rule 60(b)(6) [M]otions

would be denied on the merits, if they were timely and otherwise appropriate." *Id.* at *9

(quotation marks omitted); *see also NIR Grp.*, 2022 WL 900660, at *3 ("The Court agrees that

the *Liu* and *Kokesh* decisions do not warrant relief under Rule 60(b)(6)."); *S.E.C. v. Ahmed,* No.

15-CV-13042, 2021 WL 916266 (D. Mass. Mar. 10, 2021) (noting that the court was not

convinced the judgment was inconsistent with *Liu*, and "even if the [j]udgment were inconsistent

with *Liu*, relief under Rule 60(b)(6) would still not be warranted because [i]ntervening

developments in the law by themselves rarely constitute the extraordinary circumstances

required for relief under Rule 60(b)(6)" (internal quotation marks omitted)).

III. Conclusion

For the foregoing reasons, Bronson's Motion for Relief from the Final Judgment and

Motion for Relief from the Court's Contempt Orders are denied.  The Clerk of Court is

respectfully directed to terminate the pending Motions.  (Dkt. Nos. 300, 336).

SO ORDERED.

DATED:       April 29, 2022
             White Plains, New York

             _____
             KENNETH M. KARAS
             UNITED STATES DISTRICT JUDGE