Case 7:12-cv-06421-KMK Document 351 Filed 05/20/22 Page 1 of 7



MEMO ENDORSED

**DLA Piper** LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131-5341
www.dlapiper.com

Ryan O'Quinn
Ryan.OQuinn@dlapiper.com
**T** 305.423.8553
**F** 305.675.0807

May 20, 2022

***VIA CM/ECF***

Hon. Kenneth M. Karas
United States District Court
United State Courthouse
300 Quarropas Street, Chambers 533
White Plains, NT 10601-4150

**Re:** ***U.S. Securities and Exchange Commission v. Edward Bronson, et al.***
**Case No. 12-cv-6421-KMK**

Dear Judge Karas:

Defendant Edward Bronson respectfully files this Letter Motion to Stay Incarceration Pending Appeal. By this letter motion, Mr. Bronson seeks an order directing his immediate release from custody and relief from the Court's contempt orders during the pendency of his appeal. In support thereof, Mr. Bronson states as follows:

## I. Relevant Procedural Background

On November 24, 2021, the Court issued an Order setting a payment schedule for Mr. Bronson's money judgment, which required that he pay $500,000 in December 2021 and $1.1 million each month thereafter until the Judgment is satisfied. (Order, ECF No. 302.) The Court ordered that Mr. Bronson be taken into custody by the U.S. Marshals Service if he failed to comply with any part of the Order. (*Id.*) Mr. Bronson made the $500,000 December 2021 payment, but he failed to timely make the payment due on January 13, 2022. (Not. of Payment, ECF Nos. 308, 309 & 310.) On January 27, 2022, upon the SEC's motion, the Court ordered that Mr. Bronson be taken into custody. (Order of Incarceration, ECF No. 318.) Upon confirmation that Mr. Bronson made the January payment, the Court granted an application for Mr. Bronson's release. (Order of Release, ECF No. 324.) On February 14, 2022, the Court issued a warrant for Mr. Bronson's arrest for failure to make his February 13, 2022 payment, which was executed on February 16, 2022. (Order of Incarceration, ECF No. 328.) Mr. Bronson remains incarcerated because of this payment deficiency.

On April 29, 2022, this Court issued an Opinion and Order denying Mr. Bronson's Motion for Relief from the Final Judgment Filed June 8, 2017 and Motion for Relief from the Contempt Judgment and Subsequent Orders. (Order, ECF No. 347.) On May 6, 2022, Mr. Bronson filed a Notice of Appeal. (ECF No. 350.)

Case 7:12-cv-06421-KMK Document 351 Filed 05/20/22 Page 2 of 7




MEMO ENDORSED



## II. A Stay Pending Appeal Is Warranted by the Balance of the Equities

This Court is vested with the authority and discretion to impose a stay of its own orders pending appeal. Federal Rule of Civil Procedure 62(d) provides that the Court may "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). Here, because the Court's incarceration and contempt orders take the form of a mandatory injunction rather than a monetary judgment, the traditional stay factors guide the Court's analysis.[1] A stay pending appeal is appropriate where: (1) "the stay applicant has made a strong showing that he is likely to succeed on the merits"; (2) "the applicant will be irreparably injured absent a stay"; (3) "issuance of the stay will [not] substantially injure the other parties interested in the proceeding"; and (4) "the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). Each of these factors weigh in favor of a stay.

### A. Mr. Bronson Is Likely to Succeed on the Merits

Mr. Bronson has objected to and is currently seeking appellate relief from the punitive remedies improperly imposed in the respective Judgments and final orders issued in this case, including an award of monetary damages and "injunctive" relief that exceed the traditional bounds of equity. Mr. Bronson's appeal will focus on the legal (as opposed to equitable) nature of the underlying judgment and, accordingly, challenge Mr. Bronson's continued imprisonment for failure to pay. Mr. Bronson is likely to succeed on the merits on two independent bases.

Mr. Bronson will demonstrate on appeal that the SEC sought and obtained penal relief in a matter that exceeded its statutory authority under 15 U.S.C. § 78u(d)(5). While this Court recently opined that modification of the Final Judgment is not warranted (*see* ECF No. 347), there has been a material change in the law rendering the Final Judgment void and inconsistent with recent U.S. Supreme Court precedent. Indeed, *Liu* and *AMG* clarify that although Congress permits agencies like the SEC and FTC to seek equitable remedies like disgorgement, that authority is not unfettered and must comport with the limits of equity principles. *See See Liu v. S.E.C.*, 140 S. Ct. 1936, 1940-41 (2020) (holding that 15 U.S.C. § 78u(d)(5) does not authorize the SEC to seek a "disgorgement" remedy that exceeds the traditional bounds of equity, such as monetary damages *not collected for or paid to identifiable victims* or that exceeds the respective defendant's net receipts); *AMG Capital Mgmt., LLC v. F.T.C.*, 141 S. Ct. 1341, 1350 (2021).

The Final Judgment orders disgorgement of millions of dollars by Mr. Bronson and E-Lionheart, jointly and severally, that is neither tethered to losses of any specific, identifiable harmed investors to whom the disgorged profits should be returned, nor does it provide a means

---

[1] Mr. Bronson submits that because he seeks only to stay the Court's order requiring his indefinite incarceration pending appeal, there is no need for a supersedeas bond under Rule 62.

Case 7:12-cv-06421-KMK Document 351 Filed 05/20/22 Page 3 of 7





for compensating those investors. The SEC's Complaint vaguely requests disgorgement for the benefit of "investors," "the public," and "the investing public," yet fails to identify any of the alleged "ill-gotten gains," from whom, or which of the Defendants received those funds. (Compl., ECF No. 1 ¶¶ 1, 13, 14, 29.) This is impermissible under *Liu*, in which the U.S. Supreme Court recognized that equity requires that disgorgement serve as more than a public remedy. *Liu*, 140 S. Ct. at 1948 (noting that "[t]he equitable nature of the profits remedy generally requires the SEC to return a defendant's gains to the wronged investors for their benefit" and "profits-based remedy must do more than simply benefit the public at large by virtue of depriving a wrongdoer of ill-gotten gains"); *see also Kokesh v. S.E.C.*, 137 S. Ct. at 1635, 1644 (2017).

Moreover, the SEC's Complaint sought to impose joint monetary sanctions to punish generic harm to investors. The *Liu* Court criticized this type of relief because it violates the principles of equity. *Liu*, 140 S. Ct. at 1949 (recognizing that the SEC's practice of vaguely seeking disgorgement jointly and severally against multiple defendants "runs against the rule to not impose joint liability in favor of holding defendants liable to account for such profits only as have accrued to themselves . . . and not for those which have accrued to another, and in which they have no participation" (internal quotation marks omitted)). Here, the Complaint does not engage in any effort to specify which illicit profits were received by each defendant. Nor does the Complaint sufficiently allege alter-ego or another corporate doctrine that would permit the Final Judgment to disregard the independent corporate form of E-Lionheart. As such, there is a high likelihood that the Second Circuit will conclude that the Final Judgment must be vacated in a manner consistent with *Liu* because the SEC requested and obtained disgorgement that is penal and exceeds the bounds of equity. *See* 15 U.S.C. § 78u(d)(5); *see also F.T.C. v. On Point Capital P'ners, LLC*, 17 F.4th 1066, 1078 (11th Cir. 2021) (overturning Eleventh Circuit precedent and finding that the FTC did not have "the power to grant monetary relief" under its operative statute based upon the holding in *AMG*).

Even if the Second Circuit declines to vacate the Final Judgment and Contempt Judgments pursuant to *Liu*, it will likely vacate the Contempt Judgment for lack of jurisdiction because the Final Judgment constitutes a "money judgment" that must be enforced by a writ of execution. *See* Fed. R. Civ. P. 69(a)(1). The Second Circuit has long recognized that not only does Rule 69 provide the proper method of enforcing judgments, "but in most circumstances has entirely supplanted contempt." *Governor Clinton Co. v. Knott*, 120 F.2d 149, 153 (2d Cir. 1941); *see also Close-Up Int'l, Inc. v. Berov*, 411 F. App'x 349, 354 (2d Cir. 2010). Likewise, the U.S. Supreme Court has explained that equitable relief such as a turnover over is an improper method of securing a monetary judgment. *See De Beers Consol. Mines v. United States*, 325 U.S. 212, 222-23 (1945).

Judgments that order punitive "disgorgement," like the one entered in this case, constitute money judgments that must be enforced through the process prescribed by Rule 69. *See U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1244-45, 1252-53 (11th Cir.

Case 7:12-cv-06421-KMK Document 351 Filed 05/20/22 Page 4 of 7





2020). In *Escobio*, the Eleventh Circuit found that the disgorgement to be paid constituted a "classic money judgment" because it "provides for a sum certain, non-contingent payment of money that the court found to be due and owing" and "does not provide the victims . . . with relief via the right to claim particular assets." *Id.* at 1253-54 (internal quotation marks and ellipses omitted). Here too, the Final Judgment awards a sum certain that is not tethered to the losses of specific victims and does not provide those victims with relief because it is to be paid directly to the SEC without any level of judicial scrutiny that the rigorous requirements of equity are met.

While the Second Circuit has never squarely decided the issue raised in *Escobio*, the reasoning in *Escobio* is consistent with the Second Circuit's deep concerns about incarcerating civil defendants in efforts to collect money judgments. *See Close-Up Int'l, Inc.*, 411 F. App'x at 354 (explaining that the United States has abolished debtors' prison in case where the appellant did not even challenge the permissibility of civil contempt sanctions to enforce a money judgment). The SEC has wrongly sought this Court's assistance to employ debtor's prison to collect the improper judgment, which is a non-equitable money judgment that is not enforceable by indefinite periods of incarceration.

Mr. Bronson highlights that while this Court recently opined that contempt is an appropriate sanction to enforce the Final Judgment, its analysis is respectfully flawed. (*See* ECF No. 347 at 23-24.) The Court made its determination on the basis that other "[c]ourts in this district have consistently found defendants to be in contempt for failure to comply with disgorgement orders in SEC civil enforcement actions." (*Id.* at 23.) However, the disgorgement cases relied upon were all decided pre-*Liu* and therefore failed to consider whether the relevant "disgorgement" exceeds the bounds of equity as delineated by the U.S. Supreme Court.[2]

Based on the foregoing, Mr. Bronson has demonstrated a likelihood of success on the merits. At the very least, a stay of Mr. Bronson's incarceration is warranted to maintain the status quo while he seeks a definitive ruling on the novel and complex issues currently on appeal. *See In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2018 WL 7473109, at *1 (S.D.N.Y. June 27, 2018); *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010) (granting a stay where "[the] appeal presents an issue of first impression," even though "the Court remain[ed] confident in the soundness of [its] reasons.").

---

[2] *See Schwarz v. ThinkStrategy Cap. Mgmt. LLC*, No. 09-CV-9346, 2015 WL 4040558, at *22 (S.D.N.Y. July 1, 2015); *S.E.C. v. Durante*, No. 01-CV-9056, 2013 WL 6800226, at *15 (S.D.N.Y. Dec. 19, 2013), *report and recommendation adopted*, 2014 WL 5041843 (S.D.N.Y. Sept. 25, 2014), *aff'd*, 641 F. App'x 73 (2d Cir. 2016); *S.E.C. v. Pittsford Capital Income Partners, LLC*, No. 06-CV-6353, 2010 WL 2025500, at *1, *5 (W.D.N.Y. May 20, 2010); *S.E.C. v. Zubkis*, No. 97-CV-8086, 2003 WL 22118978, at *7 (S.D.N.Y. Sept. 11, 2003); *SEC v. Musella*, 818 F. Supp. 600, 611-12 (S.D.N.Y. 1993).

Case 7:12-cv-06421-KMK Document 351 Filed 05/20/22 Page 5 of 7






**B. Mr. Bronson Will Suffer Irreparable Harm if a Stay Is Denied**

Even if this Court disagrees that Mr. Bronson is likely to succeed on the merits, the balance of hardships tips decidedly in Mr. Bronson's favor. *See Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 418 (S.D.N.Y. 2011) ("A party seeking a stay pending appeal 'must demonstrate a substantial possibility of success on appeal,' although 'the necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors.'" (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (alterations omitted), *aff'd*, 462 F. App'x 31 (2d Cir. 2012))); *see also Thapa v. Gonzales*, 460 F.3d 323, 336 (2d Cir. 2006) ("[T]his Circuit has granted a stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant." (citation omitted)).

Notwithstanding Mr. Bronson's payment of the *full* civil penalties owed, he is currently incarcerated for failing to make *partial* payment on the money judgment the SEC obtained. A stay of Mr. Bronson's incarceration pending adjudication of the appeal is indisputably warranted, as the appeal will challenge the legal, non-equitable nature of the outstanding damages awarded and, accordingly, Mr. Bronson's continued imprisonment for failure to pay. Since that judgment for damages is in the nature of legal, monetary relief, Mr. Bronson is effectively in debtors' prison for failure to pay a debt—potentially for the pendency of the appeal. Notably, in light of his incarceration, Mr. Bronson cannot meaningfully conduct business and generate income to satisfy the challenged debt. *See Close-Up Int'l, Inc.*, 411 F. App'x at 354; *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."). Importantly, should the Second Circuit agree that the Final Judgment exceeds permissible bounds of equity, Mr. Bronson will be absolved from paying anything further toward the Final Judgment and the deprivation of his liberty would have been in vain.

**C. The Issuance of a Stay Will Not Injure the SEC**

In contrast to the irreparable harm to Mr. Bronson, the issuance of a stay will not injure the SEC in any manner. Indeed, Mr. Bronson has already paid the civil penalties owed under the Final Judgment. The potential "prejudice" the SEC will suffer from a delay in the distribution of payment pending the appeal is insufficient to preclude a stay. *See In re Klein Sleep Prod., Inc.*, No. 93 CIV. 7599, 1994 WL 652459, at *2 (S.D.N.Y. Nov. 18, 1994) (rejecting argument that creditors suffered any prejudice from delay in distribution of debtor's monetary assets). Furthermore, Mr. Bronson has obtained expedited review of his appeal from the Second Circuit. As such, a brief delay pending a determination of critical issues in this case—*i.e.*, that the SEC overstepped its statutory authority by seeking and obtaining punitive relief under 15 U.S.C.

Case 7:12-cv-06421-KMK Document 351 Filed 05/20/22 Page 6 of 7





§ 78u(d)(5) and wrongfully sought this Court's assistance to employ debtors' prison to collect the improper judgment—cannot conceivably harm the SEC.

**D. A Stay Weighs in the Public Interest**

Considerations of public interest squarely favor granting Mr. Bronson's request for a stay. Where an appeal, such as here, involves unsettled and novel questions of law, a stay serves the public interest in maintaining the status quo while the legal questions are resolved. *See People of State of N.Y. v. Galamison*, 342 F.2d 255, 258 (2d Cir. 1965) ("[J]udges of this court stayed [underlying] orders to enable us to consider the important and largely novel questions presented."); *see also* 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2904 (3d ed. Apr. 2022 update) (Rule 62(c) "codifies the inherent power of courts to make whatever order is deemed necessary to preserve the status quo and to ensure the effectiveness of the eventual judgment.").

Furthermore, it is well-settled that the purpose of a civil contempt order is not to punish a party for past transgressions, but to compel future compliance. *See Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) ("[T]he sanctions for civil contempt serve two purposes: to coerce future compliance and to remedy any harm past noncompliance caused the other party." (citation omitted)). Notably, while the Final Judgment seeks disgorgement jointly from Mr. Bronson and E-Lionheart, only one of them is facing the punitive sanction of incarceration.

**III. In the Alternative, the Court Should Grant a Temporary Stay**

In the event the Court declines the requested stay of his incarceration pending appeal, Mr. Bronson respectfully requests that the Court enter a temporary stay, long enough for the Second Circuit to hear an application for a stay pursuant to Federal Rule of Appellate Procedure 8(a). *See Rodriguez v. DeBuono*, 175 F.3d 227, 235-36 (2d Cir. 1998) ("[B]rief stays for a matter of days are frequently issued when a district court denies an open-ended stay pending appeal. They give the appellate court an opportunity to decide whether an additional stay and an expedited appeal should be granted."); *see also In re Albicocco*, No. 06-CV-3409 (JFB), 2006 WL 2620464, at *5 (E.D.N.Y. Sept. 13, 2006) (denying a stay pending appeal under Rule 62, but granting a temporary stay so that a party could apply to the Second Circuit for a stay); *Paris v. Dep't of Nat'l Store Branch 1 (Vietnam)*, No. 99-CV-8607 (NRB), 2000 WL 777904, at *5 (S.D.N.Y. June 15, 2000) (same).

**IV. Conclusion**

For the foregoing reasons, Mr. Bronson respectfully requests that this Court enter an order directing his immediate release from custody and relief from the Court's contempt orders during the pendency of his appeal. At minimum, Mr. Bronson should be released on home confinement, which will obviate the extreme ramifications of the Court's civil contempt sanction and provide






Mr. Bronson with a meaningful opportunity to conduct business to satisfy the challenged debt. Should the Court deny Mr. Bronson's requested relief in the entirety, Mr. Bronson respectfully requests that the Court issue a temporary stay of the execution of the incarceration and contempt orders so that he may apply to the U.S. Court of Appeals for the Second Circuit for a stay pending appeal, pursuant to Rule 8(a) of the Federal Rules of Appellate Procedure. The undersigned has conferred with the SEC regarding this Motion. **The SEC opposes any relief from the Court's orders.**

The SEC is to respond to this letter by 5/27/22.

So Ordered.

5/23/22

Respectfully submitted,

**DLA Piper LLP (US)**

*/s/ Ryan D. O'Quinn*

Ryan O'Quinn
Chair, Miami Litigation Practice