# JUDD BURSTEIN, P.C.
## ATTORNEYS AT LAW

JUDD BURSTEIN*
JBURSTEIN@BURLAW.COM

PETER B. SCHALK**
PSCHALK@BURLAW.COM

EMILY C. FINESTONE***
EFINESTONE@BURLAW.COM

*ALSO ADMITTED IN CONNECTICUT
**ALSO ADMITTED IN NEW JERSEY
***ALSO ADMITTED IN MASSACHUSETTS,
  PENNSYLVANIA, AND VIRGINIA

110 E 59TH STREET
22ND FLOOR
NEW YORK, NEW YORK 10022
TEL: (212) 974-2400
FAX: (212) 974-2944
WWW.BURLAW.COM

12 OLD HILL FARMS ROAD
WESTPORT, CONNECTICUT 06880

December 9, 2022

**VIA ECF**
Honorable Kenneth M. Karas
United States District Court
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, NY 10601-4150

      Re:   *U.S. Securities and Exchange Commission v. Bronson, et al.*,
              Case No. 12-cv-06421 (KMK)

Dear Judge Karas:

      In anticipation of the hearing Your Honor has scheduled for December 12, 2022, I write to set forth Defendant Edward Bronson's ("Mr. Bronson") position on some of the issues identified by the SEC in (a) Maureen Payton King's letters to the Court dated September 9, 2022 (Dkt. No. 364) and September 16, 2022 (Dkt. No. 399), and (b) my communications with the SEC in anticipation of the hearing.

      I expect that counsel for the SEC and I will be stipulating to additional facts prior to the hearing. However, I believe that it is important to alert Your Honor in advance of the hearing to Mr. Bronson's position on key issues – particularly his unequivocal acknowledgement that he (a) directed the sale of securities held in Top Knot's[1] account at UMB Bank ("UMB Account") in violation of the Court's August 17, 2021 Order ("Trustee Order") (Dkt. No. 278), appointing Ryan Stumphauzer ("Mr. Stumphauzer") as the Liquidating Trustee with sole control over that account, and (b) improperly directed the proceeds of those sales for purposes other than satisfaction of the SEC's judgment ("Judgment") in this case.

---

[1]     For the purposes of this letter and the December 12, 2022 hearing, "Top Knot" refers to both Top Knot, Inc. USA and Top Knot, Inc.

**First**, Mr. Bronson will not contest the following claims made by the SEC:

a. Although the shares of Top Knot stock are held in the name of his father-in-law John Kellas ("Mr. Kellas"), Mr. Bronson is the beneficial owner of those shares.

b. At all relevant times (including since his incarceration), Mr. Bronson has (i) maintained exclusive operational control and made all material decisions in the conduct of Top Knot's business, and (ii) directed the disposition of all income earned by Top Knot.

c. At all relevant times (including since his incarceration), neither Mr. Bronson's wife ("Mrs. Bronson") nor Mr. Kellas have acted with respect to both the conduct of Top Knot's business and the disposition of its income other than at Mr. Bronson's direction.[2]

d. At Mr. Bronson's direction, Top Knot violated the Trustee Order, appointing Mr. Stumphauzer as the Liquidating Trustee with sole control over the disposition of the securities held in the UMB Account.

e. Between February 22, 2022 and August 8, 2022, in violation of the Trustee Order, Mr. Bronson directed Top Knot's sales of approximately $2 million in securities held in the UMB Account ("UMB Account Sales").

f. None of the money realized from UMB Account Sales were paid to the SEC in satisfaction of the Judgment entered against Mr. Bronson.

g. At his direction, Mrs. Bronson used the great bulk of the proceeds for UMB Account Sales to improperly pay personal expenses.

h. None of the proceeds from the UMB Account Sales, all of which were spent, should have been used for any purpose other than satisfying the Judgment.

i. In June 2022, Mr. Kellas, at Mr. Bronson's direction, directed UMB to remove Mr. Stumphauzer as a signatory on the UMB Account.

j. With one exception, in or about July 2022, the UMB Account has been replenished with the same shares of the same securities which Mr. Bronson had improperly removed from the Account.

k. The sole exception is that a total of 19,000,000 shares of Humble Energy, Inc. was deposited into the UMB Account – 11,000,000 more shares than had been on deposit in the UMB Account as of the date of the Trustee Order.

---

[2] To be clear, Mr. Bronson does not contend that he approved the disposition of every dollar earned by Top Knot. However, he alone approved the general purposes for which all monies were spent and therefore accepts responsibility for all of those expenditures.

**Second**, Mr. Bronson's position as to Paul Rachmuth ("Mr. Rachmuth") is as follows:

    a.    Mr. Rachmuth owns and controls Phase I Operations, Inc. ("Phase I").

    b.    In nine agreements dated August 22, 2022, Top Knot assigned to Phase I $1,025,251.41 in convertible debt owed by FONU2, Inc. ("FONU2") originally to third parties and thereafter assigned to Top Knot by the original debt holders (the "FONU2 Debt Assignors"). The consideration for Top Knot's assignment of the FONU2 debt to Phase I was Phase I's assumption of Top Knot's obligation to pay the FONU2 Debt Assignors the purchase price for the debt they had assigned to Top Knot.

    c.    On August 25, 2022, Phase I entered into a Stock Purchase Agreement with Bruce Bent ("Mr. Bent") for the purchase of 2,109,212,316 shares of FONU2 stock, upon the conversion of $118,115.59 of the FONU2 debt. Mr. Bent was then to sell the shares and remit a portion of the proceeds to Phase I. In turn, Phase I was to use a portion of the proceeds to pay the FONU2 Debt Assignors.

    d.    Prior to Mr. Bent selling any of the shares, Phase I terminated the sale agreement and the shares were returned to FONU2. As a result, Mr. Bent never remitted any money to Phase I and Phase I never remitted any money to the FONU2 Debt Assignors.

    e.    On August 30, 2022, Phase I entered into a Stock Purchase Agreement with V2IP, Inc. ("V2IP") for the purchase of 2,318,024,336 shares of FONU2 stock upon the conversion of $108,947.14 of FONU2 debt.

    f.    V2IP is a non-operational company owned by Mrs. Bronson with a securities trading account at Scottrade. At Mr. Bronson's direction, Mrs. Bronson sought to deposit the shares in that account so that they could then be sold.

    g.    However, Scottrade would not accept the shares for deposit, and they were therefore returned to FONU2 without any receipt of money by V2IP or Phase I.

    h.    On September 14, 2022, Phase I entered into a Stock Purchase Agreement with Mr. Bent for the purchase of 666,666,667 shares of FONU2 stock upon the conversion of $20,000.00 of FONU2 debt. Mr. Bent was then to sell the shares and remit a portion of the proceeds to Phase I. In turn, Phase I was to use a portion of the proceeds to pay the FONU2 Debt Assignors.

    i.    Prior to Mr. Bent selling any of the shares, Phase I terminated the sale agreement and the shares were returned to FONU2. As a result, Mr. Bent

Hon. Kenneth M. Karas
December 9, 2022
Page 4

    never remitted any money to Phase I and Phase I never remitted any money to the FONU2 Debt Assignors.

j.   In three agreements dated August 22, 2022, Top Knot assigned to Phase I $1,614,837.50 in convertible debt owed by VG Life Sciences, Inc. ("VGLS") originally to third parties and thereafter assigned to Top Knot by the original debt holders (the "VGLS Debt Assignors"). The consideration for Top Knot's assignment of the VGLS debt to Phase I was Phase I's assumption of Top Knot's obligation to pay the VGLS Debt Assignors for the debt they had assigned to Top Knot.

k.   On August 30, 2022, Phase I entered into a Stock Purchase Agreement with V2IP for the purchase of 1,728,932,012 shares of VGLS stock upon the conversion of $121,025.24 of VGLS debt. V2IP was then to sell the shares and remit a portion of the proceeds to Phase I. In turn, Phase I was to use a portion of the proceeds to pay the VGLS Debt Assignors.

l.   As with the FONU2 stock, Mrs. Bronson sought to deposit the VGLS shares into the Scottrade account. However, Scottrade would not accept them, and they were therefore returned to VGLS without any receipt of money by V2IP or Phase I.

m.   On October 3, 2022, Phase I entered into a Stock Purchase Agreement with Mr. Bent for the purchase of 1,900,096.282 shares of VGLS stock upon the conversion of $95,004.81 of VGLS debt. Mr. Bent was then to sell the shares and remit a portion of the proceeds to Phase I. In turn, Phase I was to use a portion of the proceeds to pay the VGLS Debt Assignors.

n.   Prior to Mr. Bent selling any of the shares, Phase I terminated the sale agreement and the shares were returned to FONU2. As a result, Mr. Bent never remitted any money to Phase I and Phase I never remitted any money to the FONU2 Debt Assignors.

o.   Mr. Rachmuth has asked me to terminate Top Knot's assignment of the FONU2 and VGLS debt to Phase I, with the debt to be transferred as directed by the Court.

p.   Both Mr. Bronson and Mr. Rachmuth deny that Mr. Rachmuth is holding assets for Mr. Bronson, or any person or company related to him.

              Respectfully yours,

              /s/ Judd Burstein

              Judd Burstein

cc:   All Counsel of Record (via ECF)