UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                                             Case No. 12-cv-6421 (KMK)

                            *Plaintiff*,

      v.

EDWARD BRONSON, E-LIONHEART
ASSOCIATES, LLC, d/b/a FAIRHILLS CAPITAL,

                            *Defendants*,

      and

FAIRHILLS CAPITAL, INC.,

                            *Relief Defendant*.
------------------------------------------------------------------------------X

## Stipulated Facts

Plaintiff Securities and Exchange Commission ("SEC") and Defendant, Edward Bronson ("Bronson," and with the SEC, the "Parties"), by and through their respective attorneys, hereby stipulate to the following facts in advance of the December 12, 2022 Evidentiary Hearing ("Hearing") in this case.

1. For the purpose of the Hearing, Top Knot Inc. ("TKI") and Top Knot Inc. USA (TKU") (collectively "Top Knot") will be treated as the same entity.

2. On June 8, 2017, the Court entered a judgment ("Judgment") against Bronson which, *inter alia*, required that he pay the SEC a total amount of $11,682,372.38 plus applicable post judgment interest. Docket Entry ("DE") 186.

3. On July 9, 2021, the Court entered an Order on consent requiring that Bronson pay the SEC $1.1 million per month pursuant to a specified payment plan ("Payment Plan Order"). SEC Exhibit ("SEC Exhibit") 1, at 1-2.

4. The Payment Plan Order provided that, upon a joint motion by the Parties, the Court would "appoint a liquidator to sell securities" in Top Knot's Account (No, 168.1) at UMB Bank ("UMB Account") to satisfy "any portion of the judgment and payments ordered herein." *Id*., at 2.

5. Just prior to the Payment Plan Order, the UMB account contained the following securities:

      a.      30,824,000 shares of Bayport International Holdings, Inc. ("BAYP");

      b.      12,387,000 shares of Hallmark Venture Group, Inc. ("HLLK);

      c.      8,000,000 shares of Humble Energy, Inc. ("HUML");

      d.      50,000,000 shares of Superva Health Care Group ("SPRV");

      e.      63,419,391 shares of VG Life Sciences, Inc. ("VGLS").

(SEC Exhibit 130, at 5).

6. By Order dated August 17, 2021, the Court appointed Ryan Stumphauzer ("Stumphauzer") Liquidating Trustee with the sole authority over the securities in the UMB Account. "Bronson Exhibit" A ("Trustee Order"), at 2. Stumphauzer was "directed to liquidate" the securities in the UMB Account subject to "a daily trading limit for each issuer subject to a daily trading limit…." *Id*.

7. Noting that Top Knot had "agreed to contribute to the … payments" mandated by the Payment Plan Order, the Trustee Order directed "Top Knot and Bronson "to take all reasonable efforts to cooperate with the Liquidating Trustee to facilitate his performance of all duties and obligations under this Order." *Id*.

8. As of November 17, 2021, 229,629,629 shares of FONU2 INC had been added to the UMB Account. Bronson Exhibit B.

9. On June 5, 2022, in a letter bearing the signature "John Kellas." Top Knot wrote to UMB, requesting that it remove Stumphauzer as an authorized signatory on the UMB Account. Exhibit 3.

10. The Trustee Order provided that: "Top Knot shall not liquidate, transfer, sell, convey or otherwise transfer the designated securities except upon instructions from the liquidating trustee." Bronson Exhibit 1, at 3.

11. Mr. Stumphauzer never instructed Bronson to liquidate, transfer, sell, convey or otherwise transfers the securities in the UMB Account.

12. Between February 22, 2022 and August 8, 2022, Top Knot entered into Stock Purchase Agreements pursuant to which it sold Bruce Bent ("Bent") stock in four companies at stated prices totaling $2,346,644. SEC Exhibit 63.

13. Top Knot received $2 million of the proceeds from the sales of stock to Bent.

14. Top Knot did not turn over any of the proceeds of these sales which it did receive to the SEC.

15. Top Knot and Bronson, together with other parties, entered into an agreement, dated June 10, 2022, with Marc Pena ("Settlement Agreement"). SEC Exhibit 110.

16. In the Settlement Agreement, Bronson and Top Knot agreed to be jointly and severally liable to Pena in the amount of three hundred thousand dollars ($300,000) ("Pena Debt"), payable in ten monthly $30,000 installments, for past services he had rendered to them. *Id.,* at ¶ 5. .

17. Through Paul Rachmuth, settlement payments have been made.

18. The Pena Debt was secured by nine million shares of Humble Energy, Inc. (HUML") common stock to be held in escrow ("Escrowed Shares") by Endicott Holdings Group, Inc. ("EHG"). SEC Exhibit 110, at ¶ 7.

19. The Settlement Agreement further provided that if the Pena Debt was not fully satisfied by March 1, 2023, Pena could direct EHG to satisfy the remaining Pena Debt by liquidating Escrowed Shares. *Id.*, at ¶ 9

20. When the Court entered the Liquidation Order, Top Knot held 8 million shares of HUML. SEC Exhibit 130.

21. Bronson and Top Knot also agreed that "[u]pon clearing of funds and deposit of the shares with the buyer, the net proceeds of the sale of Escrowed Shares (after deducting and disbursing all fees and expenses of the transfer agent and Escrow Agent relating to the sale of the Escrowed Shares shall be divided 60% to Pena and 40% to Top Knot, or their designees, except that any and [sic] proceeds due [Top Knot] shall be paid to Pena towards the [Top Knot Obligation] until [it] is fully satisfied. Should the [Top Knot] Obligation be fully satisfied but Pena fail to sell all Escrowed Shares within one year of the Effective Date, all remaining Escrowed Shares shall be issued in three equal portions to Paul Rachmuth, Pena and [Top Knot's] designee." SEC Exhibit 110, at ¶ 13.

22. Bronson warranted and represented that "he shall cooperate with the parties hereto to facilitate the actions set forth in the Settlement Agreement." *Id.*, at ¶ 34.

23. Bronson has conducted business on behalf of Top Knot by telephone from jail.

24. At least in part, Top Knot's business, conducted through Bronson, involved converting debt of penny stock entities into shares of their stock and then selling those shares.

25. In converting debt into shares, Top Knot usually:

    a. Enters into an agreement with a third party pursuant to which the third party assigns debt owed by a penny stock company to a third party;

  b.  Sues the company for non-payment of the debt;

  c.  Settles with the company by agreeing to accept shares of the company in payment of the debt;

  d.  Receives a share issuance;

  e.  Sells the shares pursuant to a stock purchase agreement;

  f.  Executes an irrevocable stock power;

  g.  Obtains an issuance opinion letter;

  h.  Obtains a settlement order from the court;

  i.  When the share purchaser sells the stock, Top Knot receives a portion of the sale proceed; and

  j.  Then pays the monies due to the original debt holder for having assigned the debt to Top Knot.

26. Top Knot converted debt into shares in companies controlled by Paul Strickland ("Strickland").

27. Bronson has previously testified that Strickland was his administrative assistant.

28. Top Knot has sold stock in various companies to Matthews Development, Matthews Southwest, Bent (collectively "Matthews"), all of whom are related persons, after having converted such companies' debt into stock.

29. Between February and September 2022, after Bronson was incarcerated, Matthews transferred approximately $2 million dollars to Top Knot.

30. The UMB Account was subsequently replenished so that it contained the same securities in the same amounts (plus an additional 11 million shares of HUML) that were held in the Account as of the date of the Trustee Order. Bronson Exhibit C.

31. On November 6, 2022, Kellas directed UMB to reinstate Stumphauzer as a signatory on the UMB Account. Bronson Exhibit D.

32. On November 11, 2022, Kellas sent an email to UMB, explaining that the intent of his November 6, 2022 letter had been to bring Top Knot back into compliance with the Trustee Order. Bronson Exhibit E.

33. On November 17, 2022, Bronson's counsel sent an email to the SEC and Stumphauzer stating:

> My intention is to ask Mr. Kellas to send another email to UMB stating that Top Knot was reinstating the direction it sent to UMB in 2021 (attached as part of Mr Kellas's November 11 email) and further stating that it may not be revoked absent an Order of the Court permitting Top Knot to do so. However, I do not want to make a career of cleaning up this particular mess when there are so many others in this case. So, please let me know if my plan of action is acceptable. If not, please let me know what you believe is necessary to bring Top Knot back into compliance with the Court's Order. In the interim, I have made it very clear that no one other than Mr. Stumphauzer may direct the account.

(Bronson Exhibit F)

34. In August 2022, according to the stock purchase agreements, Top Knot transferred some or all of its debt holdings in FONU2, Inc. ("FONU2") and VG Life Services, Inc. ("VGLS") to Phase 1 Operations, Inc. ("Phase 1") in return for Phase 1's assumption of Top Knot's obligation to pay the assignor of the debt.   Bronson Exhibits G-R.

35. In August 2022, Phase I then converted some of those shares to stock and entered into Stock Purchase Agreements with Bent and V2IP. Inc. SEC Exhibits 49-52.

36. Bronson knew Phase 1 to be owned by Paul Rachmuth.

37. Between February 16, 2022 and September 30, 2022. over $2 million dollars was disbursed from the Top Knot Wells Fargo account, x7379 (the Account"). Those expenses included:

**Disbursements from Top Knot's Wells Fargo x7379 Account 2/16/22-9/30/22**

| Exhibit | Expense Category | Total | |
|---|---|---|---|
| 89 | Checks to unnamed recipients | $ | 368,350.67 |
| 94 | Rachmuth | $ | 297,000.00 |
| 96 | DLA Piper | $ | 267,256.48 |
| 92 | SPS Portfolios (mortgage) | $ | 240,883.50 |
| 99 | Withdrawals | $ | 157,537.48 |
| 90 | Dawn Bronson | $ | 108,550.00 |
| 98 | TD Bank | $ | 100,000.00 |
| 101 | US Bank | $ | 73,000.00 |
| 91 | Dawn Bronson Webster Bank | $ | 62,900.00 |
| 97 | Pena | $ | 50,000.00 |

| | | | | |
|---|---|---|---|---|
| 104 | Archer Greiner | $ | 32,000.00 | |
| 93 | Tulane | $ | 27,935.23 | |
| 95 | Travel | $ | 25,365.78 | |
| 106 | Coast to Coast | $ | 20,000.00 | |
| 102 | Pawn payments for jewelry | $ | 12,945.08 | |
| | | | | |
| 103 | Dining and Drinks | $ | 10,519.89 | |
| 100 | Retail | $ | 6,232.13 | |
| 105 | Pets | $ | 2,841.59 | |
| 109 | V2IP | $ | 13,500.00 | |
| 107 | Tech | $ | 2,489.79 | |
| | **Total Disbursements Categorized by the SEC** | **$** | **1,890,307.72** | |
| | **Total Disbursements** | **$** | **2,010,527.42** | |

Respectfully submitted,

s/Judd Burstein
Counsel for Defendant Edward Bronson

s/Maureen Peyton King
Counsel for Plaintiff Securities and Exchange Commission