UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                                                                        Case No. 12-cv-6421 (KMK)

                                     *Plaintiff*,

        v.

EDWARD BRONSON, E-LIONHEART
ASSOCIATES, LLC, d/b/a FAIRHILLS CAPITAL,

                                     *Defendants*,

       and

FAIRHILLS CAPITAL, INC.,

                                   *Relief Defendant*.
-----------------------------------------------------------------------------X

## DECLARATION OF JUDD BURSTEIN

       I, JUDD BURSTEIN, hereby declare under penalty of perjury as follows:

**A.**     **Introduction**

       1.     I am the sole shareholder of Judd Burstein, P.C. ("JBPC"), counsel for Defendant Edward Bronson ("Mr. Bronson") in this matter.

       2.     I submit this Declaration in support of the present motion seeking an Order:

          a.     Relieving JBPC, including attorneys Judd Burstein and Emily C. Finestone, as counsel for Mr. Bronson, pursuant to Rule 1.4 of the of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York; Rules 3.7, 1.16(b)(1), and 1.16(c)(5) of the New York Rules of Professional Conduct; and governing Second Circuit authority; together with

          b.     Such other and further relief as this Court deems just and proper.

3. Pursuant to Rule 1.4 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York:

    a. JBPC is not seeking a retaining or charging lien; and

    b. the present posture of this case is that motion practice has been stayed and/or vacated in anticipation of this motion. (*See* Doc. No. 448; *see also* additional discussion *infra*).

4. The purpose of this Declaration is to provide the factual basis for the present motion. The legal grounds as to why JBPC must be relieved as counsel are addressed in the accompanying Memorandum of Law.

**B.**     **Relevant Facts and Procedural History**

5. I appeared in this case as counsel for Mr. Bronson on October 12, 2022 (Doc. No. 407) pursuant to a Retainer Agreement dated October 11, 2022. (A true and correct copy of the Retainer Agreement is annexed hereto as Exhibit A). As a condition of my representation of Mr. Bronson, I included the following provision in the Retainer Agreement:

> **You and Dawn explicitly represent that any and all funds used to pay amounts due under this Retainer Agreement (a) are not restrained, directly or indirectly, by an Order of the Court in the Litigation, and (b) are not the direct or indirect proceeds of any conduct which the SEC has contended is unlawful. Both you and Dawn represent that no entity or individual who are either parties to the Litigation or whose assets are subject to any Order of the Court with respect thereto have any direct or beneficial interest in the funds used to pay JBPC under this Retainer Agreement. Rather, all funds used to pay JBPC under this Retainer Agreement will come from Dawn's personal account, the sources of which shall consist of the following: (a) Dawn's unrelated savings, (b) a HELOC for which Dawn applied, or (c) funds provided by Dawn's father.**

(Exhibit A hereto at p. 2, ¶ 4) (Emphasis in original).

6. I also required that Dawn Bronson ("Mrs. Bronson") sign the Retainer Agreement to confirm these and other representations. (*See* Exhibit A hereto at p. 6).

7.     On December 12, 2022, I represented Mr. Bronson at an evidentiary hearing (the "December 12 Hearing") that the SEC had requested concerning the Bronsons' alleged continued violations of this Court's Order.[1]

8.     Mrs. Bronson was a witness at the December 12 Hearing. Following Mrs. Bronson's testimony, the SEC asked that the Court hold her in contempt. (*See* Exhibit B hereto, at p. 205, a true and accurate copy of the relevant portions of the transcript of the December 12 Hearing). While the Court would not hold Mrs. Bronson in contempt without a formal motion and an opportunity to be heard, it authorized the SEC to file a motion seeking the relief. (*Id.* at pp. 212-13). I also expressed my view that the evidence adduced at the December 12 Hearing confirmed that the Bronsons have insufficient assets to comply with the Court's Order, and that therefore Mr. Bronson's incarceration was no longer coercive but rather punitive. (*Id.* at p. 214).

9.     Following the December 12 Hearing, the SEC moved by Order to Show Cause for "A Temporary Restraining Order ["TRO"] and Asset Freeze to Prevent the Bronsons' Dissipation or Liquidation of Assets Without Oversight." (*See* Doc. Nos. 439-42). The Court granted the TRO and set a briefing schedule on the motion. (*See* Exhibit C hereto, a true and accurate copy of the Court's Order of December 30, 2022). On January 2, 2023, I wrote the Court asking that it modify the TRO and set a proposed briefing schedule for Mr. Bronson's motion to be released from incarceration. (*See* Doc. No. 444). The Court granted my application the next day. (*See* Exhibit D hereto, at p. 6, a true and accurate copy of the Court's January 3, 2022 Memo Endorsement of my January 2 letter).

---

[1]     I use the term "alleged" because while we conceded prior to the December 12 Hearing that there had been additional violations, I do not believe that the SEC established that all of the conduct that it contended to be violative of the Court's Order was contumacious.

10. Pursuant to my proposed briefing schedule, the Bronsons' opposition to the SEC's motion and papers in support of Mr. Bronson's motion seeking release from incarceration were both due on January 6, 2023. (*See* Exhibit D hereto at p. 2). As part of JBPC's work on these motions, my office began preparing an accounting of the monies spent by Mrs. Bronson. During the weekend of January 1, 2023, my office traced the flow of monies out of the Bronsons' various personal and business (*e.g.*, Top Knot) bank accounts so that we could provide the Court with an accounting of them. As part of that effort, the statements for Mrs. Bronson's personal accounts at Webster Bank were examined.

11. When I arrived in my office on January 3, 2023, I was informed that, although my firm had been paid the first $70,000 of our retainer[2] from Mrs. Bronson's Webster Bank personal accounts, the monies used for those payments had been transferred from Top Knot's Wells Fargo account. I further confirmed that the monies transferred out of the Top Knot account had unquestionably been funded by wire transfers made by Matthews Development (Alberta) to Top Knot.

12. In response to this revelation,[3] I wrote the Court the same day of January 3, 2022, requesting that it adjourn the Bronsons' response to the SEC's TRO motion and that the briefing schedule for Mr. Bronson's anticipated motion seeking his release from incarceration be vacated.

---

[2] I note that my firm's retainer agreement provided for a retainer payment of $250,000. (*See* Exhibit A hereto at pp. 1-2, ¶ 3). However, only $230,000 of that amount was paid.

[3] I initially assumed that the monies transferred from the Top Knot account were the proceeds of sales of the stock that had previously been held in the UMB Account. On reflection, that may not be so because I recall that there may have been some other stock sold by Top Knot which had not been held in the UMB Account. However, that is a distinction without a difference because my firm's retainer agreement (i) prohibited payment of fees with funds which were "restrained, **directly or indirectly**, by an Order of the Court in the Litigation," and (ii) required that those fees be paid from "(a) [Mrs. Bronson's] unrelated savings, (b) a HELOC for which [she had] applied, or (c) funds provided by [her] father."

(A true and accurate copy of the letter is annexed hereto as Exhibit E).[4] The request was made to afford the Bronsons time to retain new counsel because I had come to the conclusion that JBPC would have to move to withdraw as attorneys. The Court granted my application in an Order dated January 4, 2022, a true and accurate copy of which is annexed hereto as Exhibit F.

13. Notably, one of the reasons given in my January 3 letter as to why JBPC had to withdraw as counsel is that "it is likely that the SEC will subpoena me as a witness at a hearing on the contempt motion against Mrs. Bronson which it has informed me it plans to file." (*See* Exhibit E hereto at p. 2). On January 4, 2023, the day after my January 3 letter, the SEC served JBPC with a subpoena for documents. (A true and accurate copy of the SEC subpoena is attached hereto as Exhibit G).

14. I am now a witness who could be compelled to provide potentially prejudicial evidence against the Bronsons in this case. As discussed in the accompanying Memorandum of Law, that fact is sufficient in and of itself to require my withdrawal as counsel. My January 3, 2023 letter cited additional reasons why I cannot continue to ethically represent Mr. Bronson (or Mrs. Bronson). (*See* Exhibit E hereto at the final paragraph on p. 2). Because I do not wish to unnecessarily prejudice the Bronsons, I simply hereby affirm that the reasons previously given are truthful and valid.[5]

---

[4] My January 3 letter states that I would be seeking to withdraw as counsel for Mrs. Bronson as well as Mr. Bronson. (*See* Exhibit E hereto at p. 1). To be clear, no attorney at JBPC has filed an appearance on behalf of Mrs. Bronson. Rather, I was referring to my contemplated representation of Mrs. Bronson in response to the SEC's TRO motion and motion for contempt.

[5] In the interest of full disclosure, I do want to alert the Court to an email which I came upon when commencing my collection of documents in response to the SEC's subpoena. On Monday, October 31, 2022, Mrs. Bronson sent me an email stating that she was going to pay a small amount of money in partial satisfaction of the $250,000 due under my firm's retainer agreement "out of my dad[']s account or my personal." However, I now see that she also wrote that "TK received a small wire on [the preceding] Friday…." In retrospect, I should have inquired further about why

## C. **Procedural Considerations**

15. This application is brought on by way of Order to Show Cause because the question of JBPC's representation must be resolved promptly so that the parties can address at least the following time-sensitive matters: (a) the restraint of the Bronsons' remaining assets, (b) Mr. Bronson's continued incarceration, and (c) Mrs. Bronson's alleged contempt.

16. No prior application has been made for the relief sought herein to this or any court.

17. Lastly, I ask for leave to serve these papers upon Mr. Bronson via Mrs. Bronson's email address, which I am not providing here to avoid making it a public record. However, I represent that I have used the address to communicate with Mrs. Bronson without incident throughout my representation. This request is made in light of Mr. Bronson's incarceration. Alternatively, I ask for leave to serve these papers upon Mr. Bronson by sending them to the Westchester County Jail by Federal Express.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 6, 2023, in the State of Connecticut, Fairfield County.

/s/ Judd Burstein
JUDD BURSTEIN

---

she was informing me about having a received a wire from Top Knot. However, I focused only on her representation that the monies to be paid would be coming, as promised, from either her or her father's account. In any event, the $10,000 paid to my firm on November 1, 2022, was not funded by the monies which had been received by Top Knot the preceding Friday. Rather, the source of the $10,000 was a $19,000 wire transfer from Mrs. Bronson's Webster checking account into Mrs. Bronson's Webster savings account on September 15, 2022 -- *i.e.*, before my firm was retained.