Dawn M. Bronson
1275 Fairhills Drive
Ossining, NY 10562

February 8, 2023  MEMO ENDORSED

Hon. Judge Kenneth M. Karas
United States District Court
300 Quarropas Street
533 White Plains, NY 10601-4150

Re: SEC v. Edward Bronson, et al., 12-cv-06421 (KMK) – Removal of Account Restraint

Dear Judge Karas:

As you know I write on behalf of my husband, Edward Bronson, regarding his request for a settlement conference and in response to the SEC opposing that request. This letter has been written by me as Ed instructed me.

In the SEC's letter, Ms. King wrote that "the Bronsons must: (1) provide to the SEC a complete accounting of all of their financial resources; and (2) develop a detailed prospective budget." At the end of her letter, Ms. King wrote more specifically that it opposes a settlement conference until we provide the following items:

> "(i) full personal and entity accountings (including documents to support all assets, income, expenses and liabilities);
> (ii) accountings for their children and John Kellas;
> (iii) a complete accounting of all funds Dawn Bronson transferred out of Top Knot Inc.'s Wells Fargo account x7379 from February 16, 2022 forward;
> (iv) an inventory and accounting of all salable personal property;
> and (v) a prospective budget."

Ed instructed me to say a few points at the beginning of this letter-reply.

First, Ed and I are doing everything possible to be fully responsive, we believe that we have complied with the SEC's requests and we are ready to provide anything else we have if the Court or the SEC believes something is missing. Being jailed for a year has provided a great deal of time for reflection. While a year ago, Ed would have said that he had already fully complied with the Court's Orders and the SEC's requests, he (and also I) has a better understanding of what is required of us. Even regarding the proposed allowance for our family when a settlement is reached, Ed and my definition of "necessity" has greatly evolved. One necessity that cannot be understated, however, is our family's need to be together.

Second, Ed will continue to act pro se. There is simply no money left for another attorney.

Third: although we believe we have addressed everything in this letter. If the SEC still believes that Ed has not provided enough for a settlement conference, he asks that the

Court consider this reply as an emergency motion for his release. If that motion is granted, Ed commits to continuing to work with the SEC to repay the money owed, and to provide any additional information and documentation the SEC believes is necessary to reach transparency. We now address the SEC's requests.

1.   Full personal and entity accountings

Exhibit 1 to this letter is a submission that Judd Burstein provided the SEC but which we do not think the Court has seen. It contains the following. The page numbers were added by Mr. Burstein.

JBPC 1 - Bank of America HELOC Documents – debt on our home
JBPC 11 - Silver Streak LLC Mortgage Documents – debt on our home
JBPC 43 - Select Portfolio Services Mortgage Documents – debt on our home
JBPC 166 - Bruce Bent – V2IP - Affinity Beverage Stock Transaction - sale of stock
JBPC Bruce Bent V2IP - PPJ Healthcare Enterprises Stock Transaction Documents - sale of stock
JBPC 178 - Bruce Bent — Top Knot - PPJ Healthcare Enterprises Stock Transaction Documents- sale of stock
JBPC 184 - Dawn Bronson Webster Bank Statements – shows how I spent money
JBPC 366 - Dawn Bronson Wells Fargo Bank Statements – shows how I spent money
JBPC 410 - Top Knot Inc. Wells Fargo Bank Statements – shows how Top Knot sent money
JBPC 430 - V2IP Inc. Scottsdale Capital Advisors Statements – shows certain stock sales
JBPC 451 -V2IP Inc. Wells Fargo Bank Statements – shows funds movement
JBPC 461 - Provident Loan Society Loan Payment Tickets – shows interest payments on items that we have pawned
JBPC 468 - Judd Burstein Retainer and Related Correspondence

Exhibit 2 consists of additional Webster Bank statements going back to February 2022, to show how I spent money in our household.

Exhibit 3 is a list of transfers that the SEC wanted explanations for. I have written them in.

Exhibit 4 is car lease paperwork. McCallan Partners Assets is the lessee and Paul Rachmuth signed the lease for us. I had no car and could not lease or borrow to get a car, because the TRO made me ineligible for credit. Our oldest son has dropped out of college and is delivering for Uber Eats and Door Dash and will make the car payments for the family. We also intend to pay down the lease from the funds allotted to us from the sale of the Cadillac when a settlement is finally reached.

Exhibit 5 is an email from a realtor addressing the value of our home.

2

Exhibit 6 is an email from a title company showing the judgments and liens on our home, but that list does not include the most recent mortgage of $180,000 that was taken out to give a retainer payment to Mr. Burstein.

Note 1: The SEC has mentioned "offshore accounts" and "nominees". We have no bank accounts or any other kind of account outside the United States and we have no nominee accounts of any kind anywhere. Mr. Rachmuth did mention a sale outside the United States but the only sale like that was a stock sale in 2021. James Bursey, a Canadian citizen who lives in Turks and Caicos bought the stock from Ed and sent the money to Ed and Ed used the money to pay the SEC. Except for an RBC Bank account and about which I testified, which had about $200 in it for a number of years, we have never had bank accounts or investment in other countries. The SEC has all of our relevant bank records, which show money movement in and out of the accounts and nothing going to accounts outside the country. At the December 12, 2022 hearing, the SEC called witnesses and we believe it was demonstrated that we have no nominees holding money or assets for us. This was also addressed in Mr. Burstein's TRO letter to the Court. However, if the SEC wants to point to something we should further disclose, we will cooperate fully to satisfy Ms. King and her colleagues that there are no offshore accounts or nominee accounts.

Note 2: The Cadillac Escalade was sold for $90,000 and I have a check dated December 28, 2022 payable to Macallan Partners Assets. It reads that it expires in 90-days, which is March 27, 2023.

Note 3: There is approximately $30,000.00 being held by Mr. Bruce Bent since late December 2022. This money is in Top Knot's name and came from the sale of FONU stock. I am getting backup documents for this money and will provide it as soon as I receive it. Also, Bruce is prepared to wire this to the SEC as soon as we instruct him to do that.

2. Accountings for the Children and John Kellas

We have no bank accounts at all for the children.

My father, John Kellas has an account at Chase which part of his Social Security payment goes into. I have not included his statements in this letter because there is no money there that has ever been related to any of the companies or Ed or me. If the Court orders it or the SEC asks for it, I print out statements for my father and provide them.

3. Complete accounting of all funds Dawn Bronson transferred out of Top Knot Inc.'s Wells Fargo account x7379 from February 16, 2022

Exhibit 3 covers this request. I went through my bank accounts and the SEC's list of transfers and cross referenced them. I think it is self-explanatory, but I can further explain at the SEC's request or if the Court orders me to do so or at the settlement conference.

4.     Inventory and Accounting of all Salable Personal Property

As noted from Exhibit 1, I have pawned my jewelry already. We have three fur coats that are at least 20 years old and a number of handbags and a few pieces of designer jewelry, all of that I inherited from my mother-in-law, but I have no idea what they're worth. I can provide photos to the SEC. Our furniture is not antique or anything other than what we might sell on Craig's List. While we will probably sell some when the house is sold, it is hard to estimate the value. For these reasons I have not supplied an inventory.

5.     A Prospective Budget

For a Monthly Budget, we believe we need the following:

| | |
|---|---|
| United Healthcare Oxford: | $5,667.58 |
| Cell Phones for family: | $580.00 |
| Electricity: | $3,500.00 which includes $1,660 per month arrears |
| Oil: | $1,200.00 per month in the heating season but this varies |
| Food: | $2,000.00 per month on average |
| Cable/Internet | $359.00 per month |
| Car Insurance | $550.00 per month |
| Gasoline | $250.00 per month |
| Clothing | $300.00 per month |
| Spending money for kids | $1,000.00 per month – school activities, meals, snacks |
| Total: | $15,406.58 per month |

Again, Your Honor, Ed and I believe that we have provided everything the SEC has requested and the Court has ordered, and we are willing to do everything in our power to provide anything else that is required. We believe that the attachments to this letter merit the opportunity to come before this Court and work toward a resolution that will demonstrate that Ed intends pay the SEC and can work to do so. For this reason, we once again request a Settlement Conference.

The SEC is to respond to this letter by 2/13/23.

So Ordered.

*[signature]*

2/9/23

Sincerely,

*[signature]*

Dawn M. Bronson