

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

DIVISION OF
ENFORCEMENT

March 7, 2023

**By ECF**
Hon. Kenneth M. Karas
United States District Court
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, New York 10601-4150

**MEMO ENDORSED**

      Re:    *U.S. Securities and Exchange Commission v. Bronson et al.,*
              12-CV-6421 (KMK)

Dear Judge Karas:

      I write on behalf of the Securities and Exchange Commission ("SEC") to address Defendant Edward Bronson's ("Bronson") request for a settlement conference. In order to have a productive settlement conference, the Bronsons must provide an accounting of *all* of their personal and entity income, expenses, an explanation of how the expenses will be curtailed, assets and liabilities. They have yet to do so. Thus, the SEC contends that a settlement conference would still be unproductive.

      1.    Accounting Deficiencies and Issues.

      The Bronsons have not produced all of their account statements, particularly <u>current</u> account statements, making an accounting impossible. A month ago, the SEC requested that the Bronsons provide current account statements (and statements for at least the prior year) for accounts including: V2IP, Inc., MacCallan Partners Assets, LLC, Baby China, Top Knot Inc. USA, Three Brothers Trading LLC, Seven Mile Securities, Wells Fargo account x6366, Wells Fargo account x3648, Liberty Stock Transfer, Inc., or the RBC account. DE 474. To date, the Bronsons have not produced any current account statements for 2023.[1] They have not produced a year's worth of statements for certain accounts; and they have not produced statements for the Wells Fargo account x3648 (referenced at 477-1), Three Brothers, Seven Mile Securities or the RBC account. In addition, the SEC identified still more accounts for which it does not have records or complete records: Baby China account -8537 and V2IP account -7131 (referenced at DE 492-2 page 57). Gallingly, the Bronsons now suggest that if the SEC wants more information it can send subpoenas – hardly evidencing Bronson's purported contrition – or cooperation. DE 491.

---

[1] Top Knot's account statement for December 2022 shows a receipt of over $59,000 and a more than $27,000 payment to Tulane – one day after the hearing. DE 492-4.

The Bronsons also have not produced tax returns, claiming that their taxes are incomplete and no earnings records exist. Rather than suggesting that the SEC try to determine their income from bank statements, the Bronsons should identify their income (just as they no doubt did for their accountant).

The Bronsons contend that they have no credit cards. But on a call recorded at the Westchester County jail, they twice reference using a credit card, including the last 4 digits, x8207. Exhibit E (excerpted transcript).[2] Thus, the Bronsons should explain this discrepancy and produce their credit card records.

In response to the SEC's request that the Bronsons account for the $157,537.48 in cash withdrawals, the Bronsons reference the SEC's chart of these withdrawals at DE 440-4. The chart shows that the Bronsons withdrew the funds, but not what the Bronsons did with the cash or whether any of it remains.

As to the house, its sale would no doubt reduce the Bronsons' overhead. The Bronsons should propose what relief from the asset freeze they believe they need to list the property. In 2022, they paid over $41,000 in property taxes, and, on their first mortgage, $51,000 in mortgage interest and $103,000 in principal. Exhibit A. The Bronsons assert that Dawn Bronson recently obtained a third mortgage of $180,000 on their home. The partially executed contract – for a *two month* mortgage - identifies Silver Streak LLC ("Silver") as the lender.[3] Exhibit B. The SEC sought records from Silver only to learn that Silver's sole proprietor has neither heard of Dawn Bronson nor made any loan to her. Exhibit C. A check of the Westchester County mortgage records shows no third mortgage recorded. Exhibit D. The Bronsons should explain the true nature of this transaction.

2. Funds to be Turned Over to the SEC.

As to the proceeds from the sale of the Bronsons' Cadillac, the SEC did not agree that the Bronsons could withhold $20,000. The SEC was amenable to a nominal amount being withheld for a car lease – but the Bronsons have already arranged for a lease. So the proceeds should be turned over to the SEC.[4]

The Bronsons further claim that the asset freeze is impeding them from turning over $30,000 held by Bruce Bent to the SEC. The SEC requests that the Court order the $30,000 be turned over to the SEC.

---

[2] The SEC will produce the tape at the Court's request.

[3] The Loan Agreement and the mortgage addresses for Silver Streak differ.

[4] In connection with its contempt motion, the SEC also seeks the turnover of any unused retainer for Mr. Burstein's fees.

3. The Bronsons' Budget is Incomplete.

As to the budget, the Bronsons do not quantify their anticipated income or detail their expenses – including their mortgage. Instead, they glibly suggest that expenses beyond those they identified would be paid from a "draw" to which the SEC has not agreed. DE 491.

4. Bronson Engaged in a Penny Stock Transaction.

The Bronsons' claim that the FONU transaction does not violate the penny stock bar – is nonsensical. Bronson is barred from "participating in any offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock." Bronson engaged with the issuer to convert debt and receive shares of FONU, a penny stock, and then conveyed those shares to Bent. Thus, he clearly "engag[ed] in activities with…[an] issuer for purposes of issuing [a] penny stock."

5. Bronson Admits an Ability to Pay.

In connection with his opposition to contempt, Bronson admits he earns income and has an ability to pay. In a February 17, 2023 filing, Bronson stated: "I do not assert that I am completely unable to pay…I do earn income." DE 490. By the Bronsons' own count, they have received and disbursed over $2.5 million between March and September 2022 from one account. DE 491-1 page 5. None of those funds were paid to the SEC.

6. Conclusion.

From the SEC's perspective, until the Bronsons fully disclose their financial picture a conference is unwarranted.

Respectfully submitted,
*s/ Maureen Peyton King*

Mr. and Mrs. Bronson are to respond to this letter by March 23, 2023.

SO ORDERED.

3/16/2023