

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

DIVISION OF ENFORCEMENT

June 12, 2023

**By ECF**
Hon. Kenneth M. Karas
United States District Court
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, New York 10601-4150

      Re:   *U.S. Securities and Exchange Commission v. Bronson et al.,*
            12-CV-6421 (KMK)

Dear Judge Karas:

The Securities and Exchange Commission ("SEC") or ("the Commission") writes to respond to Dawn Bronson's letter requesting his immediate release as Defendant Edward Bronson ("Bronson") is no longer in contempt and is receiving inadequate medical care ("June 7 Letter").

**I. Dawn Bronson Lacks Standing to Bring This Motion.**

As a threshold matter, Dawn Bronson lacks standing to petition the Court for Bronson's release. "[S]tanding requires that plaintiffs demonstrate: (1) 'an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision.'"…."To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' ….If the plaintiff does not claim "to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve."…. *Friedman v. Cavalry Portfolio Services, LLC*, --F.Supp. 3d --, 2023 WL 3708996, *2 (E.D.N.Y. May 2023) (internal cites omitted).  Consistent with this framework, the Baez court dismissed a §1983 claim Baez filed on behalf of his wife and children based on a deprivation of their rights or for emotional stress caused by such a deprivation due to a lack of standing to bring a claim for his family members. *Baez v. Pinker,* 2015 WL 3457277, *4 (S.D.N.Y. 2015).  Likewise, the Kounitz court denied standing to a spouse who was not himself injured.  *Kounitz v. Slaatten,* 901 F.Supp. 650, 654 (S.D.N.Y.1995). "The Court recognize[d] that as a general rule, a litigant may not assert the rights of others to obtain relief from injury themselves…. [But noted that] there is an exception to this general rule, however, when (1) the third party's enjoyment of the right in question is "inextricably bound up with the activity the litigant wishes to pursue," and (2) the third party is unable to assert his or her own right." *Id.* at *655.  Based on an analysis of the

general rule, Dawn Bronson does not have standing to bring this motion because she complains only of Bronson's purported injuries but cannot articulate her own injury. The exception also does not apply. Dawn and Edward Bronson's interests are not inextricable. Moreover, Bronson can assert his own claims. Thus, Dawn Bronson has no standing to challenge his incarceration.

In any event, Mrs. Bronson's filing – at best – misstates a key fact. The SEC did not agree to a settlement with Bronson. In fact, Bronson's counsel had suggested in May that he planned to file a motion for Bronson's release if the parties could not reach an agreement. Three years into the contempt proceeding, Bronson has yet to provide full and complete accountings of all of his assets held directly and indirectly as this Court has ordered and has provided only current expenses – now estimated at a bloated $25,000 per month with no diminution in lifestyle contemplated - not a budget. Bronson cannot defend against contempt because his wife claims an inability to pay bills while he declines to provide a picture of his finances. What's more, releasing Bronson despite his refusal to provide complete financial transparency rewards his continued contumacy and ensures his continued games.

As to Dawn Bronson's claims that Bronson needs medical attention that he is not receiving, in order to comply with the Court's Order, the SEC took steps, detailed below, to gather information about Bronson's condition. That said, the SEC respectfully defers to the Court concerning how Bronson's medical claim should be addressed.

## II. Complete Accountings Are Needed.

Three years ago, the SEC sought a contempt finding against Bronson for his failure to pay the Judgment Bronson owes the SEC. (DE 201, 2/19/20; corrected DE 202-205 3/19/20). As part of that application, the SEC sought an accounting of all of Bronson's, Dawn Bronson's and their known entity, V2IP, Inc.'s assets and income. DE 203. Bronson initially entered a payment plan obviating the need for the accountings. DE 272. When Bronson violated the terms of the payment plan, the SEC sought further information about his income and available funds as well as all financial accounts for his entities, which the Court ordered him to produce. DE 292, 10/27/21. After reviewing the documents Bronson produced in response to this Order, the SEC wrote to the Court concerning the production deficiencies and seeking information about the funds Bronson's Top Knot Inc. entity received from abroad, the hundreds of thousands of dollars Bronson received through his then-attorney's account and his exorbitant spending. DE 292. The Court again ordered Bronson "to provide substantial details about his and Top Knot's offshore income, assets and cashflow…." DE 293, 11/18/21.

Bronson has provided only some of the information the SEC seeks in the past three years. There is little doubt that Bronson will engage in still more games if he does not have to provide accountings before he is released from jail for his civil contempt. For example, the SEC recently learned that Bronson's pawned jewelry is valued at over $300,000 and includes a diamond ring valued at around $35,000 and numerous other

luxury name brand pieces with equity in them.[1]  Bronson had not previously divulged the actual appraised value of these pieces.  Thus, the Court should require Bronson to provide complete personal and entity accountings before the Court entertains any motion for release.

The SEC has continued to press for complete accountings including at a hearing on December 12, 2022.  Indeed, Bronson's then counsel, Mr. Burstein, acknowledged in a January 2023 letter to the Court that: "before and after the [December 12, 2022] hearing, I **repeatedly** acknowledged to SEC counsel my view that Mr. Bronson could not hope to be released from incarceration unless the Bronsons provided a full accounting."  DE 433.  And in response to Bronson's request for a settlement conference in February 2023, the SEC noted that "[t]he Bronsons have not provided adequate information so far about their accounts, entities or sources of funds…."  DE 484.  On March 31, 2023, Bronson provided a status update that stated: "Counsel for Bronson has so far agreed to provide accountings for entities they have identified but the SEC seeks accountings for all of their entities whether or not previously disclosed.  Mr. Reizenstein has indicated that he may retain a forensic accountant to facilitate the accountings."

Bronson then introduced a red herring – unavailability of funds for a forensic accountant – contending he needs one to provide accountings when in fact, Bronson is uniquely capable of explaining all of his assets and income, wherever and however held.  Dawn Bronson continues this now, claiming Bronson needs 45 days after his release to provide a forensic accounting.  Dawn Bronson ignores that the SEC has never required a "forensic" accounting – just a sworn accounting of all of the Bronsons' assets and income.  Yet, three years and three hundred docket entries later, Bronson has failed to provide a full and complete picture of his finances.  Without his providing this information, Bronson cannot claim an inability to pay and there is no reason to release him from incarceration.

In a telephone conversation with Mr. Reizenstein several weeks ago, Commission counsel offered to streamline the accountings, by telling Mr. Reizenstein that we could accept accountings of: Bronson, Dawn Bronson, their children, and all Bronson related entities worldwide, including but not limited to V2IP, Inc., MacCallen Asset Partners, Top Knot Inc., and Top Knot Inc. USA ("Bronson Entities") for the period from January 1, 2021 through the present, as opposed to the five year period that Mr. Reizenstein had previously put forward.  We also informed Mr. Reizenstein that a "forensic" accounting had never been sought.  Commission counsel also stated that the accountings should set forth: all assets over $1,000 and whether and how they have been disposed of, all income,

---

[1] As Bronson has not made interest payments on certain pawned pieces, SEC counsel understands that the pawn broker, Provident Loan Society ("PLS") has the right to liquidate the pieces, deduct what it is owed and then turnover any remaining amount to Bronson.  However, the SEC served PLS with a copy of the asset freeze and will file a proposed writ of garnishment with the Court so that, once the stay is lifted and PLS auctions the pieces on which the Bronson defaulted, the proceeds of the auction, in excess of what is owed to PLS, can be turned over to the SEC.

all liabilities over $1,000 and all expenses over $1,000 on an annual basis.[2,3] Mrs. Bronson's submission, DE 506 along with her recent production, is a start. But Bronson also needs to confirm that all of their assets held directly or indirectly and all income streams are reflected in their disclosure in a sworn statement. And all of their entities must provide accountings as well.

### III. A Budget is Needed.

The SEC has long sought a budget from Bronson. Despite many requests of prior and current counsel, Bronson has still not offered a budget. On March 31, 2023, "Counsel for Mr. Bronson acknowledged to the SEC that a budget for the Bronson's [sic] needs to be provided." DE 501. The SEC has followed up on its request repeatedly to no avail. Thus, Bronson's contention that he should be released and will then provide answers to the SEC's questions is implausible.

The Bronsons now claim that they cannot put forth a budget. While Commission counsel appreciates that Bronson does not yet know what his income will be, the Bronsons state that regardless, they need over $25,000 a month for their current expenses. Dawn Bronson referenced the more than $25,000 per month in expenses Bronson's counsel submitted in the June 7 Letter. DE 506-1 (9), 506-3. A copy of the expenses submitted is attached hereto as Exhibit A.

It is clear from the submission that the Bronsons do not appreciate that a diminution in lifestyle is required. While the SEC will not engage in a line by line analysis of obvious ways to reduce the expenses in this letter, many potential reductions are obvious from a brief review of Exhibit A. Further, the expenses include Mrs. Bronson and Mr. Kellas's expenses, with no indication of any income from either.

In any event, in order to address the unpredictability of Bronson's income, the SEC proposes that until entry of a payment plan order predicated on Bronson's income, commencing on Bronson's release, Bronson shall by the 15th of each month remit 25% of his gross income above $5,000 and 75% of his gross income above $20,000 per month to the SEC. Bronson shall submit proof of income to the SEC and a computation of the remittance due to the SEC and the Court by ECF under seal by the 15th of each month. Adopting this methodology ensures that Bronson's payments from income he earns going forward will be meaningful. And it avoids any gaps or ambiguity in the payments. It also addresses Bronson's expenses. He will have to pare his expenses to what he can afford.

---

[2] To the extent Bronson has already conceded to the asset dissipation in connection with the December 2022 hearing, the accountings can reference the charts of expenses already created. But to the extent funds remain unaccounted for, including withdrawals and wires, those funds should be accounted for promptly.

[3] As part of Dawn Bronson's accounting, the funds she withdrew from the Top Knot account must be accounted for to the SEC.

### IV. Arrears

Dawn Bronson now seeks to turnover $90,000 from the Escalade proceeds to the SEC but to keep the $30,000 Bruce Bent holds. The SEC has previously sought the turnover of the $90,000, and as such, agrees with the disposition of those funds. The SEC will submit a proposed turnover order if the Court will order the funds turned over. As to the $30,000, the SEC does not object to a carve out for some living expenses once Bronson provides accountings, if they show that he does not have an ability to pay.

### V. Bronson Has Maintained He Has An Ability to Pay.

So far, however, Bronson has maintained that he in fact does have an ability to pay. For example, on February 17, 2023, Bronson filed a letter with this Court stating: "I do not assert that I am completely unable to pay. The evidence and testimony submitted by Dawn and me confirm that I do earn income. I have never denied that." DE 490. Bronson has not made any statement to the Court repudiating his filing. Thus, Dawn Bronson's complaints are inconsistent with Bronson's own filing and not a basis to release Bronson.

### VI. The SEC Has Taken Steps to Provide the Court with Information about Bronson's Medications.

Even if she had standing to bring inadequate medical care claims for Bronson, Dawn Bronson does not provide the needed transparency to support her claims about inadequate medical care. The SEC, however, took steps to comply with the Court's Order that the SEC address the medical claims and provide the Court with additional information. First, the SEC promptly reached out to Bronson's counsel to seek a waiver so that SEC counsel could gather responsive information. See Exhibit B (email to counsel). So far, counsel has not responded. The SEC also reached out to the United States Marshall Service and Counsel for Westchester County. In both instances, the SEC provided the June 7 Letter and the Court's Order, DE 507, and requested that information about Bronson's medications be provided directly to the Court by June 12. See Exhibits B and C. The SEC understands that both the USMS and the County attorney are in receipt of the SEC's requests.

### VII. The SEC Seeks Certain Court Orders.

The SEC requests that the Court enter several orders. First, whether or not Bronson is released, the SEC requests that the Court:

(i) require Bronson to provide financial accountings before deciding whether any portion of the $30,000 held by Bruce Bent is released to the Bronsons;

(ii) lift the asset freeze only after all funds the Court orders turned over to the SEC, potentially including: (i) the $90,000 in proceeds from the Escalade; (ii) any

unused retainer funds held by prior counsel; (iii) excess proceeds from the liquidation of the Bronson's pawned jewelry (except as needed to permit the sale of the jewelry);

(iii) order the Bronsons to provide monthly account statements for all of financial accounts for himself, Dawn Bronson, his children, and all Bronson Entities by no later than the 15th of the following month;[4] and

(iv) order the Bronsons to undertake not to open any additional accounts or entities, directly or indirectly.

If Bronson is released, the SEC respectfully requests that the Court order Bronson to remit to the SEC by the 15th of each month, 25% of his gross income above $5,000 and 75% of his gross income above $20,000 per month to the SEC. Bronson shall submit proof of income to the SEC and a computation of the remittance due to the SEC and the Court by ECF under seal by the 15th of each month until such time as the SEC reaches another payment plan with Bronson.

### VIII. Bronson Should Be Held in Contempt.

The SEC respectfully requests that the Court enter an order holding Bronson in contempt for his continued contumacy and for his penny stock bar violations based on the SEC's pending application.

### IX. Dawn Bronson Should Be Held in Contempt.

As set forth in the now fully briefed application, the SEC respectfully requests that the Court hold Dawn Bronson in contempt and order sanctions, namely interest on the $2 million dollars that were to be used to satisfy the SEC Judgment that she instead dissipated.

Respectfully submitted,
*s/ Maureen Peyton King*

---

[4] While the parties had discussed a monitor, it is not immediately clear how the monitor would be implemented. To avoid protracted negotiations on this, instead, the SEC is willing to accept the above term.