

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

October 4, 2023

**By ECF**

Hon. Kenneth M. Karas
United States District Court
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, New York 10601-4150

      Re:    *U.S. Securities and Exchange Commission v. Bronson et al.,*
            12-CV-6421 (KMK)

Dear Judge Karas:

      I write on behalf of the United States Securities and Exchange Commission
("SEC") to reply to Defendant Edward Bronson's: (i) responses to the SEC's request for
a pre-motion conference on turnover as ordered by the Court, (ii) letter concerning his
budget and expenses, and (iii) other miscellaneous issues raised in his responses.  DE
532, 537, 543.

Turnover of any Proceeds of Liquidated Jewelry Due to Bronson.

      Bronson opposes the SEC's request for any excess proceeds from jewelry
Defendant Bronson pawned that would be due to him after the pawn broker deducts what
it is owed and seeks a conference.  DE 537, 543.  In support of his opposition, he
misstates the facts and the law.

      As background, the Bronsons each pawned jewelry to Provident Loan Society
("PLS") in exchange for loans: some in Dawn's name and some in Bronson's name.  The
SEC is not seeking the jewelry Dawn Bronson pawned in her name.  Bronson defaulted
on the interest payments due on at least some of his pawn loans.  Consequently, PLS will
auction Bronson's jewelry to recoup its loan to Bronson.  After deducting what Bronson
owes and certain fees and expenses from the auction proceeds, the SEC understands that
PLS will remit any remaining proceeds to Bronson.  When the SEC learned the extent of
the jewelry Bronson had pawned, DE 529, the SEC served the asset freeze on PLS to
preserve the excess proceeds.  But for the asset freeze, at least some of the jewelry might
already have been auctioned.  Thus, the issue is not whether the jewelry should be
auctioned.  That is the bargain Bronson struck with PLS when he pawned the jewelry and
defaulted on his payments to PLS.  The only issue is whether PLS should turnover to the
SEC any proceeds due to Bronson after the auction.

      Bronson opposes the SEC's request for turnover of proceeds PLS holds that are
due to Bronson.  But as he points out, the Court already ordered Bronson to "work with

the SEC to resolve the disposition of…excess proceeds from the liquidation of Bronson's pawned jewelry (except as needed to permit the sale of the jewelry).  If the parties cannot resolve these matters, they will seek the Court's intervention…."  DE 521.  Bronson neither contested the Order regarding liquidation of the jewelry nor its ownership. *Id.*

Procedurally, Bronson claims that the SEC included the jewelry in its proposed turnover order prematurely.  The Court ordered the SEC to submit a proposed turnover order after issuing its Opinion & Order: "The Court directs the SEC to Submit…proposed Turnover Orders for those funds that the SEC seeks to have directed to them for the Court's review and approval."  DE 536.  As the SEC is seeking turnover of funds from PLS, the SEC included them in its proposed order, noting in its letter to the Court that Bronson is contesting turnover of the PLS proceeds.  DE 538.  Including the PLS proceeds in the turnover order allows for: the issuance of one turnover order if the Court so chooses.  It also does not preclude a hearing if the Court orders one.  And if the Court chooses to do so, it can strike the language referencing PLS and issue the first turnover order ahead of any conference or decision on the PLS proceeds.  For these reasons, the SEC believes it made sense to include the PLS turnover language in the proposed turnover order.  DE 536.

Further, despite Bronson's contention, the SEC followed the procedure of seeking the Court's intervention, consistent with the Local Rules, by filing a pre-motion conference letter.  It is entirely within the Court's discretion to order a conference or issue a decision on the papers.  Thus, the SEC defers to the Court on the necessity for a conference on these facts.

Substantively, Bronson claims – without any proof - that although he pawned the jewelry, he does not own it.  DE 537, 543.  Paradoxically, however, Bronson states: "I hope to make interest payments to the pawn broker and eventually recover the jewelry and return it to my wife."  Thus, Bronson essentially argues that the SEC cannot collect from the PLS proceeds due to Bronson but that he can spend funds on jewelry for his wife while he owes the SEC millions of dollars.  More to the point, after submitting a $52,000 per month budget, Bronson's assertion that he should be able to use still more funds to recover pawned jewelry - while he owes the SEC millions of dollars – shows complete contumacy.[1]  DE 537.

---

[1] Bronson cites the payment plan terms for the first 6 months post-incarceration.  He ignores that (i) he has paid nothing since being released; and (ii) that the Payment Plan Order permits the SEC to ask the Court to increase the amount due to the SEC: "**IT IS FURTHER ORDERED THAT** based on the budget and Bronson's average monthly earnings, the SEC may negotiate terms for subsequent six-month periods that increase the payment to the SEC. If the parties do not agree to any increase the SEC seeks, payments at a rate of 50% split of gross monthly earnings over $5,000 shall continue until the Court orders otherwise." DE 521.

Bronson's support for his opposition is entirely flawed.  As noted above, the emotional impact of the jewelry being auctioned is irrelevant – it is the result of defaulting on the payments to PLS.  DE 537.  The SEC merely seeks turnover of the funds that will flow back to Bronson from PLS.  Moreover, the Second Circuit does not require tracing to collect disgorgement.  *Liu v. SEC*, 140 S.Ct. 1936, fn. 3 (2020). Thus, the acquisition date(s) of the jewelry that Bronson notes pre-date the case against him or allegations against him are irrelevant.

Further, Bronson minimizes the monetary value of the jewelry.  DE 529-1.  The SEC understands that the items Bronson pawned include an eight-karat diamond ring and many other diamonds and high-end pieces.  DE 529-1 (inventory of jewelry Bronson pawned).  Thus, for the reasons set forth in the SEC's letter, DE 529, the SEC respectfully requests that the Court order that any proceeds due to Bronson from the pawnbroker be turned over to the SEC.  Alternatively, if PLS enters into an agreement with Bronson to forebear on auctioning the jewelry, he should not be able to make payments toward interest or to redeem the jewelry, directly or indirectly, unless the SEC can garnish the jewelry.  The SEC should not stand behind Bronson recouping jewelry.

Continuing the Asset Freeze is Consistent with the Court's June 29th Order.

Defendant Bronson appears to be asking that the asset freeze be lifted.  DE 537.  However, this Court has already ruled that the asset freeze "shall continue to remain in effect until all turnover issues are resolved."  DE 521.  As is clear from the parties' letters, turnover issues remain unresolved.  Accordingly, the SEC requests that the Court deny Bronson's request to lift the asset freeze.

Return of Bronson's Passport.

Bronson claims that he surrendered his passport in connection with his arrest.  In reality, the Court ordered Bronson to surrender his passport to his then attorney, Ryan O'Quinn's custody on November 24, 2021 in connection with his contempt, not his arrest.  DE 302.  O'Quinn confirmed receipt of the passport in an ECF filing on November 26, 2021.  DE 303.  The SEC defers to the Court as to whether to return the passport at this time.

Distribution Plan.

Bronson's demand that the SEC put forth a distribution plan – while he fails to pay the funds the SEC would propose distributing – reeks of irony.  DE 537.  First, to offer a plan, the SEC must first assess the feasibility of a distribution, which it cannot do without knowing the amount to be distributed.  So far, Bronson has paid a fraction of what he owes.  And, Bronson claims that he will pay more soon – "Once I start earning money again, which I hope and expect to be soon the SEC will receive 50% of my income (less the first $5,000 per month)."  DE 537.  Thus, it is premature for the SEC to offer a distribution plan.

3

Next, the Court, not the defendant, approves any distribution plan. As to Bronson's demand that the SEC identify the individuals to whom the disgorged funds will be returned, generally defendants have no right to personally identifying information about distribution payment recipients. Thus, Bronson's demand should be denied.

Further, Bronson's recycled argument that "*Liu* and its progeny" require the government to provide a proposed plan of distribution, DE 537, misstates the law and ignores the Court's April 29, 2022 Opinion & Order:

> Bronson argues that "[n]either the Complaint nor [the Final Judgment] specif[ies] any identifiable harmed investors to whom the disgorged profits should be returned." (Defs.' Final J. Mem. 15.) Bronson argues that this result is counter to Liu, which he claims does not allow disgorged funds to be sent to the U.S. Treasury. (See id.) However, Liu left open the question "as to whether the SEC is permitted to deposit disgorgement funds with the Treasury when it is infeasible to distribute such funds to investors." *Penn*, 2021 WL 1226978, at *13 (citing Liu, 140 S. Ct. at 1948); see also *S.E.C. v. Westport Cap. Markets, LLC*, 547 F. Supp. 3d 157, 170 (D. Conn. 2021) (noting that the Supreme Court in Liu "did not foreclose disgorgement . . . where it is infeasible to distribute the collected funds to investors") (citation and quotation marks omitted)); *S.E.C. v. Laura*, No. 18-CV-5075, 2020 WL 8772252, at *5 (E.D.N.Y. Dec. 30, 2020) ("Liu . . . does not require that a disgorgement award reflect every individually wronged investor's private agreements. If it did, a court would need to conduct a mini-trial as to each investor before it could order disgorgement. There is no reason to believe that Liu, which confirmed the breadth of the SEC's power to seek equitable awards, also stealthily erected such a substantial barrier to SEC recovery."); accord *Voight*, 2021 WL 5181062, at *9 ("Liu cannot fairly be read as implicitly importing into the SEC civil enforcement context additional equitable limitations on disgorgement such as tracing to an identifiable res."). Thus, the Court concludes that its disgorgement order is consistent with Liu.

DE 347. As the Court already found that *Liu* does not foreclose disgorgement where a distribution is infeasible, it necessarily follows that a distribution plan cannot be required in every case. In any event, as stated above, the issue of distribution is premature. Bronson must first pay what he owes so the SEC can assess distribution feasibility.

Bronson's Budget and Expenses Are Unreasonable.

On September 14, the SEC wrote the Court to seek relief in connection with Bronson's violations of the Court's orders to submit a reasonable budget and reduce expenses. DE 530. The SEC noted that Bronson's expenses ballooned to $52,000 a month and includes some expenses that should not be in his budget.

A.  Bronson's Residence.

As with the jewelry discussed above, Bronson continues to want to have his cake and eat it too.  Bronson cannot assume sole responsibility for repaying the multiple mortgages on the property, while maintaining only his wife owns it.  And it strains credulity to believe that the Bronsons cannot find suitable accommodations for less than the $35,000 a month.  Finally, as set forth in the SEC's papers, DE 530, Bronson should not be able to choose to pay debts for his wife ahead of paying the SEC what he owes.

B.  The Automobile.

Bronson claims that their son leased a car for the family so it is his obligation. But Bronson should not be able to choose to pay for the luxury car his son leased ahead of paying the SEC what he owes.

C.  Paul Rachmuth.

The SEC requests that Bronson clarify whether or not Mr. Rachmuth represents him in connection with settlement with the SEC  as Mr. Rachmuth has indicated he does, while Bronson now states he does not represent him.

D.  Budget.

As to his budget, Bronson's arguments are misplaced.  His "entirety of the matter" ignores reality.  Bronson owes the SEC $10 million.  Thus, it is entirely unreasonable for him to claim he needs $52,000 a month for his monthly expenses. While Bronson is correct that he must pay the SEC 50% of his income above $5,000, the SEC reserved the right to revert to the Court to increase that amount after 6 months. DE 521.  If Bronson is spending $52,000 per month, the SEC anticipates reverting to the Court.

Conclusion.

For the foregoing reasons, the SEC respectfully requests that the Court: (i) order PLS to turnover any proceeds of liquidated jewelry due to Bronson; (ii) continue the asset freeze; (iii) deny Bronson's requests concerning distribution; and (iv) order Bronson to submit a reasonable budget and reduce his expenses.  The SEC defers to the Court on whether Bronson's passport should be returned to him.

Respectfully submitted,

*Maureen Peyton King*